JOHN W. HUBER, United States Attorney (#7226)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: arthur.j.ewenczyk@usdoj.gov
  leslie.a.goemaat@usdoj.gov
  richard.m.rolwing@usdoj.gov
  john.e.sullivan@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:18-CR-365-JNP-BCW |
| Plaintiff, | : | |
| v. | : | STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY |
| SALLY LOUISE KINGSTON | : | AND PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C) |
| Defendant. | : | |
| | : | District Judge Jill N. Parrish |
| | | Magistrate Judge Brooke C. Wells |
| | : | |

   I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining, and entering into this agreement:

   1.  As part of this agreement with the United States of America ("United States"), I intend to plead guilty to Counts 1 and 23 of the Second Superseding Indictment, ECF 135. My attorney has explained the nature of the charges against me, and I have had an opportunity to

discuss the nature of the charges with my attorney. I understand the charges and what the United States is required to prove in order to convict me.

    (a) The elements of Count 1 are:

        i.  First: two or more persons agreed to commit mail fraud in violation of 18 U.S.C. § 1341, the elements of which are:

            1.  First: the defendant devised or intended to devise a scheme to defraud, as alleged in the indictment;

            2.  Second: the defendant acted with specific intent to defraud;

            3.  Third: the defendant mailed something, or caused another person to mail something, through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme;

            4.  Fourth: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

       ii.  Second: the defendant knew the essential objective of the conspiracy;

      iii.  Third: the defendant knowingly and voluntarily involved herself in the conspiracy; and

      iv.  Fourth: there was interdependence among the members of the conspiracy.

    (b) The elements of Count 23 are:

        i.  First: two or more persons agreed to commit concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), the elements of which are:

            1.  First: the defendant conducted or attempted to conduct a financial transaction;

            2.  Second: the financial transaction involved the proceeds of the mail fraud scheme alleged in Count 1 of the indictment;

            3.  Third: the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

            4.  Fourth: the defendant conducted or attempted to conduct the financial transaction knowing that it was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds

of unlawful activity.

    ii.  Second: the defendant knew the essential objective of the conspiracy;

    iii.  Third: the defendant knowingly and voluntarily involved himself or herself in the conspiracy; and

    iv.  Fourth: there was interdependence among the members of the conspiracy, that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

2.    I know that the maximum possible penalty provided by law for Count 1 of the Second Superseding Indictment, a violation of 18 U.S.C. § 1349, is a term of imprisonment of 20 years, a fine of $250,000 or twice the gross gain or loss, a term of supervised release of 3 years, and any applicable forfeiture. I understand that if I violate a term or condition of supervised release, I can be returned to prison for the length of time provided in 18 U.S.C. § 3583(e)(3). I know that the maximum possible penalty provided by law for Count 23 of the Second Superseding Indictment, a violation of 18 U.S.C. § 1956(h), is a term of imprisonment of 20 years, a fine of $500,000 or twice the value of the property involved, a term of supervised release of 3 years, and any applicable forfeiture.

a.    Additionally, I know the Court is required to impose an assessment in the amount of $100 for each offense of conviction, pursuant to 18 U.S.C. § 3013. Furthermore, restitution to the victim of my offenses shall be ordered pursuant to 18 U.S.C. § 3663A.

b.    I understand that, if I am not a United States citizen, I may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

3.    I know that the sentencing procedures in this case and the ultimate sentence will be determined pursuant to 18 U.S.C. § 3553(a), and that the Court must consider, but is not bound by, the United States Sentencing Guidelines, in determining my sentence. I have discussed these procedures with my attorney. I also know that the final calculation of my sentence by the Court may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea if this occurs. However, because my plea of guilty is being entered pursuant to Rule 11(c)(1)(C), as explained below, I know that I will be able to withdraw my plea if the Court does not accept the terms of this agreement.

4.    I stipulate to the following United States Sentencing Guidelines calculation, and understand that this stipulation is not binding on the Court:

| | |
|---|---|
| Base offense level per § 2S1.1(a)(1) and § 2B1.1(a)(1) and § 2B1.1(b)(1)(P) (intended fraud loss more than $550 million): | 37 |
| Two-level enhancement for conviction under 18 U.S.C. § 1956 pursuant to § 2S1.1(b)(2)(B): | +2 |
| Two-level enhancement for sophisticated means per § 2B1.1(b)(10)(C): | +2 |

3

I reserve the right to argue as to acceptance of responsibility per § 3E1.1 and role in the offense per § 3B1.

    5.    I know that I can be represented by an attorney at every stage of the proceeding, and I know that if I cannot afford an attorney, one will be appointed to represent me.

    6.    I know that I have a right to plead "Not Guilty" or maintain my earlier plea of "Not Guilty" and can have a trial on the charges against me.

    7.    I know that I have a right to a trial by jury, and I know that if I stand trial by a jury:

    a.  I have a right to the assistance of counsel at every stage of the proceeding.

    b.  I have a right to see and observe the witnesses who testify against me.

    c.  My attorney can cross-examine all witnesses who testify against me.

    d.  I can call witnesses to testify at trial, and I can obtain subpoenas to require the attendance and testimony of those witnesses. If I cannot afford to pay for the appearance of a witness and mileage fees, the United States will pay them.

    e.  I cannot be forced to incriminate myself, and I do not have to testify at any trial.

    f.  If I do not want to testify, the jury will be told that no inference adverse to me may be drawn from my election not to testify.

    g.  The United States must prove each and every element of the offense charged against me beyond a reasonable doubt.

    h.  It requires a unanimous verdict of a jury to convict me.

    i.  If I were to be convicted, I could appeal, and if I could not afford to appeal, the United States would pay the costs of the appeal, including the services of appointed counsel.

    8.    If I plead guilty, I will not have a trial of any kind.

    9.    I know that 18 U.S.C. § 3742(c)(1) sets forth the circumstances under which I may appeal my sentence. However, fully understanding my right to appeal my sentence, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily and expressly waive my right to appeal as set forth in paragraph 12 below.

    10.    I know that under a plea of guilty the judge may ask me questions under oath about the offense. The questions, if asked on the record and in the presence of counsel, must be answered truthfully and, if I give false answers, I can be prosecuted for perjury.

4

11.    I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

At all times relevant to the charges alleged in the Indictment, I was married to Jacob Kingston and was an employee of either Washakie Renewable Energy ("WRE") or United Fuel Supply ("UFS"), which was its sister company. At all relevant times, I worked in roles and on tasks assigned by Jacob Kingston, including working as the compliance officer of WRE. I was not involved in or privy to every aspect of Washakie Renewable Energy because, among other things, I was not present because I was on maternity leave at times. However, at all times during my employment at WRE/UFS and at all relevant times during the indictment when I was performing any task relevant to WRE/UFS I did so at the direction of and with the full knowledge of at least Jacob Kingston. At times, I also coordinated with and took direction from Rachel Kingston and Isaiah Kingston, who also worked for WRE/UFS.

In the summer of 2013, I was in a meeting with Jacob Kingston and another person named Deryl Leon. I recall a discussion that took place during that meeting about fuel being sold between WRE/UFS and entities owned by Deryl Leon, including at least Catan Trading Corporation ("Catan") and Skinny Crow Music ("SCM"). Shortly thereafter, in or about August 2013, Deryl Leon was present at the offices of WRE/UFS in Utah. Jacob Kingston asked me to make invoices on behalf of Deryl's company Catan Trading Company that billed Washakie Renewable Energy for the sale of B100 Biodiesel fuel from Catan to WRE. These invoices had dates from May 1, 2013 to around July 9, 2013. At the time I made these invoices I knew that they were backdated because I was preparing them as much as three months after the dates reflected on the invoices. The numbers on the invoices, including the dates and amounts of biodiesel, were given to me by Deryl Leon. Jacob Kingston participated in giving me or Deryl Leon information to create the invoices.

Approximately a month later, Deryl Leon provided me with a document that purported to summarize the gallons of biodiesel that Leon had moved between tanks at two fuel terminals located in the Houston, Texas area (which we called Westway 1 and Westway 2) and at a third fuel terminal called Stolt, which I understood to be in Louisiana, and which I now know was named Stolthaven New Orleans. The document I received from Deryl Leon showed that product was being rotated between these three terminals (Westway 1, Westway 2, and Stolt). This rotation of fuel between the tanks was being used to claim tax credits illegally. I discussed the summary sheet with Jacob Kingston who knew everything identified in this paragraph and told me not to worry about it. After this time, I continued to work on the WRE/UFS projects involving the movement of fuel among Catan, WRE, and SCM by doing whatever I was asked to do by Deryl Leon and Jacob Kingston to further the project.

I was aware that in conjunction with the movement of fuel described in the paragraphs above, Catan, WRE, and SCM were also moving money back and forth. I knew that the people responsible for moving money on behalf of WRE were Rachel Kingston and Isaiah Kingston. Based on my observation and familiarity with the hierarchy at WRE, I understood that each time Rachel Kingston or Isaiah Kingston moved money they were doing so at the direction of, or at least with the knowledge of, Jacob Kingston and that Jacob Kingston was aware of both the

5

transactions and their purpose. I do not recall ever being aware of the amount of money that was moved in any of these transactions (I did not have access to bank records and was not a signer on any bank accounts), but I understood that the invoices I created were the basis for these transactions. I also knew that the money involved in these transactions was derived from the false claims for tax credits that WRE filed with the IRS.

At all relevant times, Jacob Kingston was responsible for preparing and filing Forms 8849 with the IRS, on which WRE claimed credits for producing or blending biofuel. I was not aware of the dates that claims were filed or the amount of fuel tax credits that were claimed on each Form 8849 at the time it was filed.

In late 2013, I believe December, Jacob Kingston asked me to prepare a summary sheet of the gallons of purported biofuel that Deryl Leon had moved. At this time, Jacob Kingston provided me with the Forms 8849 that had been filed between May 2013 and November 2013. At the time I saw these returns, I confronted Jacob Kingston about the fact that the tax credits were outrageously high and that they totaled even more than the amount of fuel that had been moved between WRE, Catan, and SCM. Jacob Kingston acknowledged that he had filed Forms 8849 on behalf of WRE for fuel that had not been shipped or sold.

Throughout 2013, I was aware that Jacob Kingston was travelling and conducting business with Levon Termendzhyan. I was not aware of the exact nature of their business. Although I travelled with Levon and Jacob Kingston, it was their custom to move away from me when they would discuss their business dealings. I understood that WRE/UFS and Levon's companies had substantial business dealings.

I know a person, Individual 1, who had previously worked at UFS/WRE. At some point I became aware that Individual 1 claimed to have contacts with important government officials; I later heard that he claimed to have contacts within the United States Department of Justice. I know that Individual 1 claimed that there was an investigation into WRE/UFS by federal government authorities. Individual 1 used the code name "The Commissioner" or "Commissioner Gordon" in reference to a high-level government contact. I did not like Individual 1 and asked Jacob Kingston not to deal with him, but I was aware that Jacob Kingston had contacts with Individual and made efforts to have Individual 1's "guys," which I understood might include the Commissioner, expose employees of WRE who were cooperating with the government by giving documents and information to the federal government; I understand that WRE fired employees based on reports from Individual 1 "guys" that those employees were cooperating with the federal government.

In early 2016, there were search warrants executed at various locations related to WRE/UFS and to the Davis County Cooperative Society, including at the home I shared with Jacob Kingston. A short time after the searches (I believe two weeks thereafter) Jacob Kingston told me that he had been tipped off to the search warrants and that he had taken his actual computer and replaced it with another computer and that he had taken items from his office and placed them in his car. Jacob Kingston told me that after the searches were complete, he returned his original computer to his office.

12.     The only terms and conditions pertaining to this plea agreement between me and the United States are as follows:

a.  **Guilty Plea.**  I will plead guilty to Counts 1 and 23 of the Second Superseding Indictment.

b.  **Stipulated Sentence.**  Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the sentence imposed by the Court will be **no more than 15 years (180 months) imprisonment.**

(1)     I understand that this agreement, including my plea, the agreed upon maximum sentence, and all other terms referenced herein, are subject to the approval of, and acceptance by the Court.  I further understand that the Court will likely order the preparation of a Presentence Report to assist in the determination of whether this plea and the agreement are appropriate, and I agree to fully cooperate in the preparation of the Presentence Report.

(2)     If, after receiving all relevant information, the Court rejects the plea agreement and determines that a sentence higher than the agreed upon sentence of no more than 15 years (180 months) will be imposed, I will have the right to withdraw the plea of guilty and the terms of this agreement will become null and void.  Likewise, if the Court rejects the plea agreement, I understand that the United States will have the right to move to vacate this agreement, and all terms of this agreement will become null and void.

c.  **Relevant Conduct.**  I understand and agree that the Presentence Report may include descriptions of conduct I engaged in which either was not charged against me, will not be pleaded to by me, or both.  I understand and agree that the Court will take these facts into consideration in determining the reasonableness of the stipulated sentence.  I agree and stipulate that the intended loss of the conspiracy which I knowingly joined was $1,166,792,650 and that the actual loss caused by the conspiracy that I knowingly joined was $511,842,773.

d.  **Appeal Waiver.**

(1)     Fully understanding my limited right to appeal my sentence, as explained above in paragraph 8, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily, and expressly waive my right to appeal any sentence imposed upon me, except that I do not waive the right to appeal as set forth in 18 U.S.C. § 3742(c)(1), which states that I may not file a notice of appeal unless the sentence imposed is greater than the sentence set forth in this agreement.

(2)     I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, unless the sentence imposed is greater than the sentence set forth in this agreement, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

7

(3)     I understand that this waiver of my appeal and collateral review rights concerning my sentence shall not affect the United States' right to appeal my sentence pursuant to 18 U.S.C. § 3742(c)(2) and § 3742(b)(1) and (2).

(4)     I further understand and agree that the word "sentence" appearing throughout this waiver provision is being used broadly and applies to all aspects of the Court's sentencing authority, including, but not limited to: (1) sentencing determinations; (2) the imposition of imprisonment, fines, supervised release, probation, and any specific terms and conditions thereof; and (3) any orders of restitution.

e.  **Presentence Report and Financial Information.**  I agree to provide truthful and complete information, including financial information, as requested by the probation office for the preparation of my presentence report and for determination of the conditions of my supervised release.  I also consent to allowing the United States Attorney's Office to run a credit check on me.  I consent to being placed on the Treasury Offset Program and State Finder.

f.  **Restitution.**

(1)     I agree that I am subject to mandatory restitution because my case falls within the provisions of 18 U.S.C. § 3663A(a)(1) and (c)(1) based on Count 1 of the Second Superseding Indictment, to which I am pleading guilty.  My attorney has explained what mandatory restitution means.

(2)     Under 18 U.S.C. § 3663A(a)(3), I agree to pay restitution to the Internal Revenue Service, in the amount of **$511,842,773**, due at the time of sentencing. I agree that this total amount of restitution reflected in this agreement results from my fraudulent conduct.  I agree to pay this specific restitution, joint and several with any codefendants, and agree that this amount should not be reduced or increased through apportionment of liability under 18 U.S.C. § 3664(h).

(3)     I agree to the following additional provisions regarding restitution:

i.  I agree that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, I agree that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). I do not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor my  timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

8

    ii. I am entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. I understand and agree that the plea agreement does not resolve my civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from me relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise my obligation to pay any remaining civil tax liability. I authorize release of information to the IRS for purposes of making the civil tax and restitution based assessments.

    iii. I understands that I am not entitled to credit with the IRS for any payment until the payment is received by the IRS.

    iv. If full payment cannot be made immediately, I agree to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. I also agree to provide the above-described information to the probation office.

    v. If I make a payment of the restitution agreed to above prior to sentencing, the payment will be applied as a credit against the restitution ordered.

    (4)    I understand that the amount of restitution and the schedule of payments will be determined as a part of the sentencing proceedings in accordance with the provisions of 18 U.S.C. § 3664. I agree to pay all restitution as ordered by the Court. I agree that the payment and enforcement of my restitution order is governed by 18 U.S.C. § 3664, and my lawyer has explained the consequences of an order of restitution.

    (5)    I understand and agree that payment of any restitution owed, pursuant to the schedule set by the Court at sentencing, should be a condition of any term of probation or supervised release imposed upon me. I know that if I fail to pay restitution as ordered, the failure can be considered a violation of probation or supervised release and, pursuant to 18 U.S.C. § 3614, the Court can resentence me to any sentence which might originally have been imposed in my case.

    (6)    I agree to the following provisions regarding payment of restitution:

    i. I agree to send all payments made pursuant to the court's restitution order to the Clerk of the Court at the following address:

Clerk of the Court
351 S W Temple
Salt Lake City, UT 84101

9

    ii.  With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, I will provide the following information:

        1.  My name and Social Security number;

        2.  The District Court and the docket number assigned to this case;

        3.  Tax year(s) or period(s) for which restitution has been ordered; and

        4.  A statement that the payment is being submitted pursuant to the District Court's restitution order.

    iii.  I agree to include a request that the Clerk of the Court send the information, along with my payments, to the IRS address below:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

    iv.  I also agree to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

    g.  **Waiver of Interest.**  The United States agrees to recommend that the Court waive interest for fines and restitution assessed against me.

    h.  **Forfeiture.**

    (1)    I admit that the majority of the transferred funds from Washakie or UFS to Order-related entities were not through bona fide purchases for value. Specifically, I do not contest that at least $30 million in proceeds traceable to the mail fraud scheme or money laundering schemes to which I am pleading guilty were not bona fide purchases for value. I will not contest the United States' tracing of proceeds of the mail fraud scheme and/or proceeds involved in the money laundering schemes from Washakie and/or UFS to the properties listed in Exhibit A. In addition, I do not contest that Washakie and/or UFS used false and/or inflated invoices to give the false appearance that transfers of mail fraud scheme and/or proceeds involved in the money laundering schemes were bona fide purchases for value.

(2)     I agree to be interviewed by investigators within thirty days concerning the assets specified in Exhibit A and any other assets connected to or that may connect to the charges in the Second Superseding Indictment. I will respond truthfully to investigators questions including in detailing my knowledge of these assets and their connection to the charges specified in the indictment.  To the extent I know, I will disclose to investigators the location of the assets listed in Exhibit A and will disclose the existence and location of any other asset that is traceable to the charges listed in the indictment, whether owned by myself or not.

(3)     Upon request by the government, I agree to identify all assets connected to or which may connect to the charges in the Second Superseding Indictment in which I had any interest, or over which I exercise or exercised control, directly or indirectly, within the past seven years. I also agree to identify any similar assets over which my co-defendants or third parties now have control. I agree to take all steps as requested by the United States to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant. I agree to undergo any polygraph examination the United States may choose to administer concerning such assets and to provide and/or consent to the release of my tax returns for the previous five years.

(4)     I agree to forfeit all property acquired from or traceable to my offenses and all property that was used to facilitate my offenses, including, but not limited to, the following specific property:

The assets listed in Exhibit A.

(5)     I agree to a forfeiture MONEY JUDGMENT of $511,842,773. This amount is equal to the value of any property, real or personal, constituting or derived from proceeds traceable to the mail fraud conspiracy and not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).[1] Additionally, I agree to a forfeiture MONEY JUDGMENT of at least $511,842,773, which is equal to the value of all property involved in the money laundering conspiracy and not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant(s). The money judgments will run concurrently.

(6)     I acknowledge that to the extent proceeds of the mail fraud scheme charged in count one or property involved in the money laundering counts in this agreement can be traced to the property covered by this agreement, that property is subject to forfeiture because it represents the proceeds of illegal conduct or helped facilitate illegal conduct.

(7)     I agree that all such property may be forfeited in either an administrative, civil and/or criminal judicial proceeding.  I agree that I will not make a claim to the property or otherwise oppose forfeiture in any such proceedings, and I will not help anyone else do so.  If I have already made such a claim, I hereby withdraw it.  I further agree that I will sign any

---

[1] The government will move to partially satisfy the forfeiture money judgment to the extent of the value it obtains, after deducting costs, from successfully forfeiting specific assets.

necessary documents to ensure that clear title to the forfeited assets passes to the United States, and that I will testify truthfully in any judicial forfeiture proceeding. In addition, I agree that I will not make any claim to property forfeited by any other defendant in this case.

(8)     I hereby waive any claims I may have against the United States regarding the seizure and forfeiture of the property covered by this agreement.

(9)     I hereby waive the requirements regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

(10)    I hereby waive any constitutional or statutory challenges to the forfeiture covered by this agreement, including that the forfeiture is an excessive fine or punishment.

(11)    I agree to repatriate to the jurisdiction of the District of Utah any property listed in the Second Superseding Indictment (including the funds described in paragraph 34(e)), any property listed in Exhibit A that is outside the court's jurisdiction, and any other property that is connected to, the proceeds of, or involved in the charges in the indictment. For real property that is connected to, the proceeds of, or involved in the charges in the indictment, but is outside the jurisdiction of the court, I agree to identify to the United States Attorney's Office such properties within thirty days of signing this agreement; to sell those properties within six months of signing this agreement; and to repatriate the proceeds from the sale of such properties within ten days of receipt along with an accounting from a title company or its equivalent that details the disposition of funds.

(12)    If in its sole discretion the U.S. Attorney's Office determines that the defendant meets the criteria for restoration under Department of Justice and Money Laundering and Asset Recovery Section (MLARS) policy, it agrees to recommend to MLARS through the restoration process that payments the defendant makes on the forfeiture money judgment be applied to reduce the amount the defendant owes on the restitution order. The defendant further understands that MLARS retains the ultimate discretion whether to grant or deny any restoration request. Upon approval of the restoration request, payments made on the forfeiture money judgment will also satisfy the restitution order to the extent of such payments. The defendant may make payments on the forfeiture money judgment by cashier's check or money order to "United States Marshals Service," referencing the case number, and mailed to:  United States Marshals Service, ATTN: Dorothy Akins, 351 S. West Temple, Suite 4.200, Salt Lake City, UT 84101-1908.

13.    I understand and agree that this plea agreement is solely between me, the United States Attorney for the District of Utah, and the Department of Justice, Tax Division, and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

14.    I understand that I have a right to ask the Court any questions I wish to ask concerning my rights about these proceedings and the plea.

\*    \*    \*    \*

I make the following representations to the Court:

1.      I am 42 years of age.  My education consists of a high school education.  I can read and understand English.

2.      This Statement in Advance contains all terms of the agreement between me and the United States; if there are exceptions, the Court will be specifically advised, on the record, at the time of my guilty plea of the additional terms.  I understand the United States and I cannot have terms of this plea agreement that are not disclosed to the Court.

3.      No one has made threats, promises, or representations to me that have caused me to plead guilty, other than the provisions set forth in this agreement.

4.      Neither my attorney nor the United States has promised me that I would receive probation or any other form of leniency because of my plea.

5.      I have discussed this case and this plea with my lawyer as much as I wish, and I have no additional questions.

6.      I am satisfied with my lawyer.

7.      My decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea.  I was not under the influence of any drugs, medication, or intoxicants when I made the decision to enter the plea, and I am not now under the influence of any drugs, medication, or intoxicants.

8.      I have no mental reservations concerning the plea.

9.      I understand and agree to all of the above.  I know that I am free to change or delete anything contained in this statement.  I do not wish to make changes to this agreement because I agree with the terms and all of the statements are correct.

DATED this ___18th___ day of July, 2019

Sally Louise Kingston
Defendant

I certify that I have discussed this plea agreement with the defendant, that I have fully explained her rights to her, and that I have assisted her in completing this written agreement.  I

13

believe that she is knowingly and voluntarily entering the plea with full knowledge of her legal rights and that there is a factual basis for the plea.

DATED this _18th_ day of July, 2019.

Loren Washburn
Attorney for Defendant

I represent that all terms of the plea agreement between the defendant and the United States have been, or will be at the plea hearing, disclosed to the Court, and there are no undisclosed agreements between the defendant and the United States.

DATED this _18th_ day of July, 2019.

JOHN W. HUBER
United States Attorney

Richard M. Rolwing
Leslie A. Goemaat
Arthur J. Ewenczyk
Special Assistant United States Attorneys
John E. Sullivan
Senior Litigation Counsel

14

**Exhibit A**
*Property the Defendant Agrees to Forfeit*

a. The physical plant once known as Washakie Renewable Energy, LLC, located at 7550 W 24000 N Plymouth, Utah, and all the equipment installed therein, and affixed thereto.

b. Real property located at:

1. 2072 East Creek Road, Sandy, Utah 84190 United States
2. 16572 Somerset Ln., Huntington Beach, CA 92649
3. 4400 S. 700 E., Salt Lake City, UT 84107
4. 4829 S. 3960 W., Taylorsville, UT 84129
5. 4271 S. 1300 E., Salt Lake City, UT 84124
6. 1415 W. Crystal Ave., West Valley City, UT 84119  (APN 15-22-476-016)
7. 13 Acres FM 511 @ FM, Brownsville, TX 78521
8. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #07-090-0002)
9. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #07-037-0001)
10. 24050 N. 600 W. Plymouth, UT 84330Box Elder County, Utah 84330 United States (Parcel #08-041-0004)
11. 24050 N. 600 W Plymouth Box Elder County, Utah 84330 United States (Parcel #08-041-0019)
12. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 8433 United States (Parcel #08-041-0020)
13. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-041-0025)
14. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-041-0026)
15. 24050 N. 600 W. Plymouth, UT 84330Box Elder County, Utah 84330 United States (Parcel 08-041-0027)
16. 24050 N. 600 W. Plymouth Box Elder County, Utah 84330 United States (APN 08-041-0028)
17. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel 08-42-0018)
18. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-045-0005)
19. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-052-0008)
20. 2973 W. Mackay Meadows Pl., Salt Lake City, UT 84119
21. 2338 S. 1360 W. Salt Lake City, UT 84119
22. Real property in the Corozal free-zone area of Belize
23. 1305 W. Main, Mesa, AZ 85201 (APN: 134-31-005-F4)
24. 3179 S. Village Pine Cove, West Valley City, UT 84128
25. 8228 S. 2700 W., West Jordan, UT 84088

26. 7504 S. 2200 W., West Jordan, UT 84084
27. 1516 W. Culpepper Cir., Taylorsville, UT 84123
28. Deep Creek Ranch Ibapah, UT 84034 (APN: 07-097-0-0004)
29. 1401 W. Crystal Ave., West Valley City, UT 84119 (APN: 15-22-476-016)
30. 3365 S. Diamond Ridge Cir., West Valley City, UT 84128 (14-27-351-036)
31. 6710 S. 2700 W., West Jordan, UT 84084
32. 1995 W. Alexander St., Salt Lake City, UT 84119
33. 3062 E. Ensign Park Dr., Magna, UT 84044
34. 13907 S. 2200 W., Bluffdale, UT 84065
35. 3475 S. Centennial Rd., Magna, UT 84044
36. 780 N 1100 W., West Bountiful, UT 84087
37. 1533 W. Dowry Ct., Taylorsville, UT 84123 (APN: 21-15-409-040)
38. 5090 S. 1130 W., Taylorsville, UT 84123 (APN: 21-11-303-008)
39. 6938 W. Hunter Valley Dr., West Valley City, UT 84128 (APN: 14-27-330-010)
40. Vacant Land, Woods Cross, UT 84087 (APN: 06-079-0083)
41. APN: 15-25-230-024 Salt Lake City, UT
42. 2928 S. 7200 W., Magna, UT 84044
43. 1896 W. Seargant Dr., Salt Lake City, UT 84116 (APN: 08-27-108-008-0000
44. 445 E. Wilson Ave., Salt Lake City, UT 84115
45. 850 W. 600 N., West Bountiful, UT 84087
46. 1672 W. Southgate Ave., West Valley City, UT 84119 (APN: 15-22-454-021)
47. 7292 S. Redwood Rd., West Jordan, UT 84084
48. 22555 N Frontage Rd, Portage, UT 84331 (APN: 08-052-0012)
49. Box Elder County, Utah APN: 08-052-0014
50. Box Elder County, Utah APN: 08-052-0006
51. Box Elder County, Utah APN: 08-052-0005
52. Box Elder County, Utah APN: 08-052-0004
53. Box Elder County, Utah APN: 08-044-0004

c. The following vehicles:

1. 2010 Bugatti Veyron, Vehicle Identification Number ("VIN")
   VF9SC2C23AM795205;
2. 2015 Lamborghini Aventador, VIN: ZHWUR1ZD2FLA03759;
3. 2011 Cadillac Escalade, VIN: 1GYS4CEF8BR217610;
4. 2013 Lincoln MKX, VIN: 2LMDJ8JK8DBL49070;
5. 2013 Audi Q7, VIN: WA1LMAFEXDD009274;

d. Proceeds from the sale of the following vehicles:

1. 2008 Lamborghini Murcielago, VIN: ZHWBU37S78LA02905
2. 2007 Ferrari 599, VIN: ZFFFC60A070156760
3. Six Kenworth T660 trucks with the following VINs: 1XKAD49X9EJ418286;
   1XKAD49X9EJ418287; 1XKAD49X9EJ418406; 1XKAD49X9EJ418407;
   1XKAD49X9EJ417967; 1XKAD49X9EJ423229.

16

e.  Property purchased in or traceable to the following transactions:

| Date | Title Company | Bank Account | Amount |
|------|---------------|--------------|--------|
| 08/23/2013 | InWest Title Services | Fidelity 1212 | $377,131.52 |
| 12/09/2013 | InWest Title Services | BofA 9516 | $164,000.00 |
| 03/06/2014 | Sterling Drive | Fidelity 1212 | $523,678.42 |
| 03/07/2014 | Service Link LLC | USB 0221 | $332,000.00 |
| 03/14/2014 | Key Bank | USB 0221 | $284,000.00 |
| 11/17/2014 | American Secure Title | WRE 4874 | $407,772.92 |
| 3/20/2015 | American Secure Title | WRE 5016 | $417,393.97 |
| 10/16/2015 | American Secure Title | USB 0221 | $326,427.56 |
| 04/15/2015 | American Secure Title | WRE 5016 | $1,183,696.38 |

f.  Any and all assets purchased or investments made using proceeds, whether through Washakie Renewable Energy, United Fuel Supply, SBK Holdings USA, Inc,, or SBK Holding AS (Turkey), or Speedy Lion Renewable Fuel Investments, LLC, and any gains from those investments, including the following:

1. Mobstar, LTD (Ireland)
2. Vision Financial Markets, LLC
3. Set-App Technologies, Turkey including the following real properties:

| City | Town | Neighborhood | Ada No. | Parcel No. | M$^2$ | Owner |
|------|------|--------------|---------|------------|------|-------|
| Istanbul | Besiktas | Ortakoy | 38 | 19 | 287,00 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 172 | 18 | 80,00 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 1283 | 5 | 198,00 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 1283 | 6 | 225,75 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 1283 | 7 | 276,25 | Setap |

4. Biopharma, Turkey
5. Isanne, SARL
6. Komak Isi Yalitim Sistamleri Sanayi (Turkey)
7. Doga Dogan
8. Mega Varlik Yonetim A.S.
9. Accounts at Merrill Lynch

g.  All of the share interests and other equity of Beck's Sanitation, Inc., a Utah corporation, that Washakie Renewable Energy, LLC (signatory Jacob Kingston) purchased from Dan Magana in about July 2015.

h.  The outstanding balance of the loan owed by Zubair Kazi to SBK Holdings USA, Inc.; and

17

1. Any and all interest payments made or owed by Zubair Kazi.
2. Any and all principal payments made or owed by Zubair Kazi.