# Exhibit A

**U.S. Department of Justice**

TRINA A. HIGGINS
United States Attorney
District of Utah

REPLY TO:
Travis K. Elder
Assistant United States Attorney
Travis.Elder@usdoj.gov

Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176

(801) 524-5682
(800) 949-9451
Direct: (801) 325-3260

April 6, 2023

**Via e-mail:**
**mjt@andreozzibluestein.com**

**Zubair Kazi**
**c/o Michael Tedesco**

Re: Notice of Order of Forfeiture & Rights
*United States v. Jacob Ortell Kingston, et al.* | Case No. 2:18-cr-00365-JNP (District of Utah)

Dear Mr. Kazi:

The United States District Court for the District of Utah recently ordered that certain property be forfeited to the United States in the above-referenced criminal case. The enclosed Order of Forfeiture identifies the properties subject to forfeiture. By this letter, you have actual notice of the forfeiture of that property. This letter is only intended to apprise you of your rights and does not imply that you have a legally valid interest in any of the forfeited property.

You may respond to this notice in three ways. If you do not want to claim an interest in any of the property listed in the Order of Forfeiture, no further action is necessary. Otherwise, you may file a third-party petition with the Court and/or submit a petition for remission to the Attorney General.

## Requirements for Filing a Judicial Petition

Should you have a valid legal interest in the forfeited property, the procedure for filing a petition to adjudicate that interest in federal court is set out in 21 U.S.C. § 853(n).[1] If you choose to file a petition claiming an interest in the forfeited property, you must file it ***within 30 days of receiving this letter*** by mailing it to the United States District Court, Room 150, 351 South West Temple, Salt Lake City, UT 84101, under the above-listed case number. Additionally, you must send a copy to: Travis K. Elder, Assistant United States Attorney, 111 South Main Street, Suite 1800, Salt Lake City, UT 84111.

As set out in 21 U.S.C. § 853(n)(3), your petition must describe under penalty of perjury: (i) the particular property or properties in which you claim a legal right, title, or interest; (ii) the nature and extent of such right, title, or interest in each property; (iii) the time and circumstances of your acquisition of the right, title, and interest in each property; (iv) any additional facts and documents supporting your claim; and (v) the relief you seek. If you fail to timely file a judicial petition to assert your legal interest in the forfeited property, any right, title, and interest you claim in this property shall be lost and forfeited to the Government.

## Requirements for Submitting a Petition for Remission

Alternatively, or in addition to filing a petition in court, you may submit a petition for remission to the Attorney General, the requirements for which are found in 28 C.F.R. § 9. A petition for remission presumes the validity of the forfeiture, but requests that the forfeited property nevertheless be released to you. The petition for remission must be submitted ***within 30 days of receipt of this letter*** and ask that the Attorney General return the forfeited property to you or recognize your interest in the forfeited property. The petition must be submitted to the Attorney General, Attn: Travis K. Elder, Assistant United States Attorney, 111 South Main Street, Suite 1800, Salt Lake City, UT 84111. Further instructions and a form petition may be found at https://www.forfeiture.gov/FilingPetition.htm. This petition is separate and distinct from the petition described above that must be filed with the court.

## Expedited Settlement

Finally, our records indicate that you may have an interest in real property sought for forfeiture in the Order of Forfeiture. If you wish to request expedited consideration and settlement of your interest, please send your request to travis.elder@usdoj.gov ***within 10 days*** of receiving this letter. Include with your request a brief statement explaining why your interest should not be

[1]A petitioner must demonstrate that (1) petitioner's legal right, title, or interest in the property was vested in petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture, or (2) petitioner was a *bona fide* purchaser for value of the right, title, or interest in the property and at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture.

forfeited and attach the primary documentation that supports your interest including any applicable deeds, lien paperwork, tax statements, ledgers, financial statements, lease/rental agreements, etc.

Very truly yours,

TRINA A. HIGGINS
United States Attorney

TRAVIS K. ELDER
Assistant United States Attorney

Enclosure: Order of Forfeiture

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB ORTELL KINGSTON,<br>ISAIAH ELDEN KINGSTON,<br>RACHEL ANN KINGSTON,<br>SALLY LOUISE KINGSTON, and<br>LEV ASLAN DERMEN,<br><br>Defendants. | Case No. 2:18-cr-00365-JNP<br><br>PRELIMINARY ORDER OF FORFEITURE<br><br>Judge Jill N. Parrish |

1. As a result of guilty pleas to Count 1 in the Second Superseding Indictment, Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349, Jacob Ortell Kingston, Isaiah Elden Kingston, Rachel Ann Kingston, and Sally Louise Kingston (the "Kingston Defendants") must forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. As a result of guilty pleas to Count 23 of the Second Superseding Indictment, Conspiracy to Commit Concealment Money Laundering in violation of 18 U.S.C. § 1956(h), the Kingston Defendants must forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

3. As a result of guilty pleas to Counts 24 and 25 of the Second Superseding Indictment, Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h), Jacob Ortell Kingston and Isaiah Elden Kingston must forfeit to the United States any property, real or

personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

4. As a result of guilty pleas to Money Laundering in violation of 18 U.S.C. §§ 1956 and 1957 (Jacob: Counts 27-29, 31-42; Isaiah: Counts 31, 33-42; Rachel: Counts 40 and 41), Jacob Ortell Kingston, Isaiah Elden Kingston, and Rachel Ann Kingston must forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

5. As a result of his conviction for Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349 (Count 1 of the renumbered Indictment), Defendant Lev Dermen must forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

6. As a result of his conviction for Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (renumbered indictment Count 2), Lev Dermen must forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

7. As a result of his conviction for Money Laundering in violation of 18 U.S.C. §§ 1956 and 1957 (renumbered indictment Counts 3-10), Lev Dermen must forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

## FORFEITURE OF SPECIFIC ASSETS

8. Based on the information provided in the United States' motion, the Second Superseding Indictment, the guilty pleas of the Kingston Defendants that include their agreements regarding the forfeiture (Jacob Kingston Plea Agreement, ECF No. 439; Isaiah

Kingston Plea Agreement, ECF No. 445; Sally Kingston Plea Agreement, ECF No. 450; Rachel Kingston Plea Agreement, ECF No. 442), the declarations of Special Agent Stephen A. Washburn, the evidence presented at the trial of Lev Dermen, and the evidence presented at the forfeiture hearing held during the week of November 15- 19, 2021, the Court finds that the property and assets listed on Exhibit 1 (included herewith and incorporated herein) are subject to forfeiture, and that the government has established the requisite nexus between the property and assets and the offenses.

## FORFEITURE OF SPECIFIC PROPERTIES

9. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), 18 U.S.C. § 982(a)(1), 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), all right, title and interest in Assets A- T on Exhibit 1 are forfeited to the United States of America.

## GENERAL ORDERS OF FORFEITURE

10. As set forth in the Court's November 15, 2022 Memorandum Decision (ECF NO. 1376), all right, title, and interest in the assets and property derived from the proceeds of the Mail Fraud Conspiracy and Money Laundering charges and that have been transferred to the entities listed in Assets U - GG on Exhibit 1 are forfeited to the United States of America.

11. With regard to Assets U- GG on Exhibit 1, which are described in general terms pursuant to Rule 32.2(b)(2)(C), the United States may conduct discovery to determine the location of any such assets, and may move at any time pursuant to Rule 32.2(d) to amend this order to include any assets that have been so located.

## FORFEITURE MONEY JUDGMENTS

12. Based on the information provided in the government's motion, the Second Superseding Indictment, and the guilty plea of Jacob Kingston (including his agreement to the

imposition of a forfeiture money judgment), and the evidence presented at the Dermen trial, and the evidence presented at the forfeiture hearing held from November 15-19, 2021, the Court finds that the value of property Jacob Kingston obtained from the mail fraud conspiracy was $338,606,523, and that the value of property involved in his money laundering was at least $338,606,523. The Court further finds these funds are unavailable for forfeiture for one or more of the reasons specified in 21 U.S.C. § 853(p).

13. Similarly, the Court finds that the value of the property Dermen obtained from the mail fraud conspiracy was $181,847,376, and the value of property involved in his money laundering was at least $181,847,376. The Court further finds that these funds are unavailable for forfeiture for one or more of the reasons specified in 21 U.S.C. § 853(p).

14. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), the Court imposes against Jacob Ortell Kingston a MONEY JUDGMENT of $338,606,523 related to his Mail Fraud Conspiracy offense.

15. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), 18 U.S.C. § 982(a)(1) & (b)(1), and 21 U.S.C. § 853(p), the Court imposes against Jacob Ortell Kingston a concurrent MONEY JUDGMENT of $338,606,523 related to the Money Laundering offenses to which he pleaded guilty.

16. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), the Court imposes against Lev Dermen a MONEY JUDGMENT of $181,847,376 related to the Mail Fraud Conspiracy offense for which the jury convicted him.

17. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), 18 U.S.C. § 982(a)(1) & (b)(1), and 21 U.S.C. § 853(p), the Court imposes against Lev Dermen a concurrent MONEY

JUDGMENT of $181,847,376, related to the Money Laundering offenses for which the jury convicted him.

18. The United States will move to partially satisfy these money judgments to the extent of the net value it obtains from liquidating any of the properties and assets on Exhibit 1 applicable to each defendant. Although a forfeiture money judgment of $338,606,523 is imposed against Jacob Kingston for his offenses, and a money judgment of $181,847,376 is imposed against Lev Dermen for his offenses, which together total $520,453,899, the United States' may only recover a total of $511,842,773 for their convictions on Count One, and any amount collected in excess of this figure, is forfeitable pursuant to their convictions for the money laundering conspiracy. The only overlap in the judgment amounts exists because both Jacob Kingston and Lev Dermen obtained the $3,000,000 of fraud proceeds used to purchase the real property at 2072 East Creek Road in Sandy, Utah. Accordingly, the United States must credit any funds received from the liquidation of that property to both the money judgment against Jacob Kingston and the money judgment against Dermen. Because the money judgments otherwise reflect only the amounts each defendant obtained, the United States need not credit any other forfeitures applied to Jacob Kingston's money judgment to Dermen's money judgment, and it need not credit any other forfeitures applied to Dermen's money judgment to Jacob Kingston's money judgment.

## GENERAL PROVISIONS

19. Upon the entry of this Order, in accordance with Fed. R. Crim. P. 32.2(b)(3) and the terms of this Order, the Secretary of the Treasury or a designee is authorized to seize the properties and assets listed on Exhibit 1 as well as conduct any discovery proper in identifying, locating, or disposing of the property subject to forfeiture.

20. Upon entry of this Order, the Secretary of the Treasury or a designee is authorized to commence any applicable proceeding to comply with statutes governing third-party interests, including giving notice of this Order.

21. In accordance with 21 U.S.C. § 853(n)(1), the United States shall publish notice of this Order on the government's internet website, www.forfeiture.gov. The United States may also, to the extent practicable, provide written notice to any person known to have an alleged interest in the property and assets on Exhibit 1.

22. In accordance with 21 U.S.C. § 853(n)(2), any person, other than the defendants, asserting a legal interest in the subject property may, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the Court for a hearing without a jury to adjudicate the validity of his or her alleged interest in the subject property, and amendment of the order of forfeiture pursuant to 21 U.S.C. § 853(n) (applicable to this case under 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c)).

23. In accordance with 21 U.S.C. § 853(n)(3), any petition filed by a third party asserting an interest in the subject property shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the subject property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claims, and the relief sought.

24. Under Fed. R. Crim. P. 32.2(c)(1)(B), after the disposition of any motion filed under Fed. R. Crim. P. 32.2(c)(1)(A), and before a hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues.

25. Under 21 U.S.C. § 853(n)(7), the United States shall have clear title to the property described above following the Court's disposition of all third-party interests, or if no petitions are filed, following the expiration of the period provided in 21 U.S.C. § 853(n)(2) for the filing of third-party petitions.

26. Under Fed. R. Crim. P. 32.2(b)(4), this Order of Forfeiture shall become final as to the Defendants at the time of sentencing and shall be made part of the sentence and referenced in the judgment.

27. To satisfy the money judgments in whole or in part, the United States may move at any time pursuant to Rule 32.2(e) to amend this order of forfeiture to forfeit substitute property having a value not to exceed $511,842,773 (less any deductions due to partial satisfactions filed by the United States) for Count One, and $520,453,899 for the money laundering conspiracy convictions.

28. The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary under Fed. R. Crim. P. 32.2(e).

Dated March 24, 2023.

BY THE COURT:

______________________________
JILL N. PARRISH
United States District Court Judge

**Exhibit 1**
***Properties Listed on ECF No. 1166***

A. Real property located at:

1. 4400 S. 700 E., Salt Lake City, UT 84107, more legally described as:

   BEG N 0^14'13" E 689.12 FT & S 89^54'15" W 62 FT FR SE COR LOT 1, BLK 6, 10 AC PLAT A, BIG FIELD SUR; S 89^54'15" W 312.5 FT; S 0^14'13" W 230 FT M OR L; N 89^54'15" E 312 5 FT; N 0^14'13" E 229.5 FT TO BEG. 1.65 AC M OR L. 6532-1150 8613-0667 9041-6993 9080-7101 9088-5694, Tax ID: 22-05-151-012-0000

2. 4829 S. 3960 W., Taylorsville, UT 84129, more legally described as:

   LOT 76, SOUTHRIDGE SUB #3. 4122-18 4908-0131 9599-5852 10130-272 10148-5174 10173-1327, Tax ID: 21-08-151-002-0000

3. 4271 S. 1300 E., Salt Lake City, UT 84124, more legally described as:

   BEG S 172.26 FT FR NW COR LOT 4, BLK 2, 10 AC PLAT A, BIG FIELD SUR; S 114.84 FT; E 220 FT; N 114.84 FT; W 220 FT TO BEG. 0.58 AC M OR L. 7135-2631 8939-3115 9075-8415 10127-7898 10657-0269, Tax ID: 22-05-230-032-0000

4. 1415 W. Crystal Ave., West Valley City, UT 84119, more legally described as:

   BEG S 198 FT FR NW COR LOT 12, BLK 12, CHESTERFIELD PLAT A SUB; E 264 FT; S 615.68 FT M OR L; S 79¿06'31" W 203.56 FT; W'LY 65.43 FT ALONG A 1687 FT RADIUS CURVE TO L (CHD S 77¿59'51" W 65.43 FT); N 667.71 FT M OR L TO BEG. 5419-1068 8408-6652 9612-8315 10220-331, Tax ID: 15-22-476-016-0000

5. 1401 W. Crystal Ave., West Valley City, UT 84119, more legally described as:

   Beginning at Point South 198 Feet from the NE Corner of LOT 10, BLOCK 11, CHESTERFIELD PLAT •A•, SUBDIVISION and running thence West 286 feet; thence South 615.68 feet more or less thence North 79 DEG 06'31 • EAST 291.13 feet; thence North 560.65 feet more or less to the point of beginning. Tax ID: 15-22-476-018

6. 13 Acres FM 511 @ FM, Brownsville, TX 78521, more legally described as:

   ESPIRITU SANTO GRANT SHARE 22 13.05 ACS OUT OF 15.48 ACS TRACT F-2 ABST 2. Tax ID: 79-2220-0060-0402-00.

7. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #07-090-

0002), more legally described as:

SE/4 OF SEC 3 T13N R3W SLM. LESS: BEG AT NE COR OF SE/4 OF SEC, W 534.6 FT, SELY ALG N SIDE OF ST HWY 864.6 FT, N 673.2 FT TO BEG. LESS: RES. LESS: 46.33 ACRES TO UDOT. LESS: BEG AT A PT 1593 FT N ALG SEC LINE & 33 FT W OF SE COR OF SD SEC, W 765.7 FT TO E R/W LINE OF INTER- STATE FREEWAY (NO ACCESS LINE), N 1*09`53W 978.0 FT ALG SD LINE M/L TO N BNDRY OF SE/4 OF SD SEC, S 89* 29`05E 212.8 FT ALG N BNDRY OF SD SE/4 OF SD SEC TO W R/W LINE OF CO RD, S 37*01`12"E 951.37 FT ALG SD LINE, S 216.3 FT ALG SD LINE TO POB CONT 93.28 ACRES M/L, Tax No. 07-090-0002.

8. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0004), more legally described as:

   BEG 22 2/3 RDS W of the N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH RUNNING W 246 FT, TH S 17 RDS, TH E 246 FT, TH N 17 RDS to BEG. Less tracts deeded to: Raymond G. Yaworsky William D. Marsh. CONT .6 ACRES. Tax No. 08-041-0004

9. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0019), more legally described as:

   BEG AT A PT 538 FT W OF N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH W 82 FT, TH S 280.5 FT, TH E 82 FT, TH N 280.5 FT TO BEG. CONT 0.5 ACRES. Tax No. 08-041-0019

10. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0020), more legally described as:

    BEG AT A PT 374 FT W OF N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH W 82 FT, TH S 280.5 FT, TH E 82 FT, TH N 280.5 FT TO BEG. CONT 0.5 ACRES. Tax No. 08-041-0020

11. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0025), more legally described as:

    All the following within Portage City limits. BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor’s PROP/L, W to the W BDY of Grantor’s PROP, S 330 FT M/L to POB. CONT 10.23 AC M/L. Tax No. 08-041-0025

12. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-

0026), more legally described as:

All of the following within Portage City limits. N/2 of NE/4 of SEC 07 T14N R03W SLM. Portage. Less: N/2 of W/2 of N/2 of NE/4 of SEC 07. Less: BEG at N/4 COR of SEC 07, N89*57`38"E 2640 FT, S00*28`34"W 660.0 FT, S89*57`38"W 2640 FT, N00*28`34"E 660.0 FT to BEG. Less [08-041-0025]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT. 9.77 AC M/L. Tax No. 08-041-0026

13. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0027), more legally described as:

    All the following without Portage City limits. BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L OF Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT. 14.77 AC M/L. Tax No. 08-041-0027

14. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0028), more legally described as:

    All the following without Portage City Limits. N/2 of NE/4 of SEC 07 T14N R03W SLM. Less: N/2 of W/2 of N/2 of NE/4 of SEC 07. Less: BEG at N/4 COR of SEC 07, N89*57`38"E 2640 FT, S00*28`34"W 660.0 FT, S89*57`38"W 2640 FT, N00*28`34"E 660.0 FT to BEG. Less [08-041-0027]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's S PROP/L, W to the W BDY of Grantor's , S 330 FT M/L to POB. CONT. 10.23 AC M/L. Tax No. 08-041-0028

15. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-042-0018), more legally described as:

    N/2 of NW/4 of SEC 08 T14N R03W SLM. Less: All land lying E of W BDY of OSLRR R/W. Less [08-041-0027]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L OF Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's S PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT 46.91 AC. Tax No. 08-042-0018.

16. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-045-0005), more legally described as:

LOS 1, 2, 3, W/2 of NE/4, NW/4 of SE/4. Less to ST ROAD COMM. Being in SEC 15, TWP 14N, R 3W, SLM. CONTG 231.20 ACS. Tax No. 08-045-0005

17. Box Elder County, Utah APN: 08-044-0004, more legally described as:

    PARCEL 2: LOTS 4, 5, 6, 7, West half of the Southeast quarter of Section 10, Township 14 North, Range 3 West, Salt Lake Base and Meridian. TAX ID: 08-044-0004

18. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-052-0008), more legally described as:

    BEG N71*W 1350.1 FT FRM SE COR SEC 27 T14N R03W SLM, N40*06`W 435 FT, N19*22`W 240.5 FT, N18*03`W 329.8 FT, N89*38`E 456.2 FT, S00*24`E 876.2 FT TO BEG. ALSO: BEG AT PT 1320 FT W & 1312 FT N FRM SE COR SD SEC 27, W 396 FT TO E R/W/L OF CO RD, N04*40`E 274 FT, N15*20`E 1100 FT M/L TO N/L NW/4 SE/4 SD SEC 27, E 83 FT, S 1332 FT M/L TO BEG. CONT 7.20 AC. Tax No. 08-052-0008

19. 22555 N Frontage Rd, Portage, UT 84331, more legally described as:

    LOT 1, BRUCE ZUNDEL SUBDIVISION, as recorded March 26, 2001, as Entry No. 150913, in the office of the BOX ELDER County Recorder. Tax ID: 08-052-0012

20. Box Elder County, Utah APN: 08-052-0014, more legally described as:

    The Northwest Quarter of the Southeast Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian lying West of county road known as Frontage Road. Less: Utah Department of Transportation access road right of way. Less: Parcel No. 08-052-0013, created by Warranty Deed 216956. Tax ID: 08-052-0014

21. Box Elder County, Utah APN: 08-052-0006, more legally described as:

    PARCEL 3: Northeast Quarter of Southwest Quarter; Southwest Quarter of Southeast Quarter lying West of county road known as Frontage Road; and the East 31.58 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West. Salt Lake Meridian. Less: Lot 1, BRUCE ZUNDEL SUBDIVISION. Less: County road right of way. Tax ID: 08-052-0006

22. Box Elder County, Utah APN: 08-052-0005, more legally described as:

    PARCEL 2: The West 5.25 acres of Southwest Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian. Less: County

road right of way. Tax ID: 08-052-0005

23. Box Elder County, Utah APN: 08-052-0004, more legally described as:

PARCEL 1: Southwest Quarter of Southwest Quarter, less the West 5.25 acres thereof; also the West 8 42 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian. Tax ID: 08-052-0004

24. 2973 W. Mackay Meadows Pl., Salt Lake City, UT 84119, more legally described as:

LOT 106, MACKAY MEADOWS PL 1. 6866-0032 7355-2536 7817-0236 8523-4181 8859-4054 9021-7075 9789-5886 9790-5261 10195-9627, Tax No. 21-04-103-029-0000

25. 2338 S. 1360 W. Salt Lake City, UT 84119, more legally described as:

LOT 42, RIVERSIDE SUB #2. 5051-495 5186-0210 5650-1495 6268-2706 6997-2651 7012-2186 7524-0538 8381-1643 8431-2037 8459-2888 8462-4873 8646-131 9025-774, Tax No. 15-22-283-010-0000

26. 1305 W. Main, Mesa, AZ 85201 more legally described as:

That portion of the North half of the Southeast quarter of Section 20, Township 1 North, Range 5 East, of the Gila and Salt River Base and Meridian, Maricopa County, Arizona, more particularly described as follows: COMMENCING at the center of said Section 20; THENCE South 00 degree 00' 05" West, a distance of 50.00 feet to a point on the Southerly right-of-way line of West Main Street; THENCE South 89 degrees 59' 55" East, a distance of 1284.79 feet along said right-of-way to the POINT OF BEGINNING; THENCE continuing South 89 degrees 59' 55" East, a distance of 1355.61 feet along the Southerly right-of-way of West Main Street; THENCE South 44 degrees 27' 28" East, a distance of 28.01 feet, measured (South 44 degrees 22' 22" East, a distance of 28.05 feet, record);THENCE South 01 degrees 05' 58" West, a distance of 310.44 feet, measured (310.63 feet, record) to the beginning of a curve to the left; THENCE Southeasterly along said curve through a central angle of 01 degrees 54' 20" and having a radius of 11,514.20 feet, a distance of 382.95 feet; THENCE South 00 degree 48' 22" East, measured (South 01 degrees 54' 20" East, record) a distance of 100.00 feet to the beginning of a curve to the left; THENCE Southerly along said curve through a central angle of 01 degrees 54' 20" and having a radius of 11,404.20 feet, a distance of 121.69 feet; THENCE North 89 degrees 56' 55" West, a distance of 1370.79 feet; THENCE North 00 degree 00' 05" East, a distance of 983.77 feet to the POINT OF BEGINNING;EXCEPT that portion deeded to CABS, L.L.C., an Arizona limited liability company, in Document No. 95-462362, records of Maricopa County, Arizona; and EXCEPT that portion deeded to the City of Mesa in Document No. 96-73629, records of Maricopa County, Arizona; and

EXCEPT that portion deeded to Fazoli's-Nellis, L.L.C., a Kentucky limited liability company, in Document No. 97-347912, records of Maricopa County, Arizona Tax ID: 134-31-005F4

27. 3179 S. Village Pine Cove, West Valley City, UT 84128, more legally described as:

Lot 1208, HUNTER VILLAGE PHASE 12 SUBDIVISION, according to the official plat thereof as recorded in the Office of the Salt Lake County Recorder. State of Utah Tax ID :14-27-401-027-0000

28. 8228 S. 2700 W., West Jordan, UT 84088, more legally described as:

Beginning at a point South 0 degree 06'24" West 214.50 feet from the center of Section 33, Township 2 South, Range 1, West Salt Lake Base & Meridian; and running thence South 0 degree 06'24" West 156.75 feet; thence North 89 degrees 59'03" West 305.25 feet; thence North 0 degree 06'24" East 321.25 feet; thence South 89 degrees 59'03" East 24.75 feet; thence South 0 degree 06'24" West164.50 feet; thence South 89 degrees 59'03" East 280.50 feet to the point of beginning. Excepting therefrom that certain parcel deeded to the City of South Jordan described as follows: Beginning South 0 degree 06'24" West214.5 feet from the center of Section 33, Township 2 South, Range 1 West, Salt Lake Base & Meridian; and running thence South 0degree 06' 24" West 156.75 feet; thence North 89 degrees 59'03" West 40 feet; thence North 0 degree 06'24" East 156.75 feet; thence South 89 degrees 59'03" East 40 feet to the point of beginning. Tax ID : 21-33-328-012-0000

29. 7504 S. 2200 W., West Jordan, UT 84084, more legally described as:

Commencing 35 rods South of the Northeast corner of the Southeast Quarter of Section 28, Township 2 South, Range 1 West, Salt Lak1 Base and Meridian, and running thence West 20.75 rods; thence South 10 rods, more or less, to a fence; thence East 20.75 rods; thence North 10 rods, more or less, to the place of beginning. Less and Excepting therefrom any portion lying within the bounds of the South Jordan Canal and 2200 West Street Tax ID: 21-28-429-007

30. 1516 W. Culpepper Cir., Taylorsville, UT 84123, more legally described as:

LOT 4, Brookshire Estates No. 4, according to the official plat thereof on file and of record in the office of the Salt Lake County Recorder. Tax ID: 21-22-258-021

31. Deep Creek Ranch Ibapah, UT 84034, more legally described as:

PARCEL 1: The Southwest Quarter of Section 22, Township 10 South, Range 19 West, Salt Lake Base and Meridian.

PARCEL 2: Beginning at the northeast corner of the northwest quarter of Section 27,

Township 10 South, Range 19 West, Salt Lake Base and Meridian, thence south 990 feet; then west 660 feet; thence south 1650 feet more or less to the quarter section line; thence west 1980 feet more or less to the west section line of said section; thence north 2640 feet more or less to the northwest corner of said section; thence east 2640 feet more or less to the point of beginning, together with the right to all the water from Rock Creek and water from Pass Creek as evidenced by water user claim no. WR-17-201, WR-17-187, WR-17-66, WR-17-82 and WR-17-183. Tax ID: 07-097-0-0003 & 07-097-0-0004

32. 9243 Grand Teton Drive, West Jordan, UT 84088, more legally described as:

    Lot 334, Teton Estates No. 3 Subdivision, according to the official plat thereof, as recorded in the office of the Salt Lake County Recorder. Tax ID: 27-06-482-009-0000

B. Any and all assets purchased or investments made using proceeds, whether through Washakie Renewable Energy, United Fuel Supply, or Speedy Lion Renewable Fuel Investments, LLC, and any gains from those investments, including the following:

    1. Jacob Kingston's 125 shares in Mobstar, LTD (Ireland) (including the $10,000 paid by B. Morrissey a purchase option price of the same).

C. $56.3 million loan receivable owed to Washakie Renewable Energy LLC by SBK Holding, AS (Turkey)

D. All of the share interests and other equity of Beck's Sanitation, Inc., a Utah corporation, that Washakie Renewable Energy, LLC (signatory Jacob Kingston) purchased around July 2015.

***Properties listed on ECF No. 1376***

E. The following assets related to the physical plant that was once known as Washakie Renewable Energy, LLC, located at 8100 W 24000 N Plymouth, Utah:

    (1) The biodiesel production plant and all equipment contained or affixed therein;

    (2) The crush plant, the warehouse, and all equipment contained or affixed therein

    (3) The liquid storage tank farm; and

    (4) The rail line; and

    (5) all profits derived from lease payments paid or owed for, and that are attributable to, the use of the (i) biodiesel production plant and all equipment

contained or affixed therein; (ii) the crush plant, the warehouse, and all equipment contained or affixed therein; (iii) the liquid storage tank farm; and (iv) the rail line.

F. Proceeds from the sale of 2072 East Creek Road, Sandy, Utah

G. Proceeds from the sale of 1901-1903 W. Magnolia Blvd, Burbank, California

H. Proceeds from the sale of 5761 S. Anderson Street, Vernon, California,

I. Proceeds from the sale of 6507 Teesdale, Valley Glen, California

J. Proceeds from the sale of 160 E. Alondra Blvd, Carson, California

K. Proceeds from the sale of 12026 Hoffman St., #302, Los Angeles, California

L. Real property located at:

1. 16572 Somerset Lane, Huntington Beach, California, more legally described as:

   TR 4677 LOT 36 all-inc adjacent wharfage rights in a defined area of 400 FT Channel, SH AS AP 178-023-13, Tax ID: 178-411-03

2. 1605 Cactus Road, San Diego, California, more legally described as:

   LOTS 1 and 2 of Otay Heights Business Park, Unit No. 1, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County on December 15, 1992. EXCEPTING from LOT 1, that portion Deeded to the City of San Diego by Document recorded March 12, 1997 as Document No. 1997-109895 and described as follows: All that portion of LOT 1 of Otay Heights Business Park, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County December 15, 1992 described as follows: Commencing at the Northeast corner of said Lot 1; thence North 88 degrees 26' 18" West 217.78 feet, along the North line of said Lot 1, to the beginning of a curve, concave Southeasterly and having a radius of 40.00 feet, said beginning of a curve being the point of beginning; thence Southwesterly along the arc of said curve, a distance of 63.26 feet, through a central angle of 90 degrees 36' 55"; thence North 89 degrees 03' 12" West 5.00 feet to the West line of said Lot 1; thence North 0 degree 56' 46" East 20.22 feet, along the West line of said Lot 1, to the beginning of a curve, concave Southeasterly, having a radius of 20.00 feet; thence Northeasterly along the arc of said curve, a distance of 31.63 feet through a central angle of 90 degrees 36' 58", a radial line bears North 1 degree 33' 42" East, to a point of cusp on the North line of said Lot 1; thence South 88 degrees 26' 18" East 25.22 feet, along the North line of said Lot 1, to the point of beginning. Also Known

as: 1605 Cactus Road, San Diego, CA 92154. APN Numbers: 646-270-11-00 and 646-270-02-00

3. 13720 Vanowen Street, Van Nuys, California, more legally described as:

The Northerly 210.40 feet of the Easterly 300 feet of Lot 7 of Tract No. 1000 as per Map recorded in Book 19, Pages 1 to 34 inclusive of Map in the Office of the County Recorder of said County. Except therefrom the Easterly 160 feet of said Land. Also excepting at minerals, coal oils, petroleum and kindred substances and natural gas under and in said land. Also known as: 13720 Vanowen Street, Van Nuys, CA 91405. APN Number: 2238-010-030

4. 7004 Camino Maquiladora, San Diego, California, more legally described as:

All that certain real property situated in the County of San Diego, State of California, described as follows: Lots 1 and 2 of Otay Heights Business Park, Unit No. 1, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County on December 15, 1992. EXCEPTING from Lot 1, that portion Deeded to the City of San Diego by Document recorded March 12, 1997 as Document No. 1997-109895 and described as follows: All that portion of Lot 1 of Otay Heights Business Park, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County December 15, 1992 described as follows: Commencing at the Northeast corner of said Lot 1; thence North 88 degrees 26' 18" West 217.78 feet, along the North line of said Lot 1, to the beginning of a curve, concave Southeasterly and having a radius of 40.00 feet, said beginning of a curve being the point of beginning; thence Southwesterly along the arc of said curve, a distance of 63.26 feet, through a central angle of 90 degrees 36' 55"; thence North 89 degrees 03' 12" West 5.00 feet to the West line of said Lot 1; thence North 0 degree 56' 46" East 20.22 feet, along the West line of said Lot 1, to the beginning of a curve, concave Southeasterly, having a radius of 20.00 feet; thence Northeasterly along the arc of said curve, a distance of 31.63 feet through a central angle of 90 degrees 36' 58", a radial line bears North 1 degree 33' 42" East, to a point of cusp on the North line of said Lot 1; thence South 88 degrees 26' 18" East 25.22 feet, along the North line of said Lot 1, to the point of beginning. Also Known as: 1605 Cactus Road, San Diego, CA 92154. APN Numbers: 646-270-11-00 and 646-270-02-00

5. 14021 Margate Street, Sherman Oaks, California, more legally described as:

Parcel A of Parcel Map LA NO. 2009-3920, in the city of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 372, PAGES 70 and 71 of parcel maps, in the office of the county recorder of said county. Except therefrom all oil, gas, minerals and other hydrocarbon substances, lying below a

depth of 500 feet, without the right of surface entry. Also known as: 14027 Margate Street, Los Angeles, CA 91401 Tax ID : 2247-018-032

6. Parcel APN: 427-111-11 Mojave, California, in the name of Desert Properties, Holding, LLC, more legally described as:

   Parcel 2 of Parcel Map 885, in the County of Kern, State of California, as per map recorded in BOOK 7, PAGE 76 of Parcel maps, in the office of the County Recorder of said county. More commonly known as: APN: 427-111-11, Mojave, CA 93501

7. Parcel APN: 427-111-08 Mojave, California, in the name of Desert Properties, Holding, LLC, more legally described as:

   Parcels 1 of Parcel Map No. 885, in the County of Kern, State of California, as per map recorded in BOOK 7, PAGE 76 of Parcel Maps, in the office of the County Recorder of said county. More commonly known as: APN: 427-111-08, Mojave, CA 93501

8. Parcel APN: 427-111-10 Mojave, California, in the name of Desert Properties, Holding, LLC, more legally described as:

   Parcel 3 of Parcel Map No. 885, in County of Kern, State of California, as per map recorded in BOOK 7, PAGE 76 of parcel maps, in the Office of the County Recorder of said county. More commonly known as: APN: 427-111-10, Mojave, CA 93501

9. Willowcrest Apartments, 5217 Willowcrest Avenue, Los Angeles, California, more legally described as:

   That portion of LOT 163 of property of Lankershim Ranch land and water company in the City of Los Angeles County of Los Angeles State of California as per map recorded in BOOK 31 PAGES 39 through inclusive of miscellaneous records in the office of the County Recorder of said county described as follows commencing at the Southeast corner of said LOT 163 thence South 89 54'10 West along the South line of said lot 155 03 feet thence North 10 13'04 West 150 feet to the true point of beginning thence South 880 54 10 West parallel with the South line of said Lot 150 02 feet thence North 10 13'07 West 50 feet thence North 880 54 10 East parallel with the South line of said Lot 15002 feet thence South 1 13'04 East 50 feet to the point of beginning except therefrom the Easterly 25 feet thereof also except therefrom any portion thereof lying with lines of Willow Crest Avenue as widened to 60 feet the above described property is shown as part of parcel 147 on licensed surveyor S Map recorded in BOOK 13 PAGE 16 of record of surveys of said county. Also known as: 5217 Willowcrest Avenue, (North Hollywood Area) Los Angeles, CA 91601

10. 9153 Stellar Court, Corona, California, more legally described as:

Parcel A: Parcel 2 of lot line adjustment No. 4546. Recorded March 11, 2003 as instrument No. 03-169962 of official records. Being more particularly described as follows: That portion of Parcel 8 of Parcel Map 28834-2, in the unincorporated area of the county of Riverside, State of California, as per map recorded in Book 198, Pages 97 through 101. Inclusive of parcel maps. In the office of the County Recorder of said county and that portion of parcel A (portion of Parcel 7 of said Parcel Map 28834-2) of lot merger 1339 recorded December 11, 2002 as instrument No. 2002-741246 of official records of said county, more particularly described as follows: Beginning at the most Westerly corne4r of said Parcel 8, said point being on the Southeasterly right-of-way of stellar court distant 33.00 feet from the Centerline thereof; thence North 61 Degrees 42' 54" East along said right-of-way, 30.41 feet to the true point of beginning; thence continuing along said right-of-way, 200.60 feet; thence South 28 degrees 17' 06" East, 117.37 feet; thence North 61 degrees 42' 54" East parallel to said Southeasterly right-of-way, 33.86 feet; thence South 28 degrees 17' 06" East, 155.57 feet; thence South 31 degrees 06" 12" East, 32.85 feet; thence South 28 degrees 12' 10" East to a point on the Northwesterly right-of-way Brown Canyon channel distant 18.25 feet from the centerline thereof, 102.58 feet; thence South 55 degrees 49' 12" West along said Northwesterly right-of-way, 197.95 feet; thence North 28 degrees 17' 06" West, 89.99 feet; thence North 24 degrees 42' 09" West, 32.99 feet; thence North 28 degrees 17' 06" West, 156.67 feet; thence South 61 degrees 42' 54" West parallel to said right-of-way, 9.02 feet; thence North 28 degrees 18' 03" West, 74.65 feet; thence South 61 degrees 42' 54" West parallel to said right-of-way, 32.04 feet; thence North 28 degrees 17' 06" West, 74.44 feet to the true point of beginning.

PARCEL B: An easement for mutual access and private utility purposes over that portion of Parcel 1 of lot line adjustment No. 4546. Recorded March 11, 2002 as instrument No. 2003-169962 of official records, as set forth in Deed recorded July 15, 2008 as instrument No.  2008-0385493 of official records.

PARCEL C: An easement for mutual access purposes over that portion of Parcel 3 of lot line adjustment No. 4546. Recorded March 11, 2003 as instrument No. 2003-169962 of official records. As set forth in Deed recorded July 15, 2008 as Instrument No. 2008-0385492 of official records.

PARCEL D: An easement for private water purpose over that portion of Parcel 3 of lot line adjustment No. 4546. Recorded March 11, 2003 as instrument No. 2003-169962 of official records. As set forth in Deed recorded July 15, 2008 as instrument No. 2008-0385491 of official records.

PARCEL E: An easement for building encroachment purposes over that portion of Parcel 3 of lot line adjustment No. 4546. Recorded March 11, 2002 as Instrument No. 2003-169962 of official records. As set forth in Deed recorded July 15, 2008 as Instrument No. 2008-0385490 of official records. Tax ID : 283-440-017

11. Belize Real Property – A parcel in the Banque Free Zone, Belize, described as Parcel 3628, Block 23, titled in the name of G.T. Energy, LLC

**Vehicles**

M. 2010 Bugatti Veyron, Vehicle Identification Number ("VIN") VF9SC2C23AM795205.

N. 2015 Lamborghini Aventador, VIN: ZHWUR1ZD2FLA03759

**Other Assets**

O. "Kazi loan receivable" identified as the outstanding amount of principal and interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21.

P. Solar turbines and related equipment paid for by the $3,900,000 wire transfer to Hendrix Henergy

Q. Compressors purchased by Century Energy or Industrial Energy Solutions

R. Industrial Equipment and/or storage tank purchased by Century Energy or Industrial Energy Solutions

S. Any asset purchased or traced to the $275,000 transfer on 11/20/19 to Century Energy account #9961 ("welding machines, skid manufacturing, and a 5-ton crane")

T. Cash/Currency in the amount of $9,104,500.00 representing cash in lieu of the Motor Yacht *Queen Anne,* registered in the Cook Islands, No. 2732, IMO #9704958, Call Sign E5U3623, which was sold by interlocutory sale based upon this Court's order in Case No. 2:21-cr-140, ECF No. 19.

**General Orders of Forfeiture**

Pursuant to Rule 32.2(b)(2)(C), the United States is entitled to a General Order of Forfeiture against the following for any and all property that constitutes or is derived from proceeds of mail fraud, or that constitutes property involved in money laundering, or property traceable to such property:

U. SBK Holdings USA, Inc,

V. Century Energy

W. The $4 million that remained at Komak Isi Yalitim Sistamleri Sanayi (Turkey) after being transferred to Komak on 12/31/13, and the $3,810,000 transferred to Komak Isi Yalitim Sistamleri Sanayi (Turkey) by Noil Energy on 3/22/16

X. SBK Holdings, AS

Y. Biofarma, Ilac, AS (Turkey)

Z. Isanne SARL (Luxembourg)

AA. Mega Varlik Yonetim (Turkey)

BB. Setap Teknoloji (Turkey), and Blane Teknologi, AS (Turkey)

CC. G.T. Energy LLC (including the $1 Million Certificate of Deposit purchased on June 2, 2016)

DD. Alptekin Ylimaz.

EE. DK Zvezda

FF. Speedy Lion

GG. Pillar Law Group

# Exhibit B

**Domestic Wire Transfer Confirmation**
Kazi Foods of New York Inc.
10/03/2013 10:05

Tracking ID: [redacted]6800
Application ID: [redacted]4942

## Template Info

| | | | |
|---|---|---|---|
| Template Name | KMX TO KMX BOA 3140 | Template Nickname | KMX TO KMX BOA 3140 |
| Template ID | 000000000007505308 | Template Limit | $2,000,000.00 |

## Send Wire To

### Beneficiary Info

| | |
|---|---|
| Beneficiary Name | KAZI MANAGEMENT ST CROIX |
| Nickname | |
| Address 1 | 227 KING STREET |
| Address 2 | ST CROIX VI 00840 |
| City | FEDERIKSTED |
| State | |
| ZIP Code | |
| Contact Person | SHAMBHU ACHARYA |
| Beneficiary Scope | Business |
| Account Number | [redacted]140 |
| Account Type | Checking |

### Beneficiary Bank Info

| | |
|---|---|
| Bank Name | BANK OF AMERICA, N.A., NY |
| Address 1 | |
| Address 2 | |
| City | NEW YORK |
| State | New York |
| ZIP Code | |
| FED ABA | 026009593 |

## Debit Info

| | |
|---|---|
| Debit Account | [redacted]2953-Checking - Kazi Mgmt St Croix LLC - USD |
| Amount | $1,400,000.00 |
| Requested Value Date | 10/3/13 |
| Expected Value Date | 10/3/13 |

**Reference for Beneficiary**
KAZI FOODS

**Originator to Beneficiary Information**
INTRA COMPANY TRANSFER

**Bank to Bank Information**

**By Order Of Information**
Name
Address 1
Address 2
Address 3
Account Number

Confidential

**Domestic Wire Transfer Confirmation**
**Kazi Foods of New York Inc.**
**10/01/2013 13:43**

**Tracking ID:** [redacted]5900
**Application ID:** [redacted]8526

## Send Wire To

### Beneficiary Info

| | |
|---|---|
| Beneficiary Name | KAZI MANAGEMENT ST CROIX |
| Nickname | |
| Address 1 | 227 KING STREET |
| Address 2 | ST CROIX VI 00840 |
| City | FEDERIKSTED |
| State | |
| ZIP Code | |
| Contact Person | SHAMBHU ACHARYA |
| Beneficiary Scope | Business |
| Account Number | [redacted]3140 |
| Account Type | Checking |

### Beneficiary Bank Info

| | |
|---|---|
| Bank Name | BANK OF AMERICA, N.A., NY |
| Address 1 | |
| Address 2 | |
| City | NEW YORK |
| State | New York |
| ZIP Code | |
| FED ABA | 026009593 |

### Debit Info

| | |
|---|---|
| Debit Account | [redacted]2953-Checking - Kazi Mgmt St Croix LLC - USD |
| Amount | $600,000.00 |
| Requested Value Date | 10/1/13 |
| Expected Value Date | 10/1/13 |

### Reference for Beneficiary

KAZI FOODS

### Originator to Beneficiary Information

INTRA COMPANY TRANSFER
WIRE TRANSFER PER ZUBAIR KAZI

### Bank to Bank Information

### By Order Of Information

Name
Address 1
Address 2
Address 3
Account Number

Confidential

# Exhibit C

**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

AI 0 318 361 947 014789 #001 AV 0.381

KAZI MANAGEMENT ST. CROIX, LLC
3671 SUNSWEPT DR
STUDIO CITY, CA 91604-2325

**Customer service information**

1.888.BUSINESS (1.888.287.4637)

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your Full Analysis Business Checking - Small Business

for June 1, 2014 to June 30, 2014 Account number: [redacted] 3140

**KAZI MANAGEMENT ST. CROIX, LLC**

## Account summary

| | |
|---|---|
| Beginning balance on June 1, 2014 | $2,010,000.00 |
| Deposits and other credits | 0.00 |
| Withdrawals and other debits | -1,000,000.00 |
| Checks | -0.00 |
| Service fees | -0.00 |
| **Ending balance on June 30, 2014** | **$1,010,000.00** |

# of deposits/credits: 0

# of withdrawals/debits: 1

# of days in cycle: 30

Average ledger balance: $1,110,000.00

Effective June 2014, the Deposit Agreement and Disclosures booklet ("Booklet") which governs your account has been updated. The account will continue to be subject to the Booklet as updated from time to time. Please contact your account representative to receive the updated version. Continued use of this account indicates your agreement to be bound by the terms and conditions contained in this Booklet.

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Change of address - Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our banking centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled. You may also review your activity online or visit a banking center for information.

© 2013 Bank of America Corporation

**Bank of America, N.A. Member FDIC and Equal Housing Lender**

## Withdrawals and other debits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 06/04/14 | CD OPENING FDES NWA 0057786 NBK2Y3A | | [redacted]0015 | -1,000,000.00 |
| **Total withdrawals and other debits** | | | | **-$1,000,000.00** |

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) |
|---|---|---|---|
| 06/01 | 2,010,000.00 | 06/04 | 1,010,000.00 |

✓ To help you BALANCE YOUR CHECKING ACCOUNT, print a copy of the "How to Balance Your Bank of America Merrill Lynch Account" page by visiting CashPro® University at cashproonline.bankofamerica.com.

This page intentionally left blank

# Exhibit D

# CONFIDENTIAL SETTLEMENT AND GENERAL RELEASE AGREEMENT

This Confidential Settlement and General Release Agreement (hereinafter "Agreement") is entered into by and between the following parties:

- **Individual Parties**: ZUBAIR KAZI AND KHATIJA KAZI, his wife ("KAZI"): and
- **Corporate Parties**: WASHAKIE RENEWABLE ENERGY, LLC ("WASHAKIE"). LION'S AVIATION LLC ("LION'S") , FIRST AMERICAN TITLE INSURANCE COMPANY, INC. ("FTI") and KAZI FOODS, INC. ("KAZI FOODS").

## RECITALS

A. Disputes have arisen between the parties in some form or another. Said dispute resulted in the filing of a lawsuit filed before the Los Angeles County Superior Court, identified as follows: *Zubair Kazi and Khatija Kazi v. Washakie Renewable Energy, LLC; Lion's Aviation LLC and American Title Insurance Company, Inc.*, being Case No.: EC062927 (the "Lawsuit"). Said Lawsuit definition shall include all of the claims and counterclaims made by any of the parties therein.

B. Plaintiffs and Defendants to the Lawsuit (sometimes collectively, along with Kazi Foods, referred to in this Agreement as the "Parties") wish to resolve the Lawsuit completely among themselves without any admission of liability and to avoid the expense of further litigation.

Now, therefore, for valuable consideration, including the mutual covenants, each of which is a condition to each other promise and covenant contained herein, the Parties agree as follows:

## AGREEMENT

1. Settlement and Dismissal

In settlement of the Lawsuit, the Parties have agreed

(a) That the recitals set forth above are incorporated in this Agreement;

(b) That certain payments are to be made by a Zubair Kazi solely owned entity, Kazi Foods, to Lion's evidenced by a Note, Security Agreement and Financing Statements ("Payment Documents") all of which are hereto as Exhibit A;

(c) That Washakie and ATI have, or shall, adequate certain consideration from Lion's for the purpose of entering into this Agreement, including, but not limited to the releases stated herein;

(d) That, upon receipt in the amount of the first $140,000 ("Payable Sum") payable under the Payment Documents from Kazi Foods, Inc., Washakie and Lion's shall execute and have recorded, within five (5) days of the receipt of the Payable Sum, the Substitution of Trustee and Deed of Full Reconveyance to all the real properties named in the Lawsuit against which Deeds of Trust have been recorded by Washakie and Lion's; and

(e) The dismissal of the Lawsuit with prejudice within five (5) days of the execution of this Agreement by the Parties, except as set forth in Section 3 (b) below.

2. Good Faith Settlement

The Parties agree and stipulate that this Agreement is made in good faith between the Parties, and each of them, as those terms are defined pursuant to *California Code of Civil Procedure* §§ 877 and 877.6, and entered into voluntarily without any duress, undue influence, fraud or collusion on the part of, or on behalf of, any other party.

3. Governing Law

(a) This Agreement shall be construed, enforced, and governed by the laws of the State of California, with venue exclusively in Los Angeles County, California.

(b) Notwithstanding the dismissal of the case as described in Section 1 (e) above, the Court in this Lawsuit shall retain jurisdiction to enforce the terms of this Agreement pursuant to Code of Civil Procedure Section 664.6 or by any other procedure permitted by law in the Los Angeles County Superior Court.

4. Mutual Release Of Claims

In consideration for the provisions of this Agreement and the payment and continuing payments of the settlement sums and releases contained herein, and except for the obligations of the parties as set forth in Section 1 herein, the Parties hereto release, acquit and forever discharge each other ("Release"), pertaining to the pending lawsuit: *Zubair Kazi and Khatija Kazi v. Washakie Renewable Energy, LLC; Lion's Aviation LLC and American Title Insurance Company, Inc.*, being Case No.: EC062927, including the following parties:

**Individual Parties**: ZUBAIR KAZI AND KHATIJA KAZI, his wife, and

**Corporate Parties**: WASHAKIE RENEWABLE ENERGY, LLC, LION'S AVIATION LLC, FIRST TITLE INSURANCE COMPANY, INC., and KAZI FOODS, INC.

The Release extends to the foregoing Parties, their past and present officers, directors, agents, employees, attorneys, owners, shareholders, insurers, subsidiaries, divisions, partners, beneficiaries, relatives, heirs, spouses, executors, administrators, and assigns, predecessors, successors, servants, associates, divisions or affiliated corporations, whether previously or hereinafter affiliated in any manner, from any and all claims, demands, causes of lawsuit, obligations, damages, attorneys' fees, costs and liabilities of any nature whatsoever, whether known or unknown, suspected or claimed, which any Party ever had, now has, or may claim to have by reason of any matter, cause or thing, alleged in the Lawsuit or which could have been alleged in the Lawsuit subject to this Agreement.

This Release includes any claims or demands for damages (special, general, restitutionary, restorative, or punitive), compensatory damages, injunctive or declaratory relief, liquidated damages, penalties, equitable relief, attorneys' fees, costs of court, disbursements, interest, and any and all other loss, expense, or detriment of whatever kind or character resulting from, growing out of, connected with or related in any way to the subject of the Lawsuit.

The Release set forth herein shall not release any Party from performing those items set forth in Section 1 contained herein.

5. Waiver of *Civil Code* § 1542 Rights

Each party hereto expressly waives any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

6. Representations and Warranties

(a) The Parties represent and warrant that they are the sole and lawful owners of all claims they are releasing herein, that they have the power and authority to execute a release of any such claims, and that they have not heretofore assigned or transferred any such claims to any person, corporation, or entity.

(b) Each party has made an investigation of the facts pertaining to this Agreement and of all matters pertaining thereto as deemed necessary.

(c) Each of the Parties to this Agreement acknowledges and represents that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, and that it freely and voluntarily executed this Agreement.

(d) Each of the Parties to this Agreement further acknowledges and represents that it has read this Agreement in its entirety and has had the terms used herein and the consequences thereof explained by said independent counsel.

(e) In satisfaction of Section 1 (c) of this Agreement, Lion's represents that is has paid or will pay good and valuable consideration to both Washakie and FTI, and Washakie and FTI represent that they have received good and valuable consideration from Lion's, for the purpose of this Agreement and Release.

7. Fully Integrated Agreement

This Agreement memorializes and constitutes the entire agreement and understanding between the Parties pertaining to the subject matter of this Agreement and the Lawsuit, and supersedes and replaces all prior or contemporaneous negotiations, proposed agreements, and agreements, whether written or unwritten.

8. Successors and Assigns

This Agreement shall inure to the benefit of, and shall be binding upon, the heirs, successors, and assigns of the parties hereto and each of them.

9. Severability

If any provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction, such provision shall be deemed to be severed and deleted, and neither such provision, nor its severance and deletion, shall affect the validity of the remaining provisions.

10. Counterparts

This Agreement may be executed and delivered in multiple originals counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement and the whole shall be binding on all the parties hereto. Because time is of the

essence, it is agreed that fax signatures shall be deemed originals. This Agreement shall be deemed to be executed on the last date any such counterpart is executed (hereinafter, the "Effective Date").

11. Waiver

Failure to insist on compliance with any term, covenant or condition contained in this Agreement shall not be deemed a waiver of that term, covenant or condition, nor shall any waiver or relinquishment of any right or power contained in this Agreement at any time or more times be deemed a waiver or relinquish of any right or power at any other time or times.

12. Confidentiality

The contents and the existence of this Agreement, and the Parties' discussions pertaining to it, are and shall remain confidential, and neither Party will communicate or allow communication in any manner (written or oral) to anyone with respect thereto, except (1) for purposes of enforcing this Agreement pursuant to *California Code of Civil Procedure* § 664.6; (2) by order of the court or as otherwise required by law; (3) to any auditors, accountants, tax preparers, attorneys or relevant tax authorities as may be appropriate for the disclosing party's or insurer's legitimate business purpose.

13. Attorneys' Fees and Costs

(a) In any action to enforce or interpret this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and out of pocket costs.

(b) All Parties shall bear their own attorneys' fees and costs with respect to this Agreement and the Lawsuit.

**IN WITNESS WHEREOF**, the Parties hereto and their respective attorneys have each approved an executed this Agreement on the date set forth opposite their respective signatures.

**[Signatures follow on the next page]**

**WASHAKIE RENEWABLE ENERGY, LLC**

2-6-15

Defendant Washakie Renewable Energy, LLC — Date

By: Jacob Kingston

Its:

State of Nevada
County of
Signed and Sworn to before me on this 02.06.15 by Jacob Kingston and Levon Termendzhyan.

G. VANOYAN
Notary Public, State of Nevada
Appointment No. 11-5212-1
My Appt. Expires June 6, 2015

**LION'S AVIATION LLC**

Defendant Lion's Aviation LLC — Date

By: Levon Termendzhyan

Its:

2-6-15

**FIRST AMERICAN TITLE INSURANCE COMPANY, INC.**

2-18-15

Defendant First American Title Insurance Company, Inc. — Date

By: DeeAnn Gregory

Its: Authorized Signatory

**ZUBAIR KAZI**

By: Plaintiff Zubair Kazi — Date

**KHATIJA KAZI**

By: Plaintiff Khatija Kazi — Date

**KAZI FOODS, INC.**

By: Zubair Kazi — Date

Its: President

**WASHAKIE RENEWABLE ENERGY, LLC**

Defendant Washakie Renewable Energy, LLC — Date

By:

Its:

**LION'S AVIATION LLC**

Defendant Lion's Aviation LLC — Date 2-4-15

By:

Its:

**FIRST AMERICAN TITLE COMPANY, INC.**

Defendant First American Title Company, Inc. — Date

By:

Its:

**ZUBAIR KAZI**

By: Plaintiff Zubair Kazi — Date

**KHATIJA KAZI**

By: Plaintiff Khatija Kazi — Date

**KAZI FOODS, INC.**

By: Zubair Kazi — Date

Its: President

# Exhibit E

## *PROMISSORY NOTE*
Signed Concurrently with Security Agreement

$12,000,000.00 Date: February 2, 2015

For value received, the undersigned Kazi Foods, Inc. located at 3671 Sunswept Drive, Studio City, CA 91604 United States of America(the "Borrower"), at Los Angeles, California, promise to pay to the order of SBK Holdings USA, Inc. (c/o Pillar Law Group, APLC 150 S. Rodeo Dr. Suite 260, Beverly Hills, CA 90212) (the "Lender"), at (or at such other place as the Lender may designate in writing), the sum of $12,000,000.00 , in United States Currency (USD) with interest as set forth below.

### I. TERMS OF REPAYMENT

#### A. Payments

Commencing December 15, 2014, and each consecutive month thereafter for five years, Plaintiffs shall pay seventy thousand dollars ($70,000.00) interest-only payments (constituting seven percent (7%) interest per annum) each month in lawful money of the United States by either a (i) bank wire sent to; or (ii) a certified or cashier's check drawn to the order of Lender and Pillar Law Group, APLC Attorney-Client Trust Account. Borrowers shall pay off the entire principal balance of the loan no later than December 15, 2019 (the "Due Date").

#### B. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender. The Borrower shall have a payment cure period of thirty (30) days. Not action shall be taken by the Lender unless said payment is not made within this cure period.

### II. SECURITY

This Note is secured by a Security Agreement. The Lender is not required to rely on the above security instrument and the assets secured therein for the payment of this Note in the case of default, but may proceed directly against the Borrower.

### III. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty.

## IV. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, whether or not a lawsuit is commenced as part of the collection process.

## V. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

1) the failure of the Borrower to pay the principal and any accrued interest in full on or before the Due Date;

2) the death of the Borrower or Lender;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower.

In addition, the Borrower shall be in default if there is a sale, transfer, assignment, or any other disposition of any real estate pledged as collateral for the payment of this Note, or if there is a default in any security agreement which secures this Note.

## VI. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VII. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and nonpayment of this Note.

No renewal or extension of this Note, delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note shall affect the liability or the obligations of the Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

**VIII. GOVERNING LAW**

This Note shall be construed in accordance with the laws of the State of California.

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.
Signed this 4 day of February, 2015, at Studio City, California.

Borrower:
**Kazi Foods Inc.**

By:____________________
Zubair Kazi
Title: President

Lender:
**SBK Holdings USA, Inc.**

By:____________________
Name:
Title:

# Exhibit F

**Domestic Wire Transfer Confirmation**
**Kazi Foods of New York Inc.**
**02/20/2015 11:45**

**Tracking ID:** [redacted]3100
**Application ID:** [redacted]7146

## Send Wire To

### Beneficiary Info

| | |
|---|---|
| Beneficiary Name | PILLAR LAW TRUST ACCOUNT |
| Nickname | SBK HOLDING USA |
| Address 1 | 150 S. Rodeo Dr, Ste 260 |
| Address 2 | |
| City | Beverly Hills |
| State | California |
| ZIP Code | 90212 |
| Contact Person | |
| Beneficiary Scope | Business |
| Account Number | [redacted]4494 |
| Account Type | Checking |

### Beneficiary Bank Info

| | |
|---|---|
| Bank Name | WELLS FARGO BANK, NA |
| Address 1 | |
| Address 2 | |
| City | SAN FRANCISCO |
| State | California |
| ZIP Code | |
| FED ABA | 121000248 |

## Debit Info

| | |
|---|---|
| Debit Account | [redacted]0106-Checking - Kazi Foods Concentration - USD |
| Amount | $210,000.00 |
| Requested Value Date | 2/20/15 |
| Expected Value Date | 2/20/15 |

### Reference for Beneficiary

KAZI FOODS INC

### Originator to Beneficiary Information

WIRE TANSFER FOR NOTE PAYABLE
3 MONTHS INTERST ONLY PAYMENT
FROM DEC 2014 TO FEB 2015

### Bank to Bank Information

### By Order Of Information

| | |
|---|---|
| Name | |
| Address 1 | |
| Address 2 | |
| Address 3 | |
| Account Number | |

Confidential

**Domestic Wire Transfer Confirmation**
**Kazi Foods of New York Inc.**
**03/16/2015 14:04**

**Tracking ID:** [redacted]9800
**Application ID:** [redacted]9311

## Send Wire To

### Beneficiary Info

| | |
|---|---|
| Beneficiary Name | PILLAR LAW TRUST ACCOUNT |
| Nickname | SBK HOLDING USA |
| Address 1 | 150 S. Rodeo Dr, Ste 260 |
| Address 2 | |
| City | Beverly Hills |
| State | California |
| ZIP Code | 90212 |
| Contact Person | |
| Beneficiary Scope | Business |
| Account Number | [redacted]4494 |
| Account Type | Checking |

### Beneficiary Bank Info

| | |
|---|---|
| Bank Name | WELLS FARGO BANK, NA |
| Address 1 | |
| Address 2 | |
| City | SAN FRANCISCO |
| State | California |
| ZIP Code | |
| FED ABA | 121000248 |

## Debit Info

| | |
|---|---|
| Debit Account | [redacted]2953-Checking - Kazi Mgmt St Croix LLC - USD |
| Amount | $70,000.00 |
| Requested Value Date | 3/16/15 |
| Expected Value Date | 3/16/15 |

### Reference for Beneficiary

KAZI FOODS INC

### Originator to Beneficiary Information

WIRE TRANSFER FOR NOTE PAYABLE
INTEREST ONLY PAYMENT TO MR. JACOB

### Bank to Bank Information

### By Order Of Information

Name
Address 1
Address 2
Address 3
Account Number

Confidential

## Payments

### View Payment Details

**The payment is still being processed. Please refer to the payment list for details.**

| | | | |
|---|---|---|---|
| **Payment ID** | 7245955 | **Payment Status** | Accepted |
| **Payment Type** | Domestic Wire | **Payment Date** | 4/15/2015 |
| **Template Name** | | **Creator Name** | QD9GQ000 |

KLA TO PILLAR LAW TRUST ACCOUNT (JACOB)

**Template Payment Restriction** Non-Restrictive

**Payment Details** History

Edit Approve Decline Cancel

#### Originating Party Details

| | | | |
|---|---|---|---|
| **Debit Account** | [redacted]0106 | **Business Unit** | Kazi Foods of New York Inc. |
| **Account Currency** | USD | **Security Level** | Default |
| **Sender's Reference** | KAZI FOODS INC | | |

#### Payment Information

| | | | |
|---|---|---|---|
| **Payment Amount** | $70,000.00<br>*Seventy thousand and 00/100* | **Payment Date** | Apr 15, 2015 |

#### To-Receivers

| | | | |
|---|---|---|---|
| **Name** | PILLAR LAW TRUST ACCOUNT | **Address 1** | 150 S. Rodeo Dr, Ste 260 |
| **Receiver ID** | PILLAR LAW TRUST ACCOUNT | **Address 2** | |
| **Credit Account** | [redacted]4494 | **City** | Beverly Hills |
| **Security Level** | Default | **State** | CA |
| **Secure Receiver** | ☐ | **Zipcode** | 90212 |
| | | **Country** | United States |

#### Receiver Bank Details

| | | | |
|---|---|---|---|
| **Bank Name** | WELLS FARGO BANK, NA | **Address 1** | Address Line 1 |
| **Bank ID Type** | ABA | **Address 2** | |
| **Bank ID** | 121000248 | **City** | SAN FRANCISCO |
| | | **State** | CA |
| | | **Zipcode** | |
| | | **Country** | United States |

#### Originator Information

| | | | |
|---|---|---|---|
| **Originator Name** | Kazi Management St Croix LLC | **Originator to Beneficiary Info** | |
| **Address 1** | A 1 A Estate Thomas | WIRE TRANSFER FOR NOTE PAYABLE - MR. JACOB AND KLA NOTE PAYABLE | |
| **Address 2** | Po Box 11239 | | |
| **City** | St Thomas VI | | |

## Originating Party Details

| | |
|---|---|
| **Debit Account** | Kazi Foods Concentration- [redacted]106 |
| **Account Currency** | USD |
| **Sender's Reference** | KAZI FOODS INC |
| **Business Unit** | Kazi Foods of New York Inc. |
| **Security Level** | Default |

## Payment Information

| | |
|---|---|
| **Payment Amount** | $70,000.00 *Seventy thousand and 00/100* |
| **Payment Date** | May 19, 2015 |

## To-Receivers

| | |
|---|---|
| **Name** | PILLAR LAW TRUST ACCOUNT |
| **Receiver ID** | PILLAR LAW TRUST ACCOUNT |
| **Credit Account** | [redacted]494 |
| **Security Level** | Default |
| **Secure Receiver** | ☐ |
| **Address 1** | 150 S. Rodeo Dr, Ste 260 |
| **Address 2** | |
| **City** | Beverly Hills |
| **State** | CA |
| **Zipcode** | 90212 |
| **Country** | United States |

## Receiver Bank Details

| | |
|---|---|
| **Bank Name** | WELLS FARGO BANK, NA |
| **Bank ID Type** | ABA |
| **Bank ID** | 121000248 |
| **Address 1** | Address Line 1 |
| **Address 2** | |
| **City** | SAN FRANCISCO |
| **State** | CA |
| **Zipcode** | |
| **Country** | United States |

## Originator Information

| | |
|---|---|
| **Originator Name** | Kazi Management St Croix LLC |

**Payment ID:** 10268491

**Payment Type:** Domestic Wire

**Template Name:** KLA TO PILLAR LAW TRUST ACCOUNT (JACOB)

**Template Payment Restriction:** Non-Restrictive

**Payment Status:** Submitted

**Payment Date:** Jun 19, 2015

**Creator Name:** QD9GQ000

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Currency:** USD

**Sender's reference:** KAZI FOODS INC

**Business Unit:** 3860789

**Security Level:** Default

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Jun 19, 2015

## To-Receiver details

**Name:** PILLAR LAW TRUST ACCOUNT

**Receiver ID:** PILLAR LAW TRUST ACCOUNT

**Credit Account:** [redacted]4494

**Security Level:** Default

**Secure Receiver:** No

**Address 1:** 150 S. Rodeo Dr, Ste 260

**Address 2:**

**City:** Beverly Hills

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** WELLS FARGO BANK, NA

**Bank ID Type:** ABA

**Bank ID:** [redacted]0248

**Address 1:** Address Line 1

**Address 2:**

**City:** SAN FRANCISCO

**State:** CA

**Zipcode:**

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VT

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** WIRE TRANSFER FOR NOTE PAYABLE - MR-@-. JACOB AND KLA NOTE PAYABLE

**Confidential:** No

| | | | |
|---|---|---|---|
| **Payment ID:** | 11801581 | **Payment Status:** | Accepted |
| **Payment Type:** | Domestic Wire | **Payment Date:** | Jul 21, 2015 |
| **Template Name:** | KLA TO PILLAR LAW | **Creator Name:** | QD9GQ000 |
| **Template Payment Restriction:** | Non-Restrictive | | |

## Originating Party Details

| | | | |
|---|---|---|---|
| **Debit Account:** | Kazi Foods Concentration-[redacted]0106 | **Business Unit:** | 3860789 |
| **Currency:** | USD | **Security Level:** | Default |
| **Sender's reference:** | KAZI FOODS INC | | |

## Payment Information

| | | | |
|---|---|---|---|
| **Payment Amount:** | 70,000.00 | **Payment Date:** | Jul 21, 2015 |

## To-Receiver details

| | | | |
|---|---|---|---|
| **Name:** | PILLAR LAW TRUST ACCOUNT | **Address 1:** | 150 S. Rodeo Dr, Ste 260 |
| **Receiver ID:** | PILLAR LAW TRUST ACCOUNT | **Address 2:** | |
| **Credit Account:** | [redacted]4494 | **City:** | Beverly Hills |
| **Security Level:** | Default | **State:** | CA |
| **Secure Receiver:** | No | **Zipcode:** | 90212 |
| | | **Country:** | United States |

## Receiver Bank Details

| | | | |
|---|---|---|---|
| **Bank Name:** | WELLS FARGO BANK, NA | **Address 1:** | Address Line 1 |
| **Bank ID Type:** | ABA | **Address 2:** | |
| **Bank ID:** | 121000248 | **City:** | SAN FRANCISCO |
| | | **State:** | CA |
| | | **Zipcode:** | |
| | | **Country:** | United States |

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VI

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** KAZI FOODS WIRE TRANSFER FOR NOTE P-@-AYABLE TO MR JACOB

**Confidential:** No

Payment ID: 14502089

Payment Type: Domestic Wire

Template Name: KLA TO PILLAR LAW

Template Payment Restriction: Non-Restrictive

Payment Status: Submitted

Payment Date: Sep 1, 2015

Creator Name: QD9GQ000

## Originating Party Details

Debit Account: Kazi Foods Concentration-[redacted]0106

Currency: USD

Sender's reference: KAZI FOODS INC

Business Unit: 3860789

Security Level: Default

## Payment Information

Payment Amount: 70,000.00

Payment Date: Sep 1, 2015

## To-Receiver details

Name: PILLAR LAW TRUST ACCOUNT

Receiver ID: PILLAR LAW TRUST ACCOUNT

Credit Account: [redacted]494

Security Level: Default

Secure Receiver: No

Address 1: 150 S. Rodeo Dr, Ste 260

Address 2:

City: Beverly Hills

State: CA

Zipcode: 90212

Country: United States

## Receiver Bank Details

Bank Name: WELLS FARGO BANK, NA

Bank ID Type: ABA

Bank ID: 121000248

Address 1: Address Line 1

Address 2:

City: SAN FRANCISCO

State: CA

Zipcode:

Country: United States

## Originator Information

Originator Name: Kazi Management St Croix LLC

Address 1: A 1 A Estate Thomas

Address 2: Po Box 11239

City: St Thomas VI

State: VT

Zipcode: 00802

Bank to Bank Info:

Originator to Beneficiary Info: KAZI FOODS WIRE TRANSFER FOR NOTE P-@-AYABLE TO MR JACOB

Confidential: No

**Payment ID:** 15395622

**Payment Type:** Domestic Wire

**Template Name:** KLA TO PILLAR LAW

**Template Payment Restriction:** Non-Restrictive

**Payment Status:** Accepted

**Payment Date:** Oct 2, 2015

**Creator Name:** QD9GQ000

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Currency:** USD

**Sender's reference:** KAZI FOODS INC

**Business Unit:** 3860789

**Security Level:** Default

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Oct 2, 2015

## To-Receiver details

**Name:** PILLAR LAW TRUST ACCOUNT

**Receiver ID:** PILLAR LAW TRUST ACCOUNT

**Credit Account:** [redacted]4494

**Security Level:** Default

**Secure Receiver:** No

**Address 1:** 150 S. Rodeo Dr, Ste 260

**Address 2:**

**City:** Beverly Hills

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** WELLS FARGO BANK, NA

**Bank ID Type:** ABA

**Bank ID:** 121000248

**Address 1:** Address Line 1

**Address 2:**

**City:** SAN FRANCISCO

**State:** CA

**Zipcode:**

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VI

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** KAZI FOODS WIRE TRANSFER FOR NOTE P-@-AYABLE TO MR JACOB

**Confidential:** No

**Payment ID:** 17390155

**Payment Status:** Submitted

**Payment Type:** Domestic Wire

**Payment Date:** Nov 6, 2015

**Template Name:** KLA TO PILLAR LAW TRUST ACCOUNT (JACOB)

**Creator Name:** QD9GQ000

**Template Payment Restriction:** Non-Restrictive

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Business Unit:** 3860789

**Currency:** USD

**Security Level:** Default

**Sender's reference:** KAZI FOODS INC

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Nov 6, 2015

## To-Receiver details

**Name:** PILLAR LAW TRUST ACCOUNT

**Receiver ID:** PILLAR LAW TRUST ACCOUNT

**Credit Account:** [redacted]4494

**Security Level:** Default

**Secure Receiver:** No

**Address 1:** 150 S. Rodeo Dr, Ste 260

**Address 2:**

**City:** Beverly Hills

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** WELLS FARGO BANK, NA

**Bank ID Type:** ABA

**Bank ID:** 121000248

**Address 1:** Address Line 1

**Address 2:**

**City:** SAN FRANCISCO

**State:** CA

**Zipcode:**

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VT

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** WIRE TRANSFER FOR NOTE PAYABLE - MR-@-. JACOB AND KLA NOTE PAYABLE

**Confidential:** No

**Payment ID:** [redacted]3729

**Payment Type:** Domestic Wire

**Template Name:** KLA TO PILLAR LAW

**Template Payment Restriction:** Non-Restrictive

**Payment Status:** Submitted

**Payment Date:** Dec 9, 2015

**Creator Name:** QD9GQ000

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Currency:** USD

**Sender's reference:** KAZI FOODS INC

**Business Unit:** 3860789

**Security Level:** Default

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Dec 9, 2015

## To-Receiver details

**Name:** PILLAR LAW TRUST ACCOUNT

**Receiver ID:** PILLAR LAW TRUST ACCOUNT

**Credit Account:** [redacted]4494

**Security Level:** Default

**Secure Receiver:** No

**Address 1:** 150 S. Rodeo Dr, Ste 260

**Address 2:**

**City:** Beverly Hills

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** WELLS FARGO BANK, NA

**Bank ID Type:** ABA

**Bank ID:** 121000248

**Address 1:** Address Line 1

**Address 2:**

**City:** SAN FRANCISCO

**State:** CA

**Zipcode:**

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VI

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** KAZI FOODS WIRE TRANSFER FOR NOTE P-@-AYABLE TO MR JACOB

**Confidential:** No

**Payment ID:** 22095125

**Payment Type:** Domestic Wire

**Template Name:** KLA TO PILLAR LAW

**Template Payment Restriction:** Non-Restrictive

**Payment Status:** Accepted

**Payment Date:** Jan 15, 2016

**Creator Name:** QD9GQ000

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Currency:** USD

**Sender's reference:** KAZI FOODS INC

**Business Unit:** 3860789

**Security Level:** Default

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Jan 15, 2016

## To-Receiver details

**Name:** PILLAR LAW TRUST ACCOUNT

**Receiver ID:** PILLAR LAW TRUST ACCOUNT

**Credit Account:** [redacted]494

**Security Level:** Default

**Secure Receiver:** No

**Address 1:** 150 S. Rodeo Dr, Ste 260

**Address 2:**

**City:** Beverly Hills

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** WELLS FARGO BANK, NA

**Bank ID Type:** ABA

**Bank ID:** 121000248

**Address 1:** Address Line 1

**Address 2:**

**City:** SAN FRANCISCO

**State:** CA

**Zipcode:**

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VI

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** KAZI FOODS WIRE TRANSFER FOR NOTE P-@-AYABLE TO MR JACOB

**Confidential:** No

**Payment ID:** 24591464
**Payment Type:** Domestic Wire
**Template Name:** KLA TO PILLAR LAW TRUST ACCOUNT (JACOB)
**Template Payment Restriction:** Non-Restrictive

**Payment Status:** Accepted
**Payment Date:** Feb 12, 2016
**Creator Name:** QD9GQ000

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106
**Currency:** USD
**Sender's reference:** KAZI FOODS INC

**Business Unit:** 3860789
**Security Level:** Default

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Feb 12, 2016

## To-Receiver details

**Name:** PILLAR LAW TRUST ACCOUNT
**Receiver ID:** PILLAR LAW TRUST ACCOUNT
**Credit Account:** [redacted]494
**Security Level:** Default
**Secure Receiver:** No

**Address 1:** 150 S. Rodeo Dr, Ste 260
**Address 2:**
**City:** Beverly Hills
**State:** CA
**Zipcode:** 90212
**Country:** United States

## Receiver Bank Details

**Bank Name:** WELLS FARGO BANK, NA
**Bank ID Type:** ABA
**Bank ID:** 121000248

**Address 1:** Address Line 1
**Address 2:**
**City:** SAN FRANCISCO
**State:** CA
**Zipcode:**
**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC
**Address 1:** A 1 A Estate Thomas
**Address 2:** Po Box 11239
**City:** St Thomas VI
**State:** VI
**Zipcode:** 00802
**Bank to Bank Info:**
**Originator to Beneficiary Info:** WIRE TRANSFER FOR NOTE PAYABLE - MR-@-. JACOB AND KLA NOTE PAYABLE
**Confidential:** No

**Payment ID:** 27094070

**Payment Type:** Domestic Wire

**Template Name:** KLA TO PILLAR LAW TRUST ACCOUNT (JACOB)

**Template Payment Restriction:** Non-Restrictive

**Payment Status:** Accepted

**Payment Date:** Mar 11, 2016

**Creator Name:** QD9GQ000

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Currency:** USD

**Sender's reference:** KAZI FOODS INC

**Business Unit:** 3860789

**Security Level:** Default

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Mar 11, 2016

## To-Receiver details

**Name:** PILLAR LAW TRUST ACCOUNT

**Receiver ID:** PILLAR LAW TRUST ACCOUNT

**Credit Account:** [redacted]4494

**Security Level:** Default

**Secure Receiver:** No

**Address 1:** 150 S. Rodeo Dr, Ste 260

**Address 2:**

**City:** Beverly Hills

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** WELLS FARGO BANK, NA

**Bank ID Type:** ABA

**Bank ID:** 121000248

**Address 1:** Address Line 1

**Address 2:**

**City:** SAN FRANCISCO

**State:** CA

**Zipcode:**

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VT

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** WIRE TRANSFER FOR NOTE PAYABLE - MR-@-. JACOB AND KLA NOTE PAYABLE

**Confidential:** No

**Payment ID:** 39590238

**Payment Type:** Domestic Wire

**Template Name:** KLA TO PILLAR LAW TRUST ACCOUNT (JACOB)

**Template Payment Restriction:** Non-Restrictive

**Payment Status:** Processed

**Payment Date:** Jun 7, 2016

**Creator Name:** QD9GQ000

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Currency:** USD

**Sender's reference:** KAZI FOODS INC

**Business Unit:** 3860789

**Security Level:** Default

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Jun 7, 2016

## To-Receiver details

**Name:** PILLAR LAW GROUP, APLC

**Receiver ID:** PILLAR LAW

**Credit Account:** [redacted]3613

**Security Level:** Unmanaged

**Secure Receiver:** No

**Address 1:** 150 S RODEO DR

**Address 2:** SUITE 260

**City:** BEVERLY HILLS

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** CITIBANK FSB

**Bank ID Type:** ABA

**Bank ID:** 322271724

**Address 1:** 941 WILSHIRE BLVD

**Address 2:**

**City:** BEVERLY HILLS

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VT

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** WIRE TRANSFER FOR NOTE PAYABLE - MR-@-. JACOB AND KLA NOTE PAYABLE

**Confidential:** No

**Payment ID:** 45697192

**Payment Status:** Processed

**Payment Type:** Domestic Wire

**Payment Date:** Jul 14, 2016

**Template Name:** KLA TO PILLAR LAW TRUST ACCOUNT (JACOB)

**Creator Name:** QD9GQ000

**Template Payment Restriction:** Non-Restrictive

## Originating Party Details

**Debit Account:** Kazi Foods Concentration-[redacted]0106

**Business Unit:** 3860789

**Currency:** USD

**Security Level:** Default

**Sender's reference:** KAZI FOODS INC

## Payment Information

**Payment Amount:** 70,000.00

**Payment Date:** Jul 14, 2016

## To-Receiver details

**Name:** PILLAR LAW GROUP, APLC

**Address 1:** 150 S RODEO DR

**Receiver ID:** PILLAR LAW

**Address 2:** SUITE 260

**Credit Account:** [redacted]3613

**City:** BEVERLY HILLS

**Security Level:** Unmanaged

**State:** CA

**Secure Receiver:** No

**Zipcode:** 90212

**Country:** United States

## Receiver Bank Details

**Bank Name:** CITIBANK FSB

**Address 1:** 941 WILSHIRE BLVD

**Bank ID Type:** ABA

**Address 2:**

**Bank ID:** 322271724

**City:** BEVERLY HILLS

**State:** CA

**Zipcode:** 90212

**Country:** United States

## Originator Information

**Originator Name:** Kazi Management St Croix LLC

**Address 1:** A 1 A Estate Thomas

**Address 2:** Po Box 11239

**City:** St Thomas VI

**State:** VT

**Zipcode:** 00802

**Bank to Bank Info:**

**Originator to Beneficiary Info:** WIRE TRANSFER FOR NOTE PAYABLE - MR-@-. JACOB AND KLA NOTE PAYABLE

**Confidential:** No

# Exhibit G

Business Banking

Bank of America

P.O. Box 15284
Wilmington, DE 19850

AF 0 318 680 368 021614 #@01 AV 0.381

KAZI MANAGEMENT ST. CROIX, LLC
3671 SUNSWEPT DR
STUDIO CITY, CA 91604-2325

**Customer service information**

Customer service: 1.888.852.5000

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your Full Analysis Business Checking - Small Business

for April 1, 2015 to April 30, 2015

Account number: [redacted] 3140

**KAZI MANAGEMENT ST. CROIX, LLC**

## Account summary

| | |
|---|---|
| Beginning balance on April 1, 2015 | $1,010,000.00 |
| Deposits and other credits | 0.00 |
| Withdrawals and other debits | -1,000,000.00 |
| Checks | -0.00 |
| Service fees | -0.00 |
| **Ending balance on April 30, 2015** | **$10,000.00** |

# of deposits/credits: 0

# of withdrawals/debits: 1

# of days in cycle: 30

Average ledger balance: $743,333.33

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking. Or, you can call our Customer Service team.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our banking centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled. You may also review your activity online or visit a banking center for information.

© 2015 Bank of America Corporation

**Bank of America, N.A. Member FDIC and Equal Housing Lender**

## Withdrawals and other debits

| Date | Transaction description | Customer reference | Bank reference | Amount |
|---|---|---|---|---|
| 04/23/15 | 1-3851438688 : | | 924604230001588 | -1,000,000.00 |
| **Total withdrawals and other debits** | | | | **-$1,000,000.00** |

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) |
|---|---|---|---|
| 04/01 | 1,010,000.00 | 04/23 | 10,000.00 |

✓ To help you BALANCE YOUR CHECKING ACCOUNT, print a copy of the "How to Balance Your Bank of America Merrill Lynch Account" page by visiting CashPro® University at cashproonline.bankofamerica.com.

This page intentionally left blank

# Exhibit H

| Date | Payment |
|---|---|
| 6/4/2014 | 1,000,000.00 |
| 2/20/2015 | 210,000.00 |
| 3/16/2015 | 70,000.00 |
| 4/15/2015 | 70,000.00 |
| 4/15/2015 | 70,000.00 |
| 4/23/2015 | 1,000,000.00 |
| 5/19/2015 | 70,000.00 |
| 6/19/2015 | 70,000.00 |
| 7/21/2015 | 70,000.00 |
| 9/1/2015 | 70,000.00 |
| 10/2/2015 | 70,000.00 |
| 11/6/2015 | 70,000.00 |
| 12/9/2015 | 70,000.00 |
| 1/15/2016 | 70,000.00 |
| 2/12/2016 | 70,000.00 |
| 3/11/2016 | 70,000.00 |
| 6/7/2016 | 70,000.00 |
| 7/14/2016 | 70,000.00 |
| | **3,260,000.00** |

# Exhibit I

Steve Poludniak [redacted]

## Levon Termendzhyan, et al.

1 message

**Skenderis, Louis S** [redacted]@ice.dhs.gov>
To: "spoludniak[redacted]

Wed, Sep 7, 2016 at 9:06 PM

Mr. Poludniak,

It was a pleasure speaking with you today. Pursuant to our conversation, I would like to reiterate that Mr. Kazi is not a target of our criminal investigation into the activities of Levon Termendzhyan, his companies, and his various associates. In fact, we believe that Mr. Kazi may have been the subject of a form of physical intimidation by Termendzhyan. Termendzhyan is known to law enforcement to be a leader of an Armenian organized crime group which employs such tactics to perpetuate its ongoing criminal activities. Mr. Kazi is not the only legitimate businessman to have been used by Levon's organization to launder their criminal proceeds.

First and foremost, we have a genuine concern for Mr. Kazi's safety. If at any time Mr. Kazi, yourself, or any other of your associates feels that he or she has been threatened, intimidated or may otherwise be in danger, please do not hesitate to call us on our cell phones at any hour:

Loui – [redacted]

Wally – [redacted]

Due to the very nature of this criminal organization, I would also like to reiterate that it is in Mr. Kazi's best interests not to discuss the nature of his contact with law enforcement with anyone expect his counsel. While we are asking for your and Mr. Kazi's assistance, we do not want you, Mr. Kazi, or anyone else to confront Mr. Termendzhyan or otherwise put yourselves in a compromising position.

We also discussed that the government possesses evidence that in or about 2013, Mr. Kazi unwittingly received $11 million which had previously been stolen from a U.S. Government renewable energy subsidy program. We have previously apprised Mr. Kazi of this and further instructed him not to send this money to any party other than the U.S. Government. To do so may expose Mr. Kazi to criminal liability under Title 18 U.S.C. Sections 1512, 1956, and/or 1957.

We respectfully request your assistance by providing the following documents, as well as any additional documentation that you or Mr. Kazi think may be helpful to the investigation.

1. A copy of the original wire(s) of the $11 million to the Florida law firm

2. Any written statements by Termendzhyan, Jacob Kingston, Edgar Sargsyan or their associates concerning the nature, terms and/or conditions of the "loan"

3. Any written statements by Termendzhyan, Jacob Kingston, Edgar Sargsyan or their associates concerning the *payment instructions for interest payments*

(Written statements of course would include but not be limited to letters, emails and text messages)

4. Copies of any and all "interest" payments already made to Jacob Kingston, Washakie Renewable Energy, Levon Termendzhyan, SBK Holdings or any other party whether by wire, check or other financial instrument

5. A copy of the executed settlement agreement

Finally, we have additional information that Termendzhyan may have acted inappropriately against Mr. Kazi's interests in other business matters as well. We would welcome any additional evidence Mr. Kazi may want to share that may criminally implicate Termendzhyan or his associates.

Once again, thank you for taking our call today and assisting in this matter.

Special Agent Louis S. Skenderis

Homeland Security Investigations

2001 S. Seaside Ave.

San Pedro, CA 90731

# Exhibit J

ANDREOZZI BLUESTEIN LLP
Solving Tax Problems

9145 Main St. Clarence, NY 14031
P 716-565-1100 F 716-565-1920

October 28, 2020

**Via U.S. Mail & Electronic Mail**
Cy H. Castle, AUSA
U.S. Department of Justice
Office of U.S. Attorneys
111 South Main Street
Suite 1800
Salt Lake City, Utah 84111-2176
E: Cy.Castle[redacted]

Re: Lev Aslan Derman, a/k/a Levon Termendzhan
Jacob Kingston
Case No.: 18-CR-365
Zubair Kazi Forfeiture Aspects

Dear Mr. Castle:

We are following up on our prior conversations with respect to the forfeiture issue in this matter. We have spent a good deal of time reviewing all aspects of the referenced case that relate to our client, Zubair Kazi. By this letter, our client offers to make a one-time payment of $1 million to settle this entire matter, subject, of course, to the trier of fact in the forfeiture part of the referenced trial finding that the $11.2 million that is at the heart of this matter is indeed forfeitable.

To recap:

Mr. Kazi ("Kazi") received approximately $11.2 million on June 21, 2013 to stave off the seizure of the stock of his business entities. The funds were sent by Jacob Kingston ("Kingston") through Washakie Renewable Energy but the funding was arranged by and facilitated by defendant Lev Aslan Derman, a/k/a Levon Termendzhan ("Levon"). Kingston and Levon sent the funds without a written agreement detailing the terms. As was elicited through Mr. Kazi's uncontroverted testimony at trial, the parties agreed that Kingston would receive, in exchange for the funds, one-half of all of the proceeds of the then-pending litigation between Mr. Kazi and G.E. Capital Corporation ("G.E."). Everyone anticipated that resolution of that case would occur by October 2013.

But that did not happen, and the litigation languished on. As time passed, Levon and Kingston demanded more and more in the way of security for the arrangement. So, for example, Mr. Kazi agreed to provide security in certain real property to, at least partially, provide assurance that the proceeds of the litigation would indeed be paid. These Deeds in Trust named Washakie and Lion's Aviation as the secured parties. Then, on or about August 27, 2013, at Levon's insistence, Mr. Kazi and Levon opened a joint bank account at a Bank of America branch. Then, in October of 2013, Mr. Kazi deposited $2 million to this account to provide some additional security. This $2M was withdrawn and taken by Levon via $1M withdrawals that occurred on June

4, 2014 and on April 23, 2015. The deposit of the $2 million was supposed to have resulted in the release of the Deeds of Trust, but the release never happened. In June of 2015, Mr. Kazi learned from a realtor and from Levon that, at Jacob Kingston's insistence, Washakie and Lion's Aviation were moving to foreclose on the properties. This resulted in Mr. Kazi filing a suit to enjoin the foreclosures. Ultimately, the Deeds of Trust were released. Levon demanded a $12 million promissory note in addition to the $2 million already taken as security for the arrangement. As the G.E. litigation dragged on, Mr. Kazi paid Levon an additional $1.4 million as security for the arrangement.

The G.E. litigation did not end until 2019, six years after the payment of the $11.2 million. The settlement produced proceeds significantly less than the $33,000,000 that the parties anticipated, yielding a settlement of only $250,000. From this, Mr. Kazi was ultimately obligated to pay Levon and Kingston $125,000 – 50% of the award. Further, all agree that during the long pendency of the litigation, and at the insistence of Levon and Kingston, Mr. Kazi paid them a total of $3.4 million as security for the arrangement. Consequently, Mr. Kazi has paid far more than the $125,000 that was actually due.

To resolve this matter and to move on from these individuals, Mr. Kazi would agree to resolve this matter by paying to the government the sum of $1 million.

As you are aware, Mr. Kazi has many business interests. However, primary among those interests are his fast-food franchises (Kentucky Fried Chicken and Burger King), which employ thousands across the nation. And as I am sure you can understand, those franchises, like many other businesses, are in severe financial distress from the Covid-19 pandemic. Consequently, in addition to the merits of his position, Mr. Kazi is simply not in a financial position to pay the amounts you have suggested are due to the government. In point of fact, paying much more than $1 million has every possibility of bankrupting Mr. Kazi thus rendering any further attempts to collect from Mr. Kazi fruitless.

I thank you for your attention to this matter, a matter of utmost importance to Mr. Kazi's financial well-being, the future of his businesses, and those who depend on his businesses for their livelihood. Please consider Mr. Kazi's offer and get back to me.

Sincerely,

Anthony M. Bruce

# Exhibit K

IFTH THIRD BANK
IRE TRANSFER OPERATIONS
13-358-5385
800-375-1749

30812-8

ADVICE OF CREDIT [redacted]5421

DATE: 2013-06-21 SEQ #: 00132

ORG: D/[redacted]4874 WASHAKIE RENEWABLE ENERGY LLC PO BOX 192 PLYMOUTH UT 84330-0192 OBI: REFERENCE: WRE RFB: NONE BNF: D/[redacted]5421 MCDONALD HOPKINS TRUST ACCOUNT

$11,226,211.21

TRANSACTION:20130621-00008158
SOURCE: FED

MCDONALD HOPKINS CO. LPA
FAX: [redacted]-2975

REF #: 20131720011400

CURR: USD

124300107 BANK OF UTAH

POSTED

Matter Trust Detail - [440 / 30812-00008 - GENERAL ELECTRIC CAPITAL BUSINESS ASSET FUNDING] Client:30812 - KAZI MANAGEMENT VIRGIN ISLANDS 6/21/2013 2:38:28 PM



| Transaction Type | Date | Cleared Date | Index No | Document No | Amount | Description | Balance |
|---|---|---|---|---|---|---|---|
| RECEIPT | 06/10/2013 | 06/10/2013 | 32496 | TRANSFR | 5000.00 | *RETAINER | 5000.00 |
| CHECK | 06/10/2013 | 06/10/2013 | 32497 | 6025 | -5000.00 | *APPLY TO INVOICE | .00 |
| WIREREC | 06/21/2013 | 06/21/2013 | 32698 | WIREREC | 11226211.21 | *WIRE RECEIVED FROM WASHAKIE RENEWABLE [ | 11226211.21 |
| | | | | | | | |
| TOTAL | | | | | 11226211.21 | | |

# Exhibit L

**Tracy Marien**

---

**From:** Elder, Travis (USAUT) <Travis.Elde[redacted]
**Sent:** Wednesday, April 19, 2023 9:54 AM
**To:** Tracy Marien; Godfrey, Heather (USAUT)
**Cc:** Randy Andreozzi; John Marien
**Subject:** RE: Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Good Morning. It appears that only potential property interest of Mr. Kazi that I am aware of is in the following asset:

O. "Kazi loan receivable" identified as the outstanding amount of principal and intere
June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21.

While this is not a real estate asset, I would still be willing to consider resolving a claimed interest in this property in an expedited manner. Please provide me any documentation related to your interest so I can consider the claim and we can discuss. Thank you.

**Travis K. Elder**
Chief, Asset Forfeiture Section
Assistant U.S. Attorney
U.S Attorney's Office | District of Utah
111 S. Main St., #1800 | SLC, UT 84111
☎ [redacted]

---

**From:** Tracy Marien <[redacted]
**Sent:** Friday, April 14, 2023 10:45 AM
**To:** Elder, Travis (USAUT) <[redacted]Godfrey, Heather (USAUT) <[redacted]
**Cc:** Randy Andreozzi <rpa[redacted] John Marien [redacted]
**Subject:** [EXTERNAL] RE: Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

Dear Mr. Elder:

Attached please find correspondence from Mr. Andreozzi in this matter.

Best,
Tracy

**Tracy Marien**
**Senior Litigation Paralegal**

ANDREOZZI BLUESTEIN LLP
Solving Tax Problems

9145 Main Street
Clarence, New York 14031
Phone: 716-565-1100 Ext. 303
Fax: 716-565-1920

www.andreozzibluestein.com

Notice of Privacy and Confidentiality: The information contained within this electronic mail is being sent by an attorney and is intended to be received and read only by certain individuals and is attorney-client privileged, confidential information and work product. It may contain information that is privileged and/or protected from disclosure by law. No addressee should forward, print, copy, or otherwise reproduce this message in any manner that would allow it to be viewed by any individual not originally listed as a recipient without the consent of the author. If you have received this message in error, please notify me by replying and then delete both my message and your reply and destroy any paper copies. Thank you.

---

**From:** Godfrey, Heather (USAUT) [redacted]
**Sent:** Thursday, April 6, 2023 4:27 PM
**To:** Tracy Marien [redacted]
**Subject:** RE: Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

Wonderful, thank you!

---

**From:** Tracy Marien [redacted]
**Sent:** Thursday, April 6, 2023 2:08 PM
**To:** Godfrey, Heather (USAUT) [redacted]
**Cc:** Randy Andreozzi [redacted] John Marien [redacted]
**Subject:** [EXTERNAL] RE: Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

Hi Ms. Godfrey:

We just wanted to let you know that Randy Andreozzi is now the main contact for this case at our office. Cohen forwarded your letter and the Preliminary Order of Forfeiture.

We will be in touch if we have any questions. Thank you.

Best,
Tracy

---

**From:** Godfrey, Heather (USAUT) [redacted]
**Sent:** Thursday, April 6, 2023 3:17 PM
**To:** Cohen Sulzbach [redacted]
**Subject:** FW: Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

Good afternoon,

I received the automatic reply regarding Mr. Tedesco no longer being employed at the law firm. I don't know which attorney has taken over the Zubair Kazi case, would you please forward to the appropriate person?

Thank you,

Heather Godfrey

---

**From:** Godfrey, Heather (USAUT)
**Sent:** Thursday, April 6, 2023 1:12 PM
**To:** mjt@[redacted]
**Cc:** Elder, Travis (USAUT) <T[redacted]
**Subject:** Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

Mr. Tedesco,

Our records indicate you are a representative of Zubair Kazi, who may have an interest in the following asset listed in our order of forfeiture:

"Kazi loan receivable" identified as the outstanding amount of principal and interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21.

The IRS-CI informed me that e-mail is the best way to send you direct notice of the current forfeiture action. Please find attached our direct notice letter and copy of the order of forfeiture. Please let me know if you encounter any technical issues opening the file.

Thank you,

Heather Godfrey
Paralegal Specialist | Asset Forfeiture
Office of the United States Attorney |District of Utah
111 S. Main St., Suite 1800 |Salt Lake City, UT 84111-2176
[redacted]

# Exhibit M

## Tracy Marien

**From:** Cohen Sulzbach
**Sent:** Thursday, April 6, 2023 3:21 PM
**To:** Tracy Marien; Randy Andreozzi; John Marien
**Subject:** FW: Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)
**Attachments:** Direct Notice - Kazi Loan - Michael Tedesco.pdf; POF combined.pdf

Hi, this came just now. Please reach out to her if needed. Thank you!

---

**From:** Godfrey, Heather (USAUT) [redacted]
**Sent:** Thursday, April 6, 2023 3:17 PM
**To:** Cohen Sulzbach <CAS[redacted]
**Subject:** FW: Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

Good afternoon,

I received the automatic reply regarding Mr. Tedesco no longer being employed at the law firm. I don't know which attorney has taken over the Zubair Kazi case, would you please forward to the appropriate person?

Thank you,

Heather Godfrey

---

**From:** Godfrey, Heather (USAUT)
**Sent:** Thursday, April 6, 2023 1:12 PM
**To:** [redacted]
**Cc:** Elder, Travis (USAUT) [redacted]
**Subject:** Notice of Order of Forfeiture and Rights - US v Kingston, et al., 2:18-cr-365-JNP (District of Utah)

Mr. Tedesco,

Our records indicate you are a representative of Zubair Kazi, who may have an interest in the following asset listed in our order of forfeiture:

"Kazi loan receivable" identified as the outstanding amount of principal and interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21.

The IRS-CI informed me that e-mail is the best way to send you direct notice of the current forfeiture action. Please find attached our direct notice letter and copy of the order of forfeiture. Please let me know if you encounter any technical issues opening the file.

Thank you,

Heather Godfrey
Paralegal Specialist | Asset Forfeiture
Office of the United States Attorney |District of Utah
111 S. Main St., Suite 1800 |Salt Lake City, UT 84111-2176
[redacted]

**U.S. Department of Justice**

TRINA A. HIGGINS
United States Attorney
District of Utah

REPLY TO:
Travis K. Elder
Assistant United States Attorney
[redacted]

Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176

(801) 524-5682
(800) 949-9451
[redacted]

April 6, 2023

**Via e-mail:**
**mjt@andreozzibluestein.com**

**Zubair Kazi**
**c/o Michael Tedesco**

Re: Notice of Order of Forfeiture & Rights
*United States v. Jacob Ortell Kingston, et al.* | Case No. 2:18-cr-00365-JNP (District of Utah)

Dear Mr. Kazi:

The United States District Court for the District of Utah recently ordered that certain property be forfeited to the United States in the above-referenced criminal case. The enclosed Order of Forfeiture identifies the properties subject to forfeiture. By this letter, you have actual notice of the forfeiture of that property. This letter is only intended to apprise you of your rights and does not imply that you have a legally valid interest in any of the forfeited property.

You may respond to this notice in three ways. If you do not want to claim an interest in any of the property listed in the Order of Forfeiture, no further action is necessary. Otherwise, you may file a third-party petition with the Court and/or submit a petition for remission to the Attorney General.

**Requirements for Filing a Judicial Petition**

Should you have a valid legal interest in the forfeited property, the procedure for filing a petition to adjudicate that interest in federal court is set out in 21 U.S.C. § 853(n).[1] If you choose to file a petition claiming an interest in the forfeited property, you must file it ***within 30 days of receiving this letter*** by mailing it to the United States District Court, Room 150, 351 South West Temple, Salt Lake City, UT 84101, under the above-listed case number. Additionally, you must send a copy to: Travis K. Elder, Assistant United States Attorney, 111 South Main Street, Suite 1800, Salt Lake City, UT 84111.

As set out in 21 U.S.C. § 853(n)(3), your petition must describe under penalty of perjury: (i) the particular property or properties in which you claim a legal right, title, or interest; (ii) the nature and extent of such right, title, or interest in each property; (iii) the time and circumstances of your acquisition of the right, title, and interest in each property; (iv) any additional facts and documents supporting your claim; and (v) the relief you seek. If you fail to timely file a judicial petition to assert your legal interest in the forfeited property, any right, title, and interest you claim in this property shall be lost and forfeited to the Government.

**Requirements for Submitting a Petition for Remission**

Alternatively, or in addition to filing a petition in court, you may submit a petition for remission to the Attorney General, the requirements for which are found in 28 C.F.R. § 9. A petition for remission presumes the validity of the forfeiture, but requests that the forfeited property nevertheless be released to you. The petition for remission must be submitted ***within 30 days of receipt of this letter*** and ask that the Attorney General return the forfeited property to you or recognize your interest in the forfeited property. The petition must be submitted to the Attorney General, Attn: Travis K. Elder, Assistant United States Attorney, 111 South Main Street, Suite 1800, Salt Lake City, UT 84111. Further instructions and a form petition may be found at https://www.forfeiture.gov/FilingPetition.htm. This petition is separate and distinct from the petition described above that must be filed with the court.

**Expedited Settlement**

Finally, our records indicate that you may have an interest in real property sought for forfeiture in the Order of Forfeiture. If you wish to request expedited consideration and settlement of your interest, please send your request to travis.elder@usdoj.gov ***within 10 days*** of receiving this letter. Include with your request a brief statement explaining why your interest should not be

[1]A petitioner must demonstrate that (1) petitioner's legal right, title, or interest in the property was vested in petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture, or (2) petitioner was a *bona fide* purchaser for value of the right, title, or interest in the property and at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture.

forfeited and attach the primary documentation that supports your interest including any applicable deeds, lien paperwork, tax statements, ledgers, financial statements, lease/rental agreements, etc.

Very truly yours,

TRINA A. HIGGINS
United States Attorney

TRAVIS K. ELDER
Assistant United States Attorney

Enclosure: Order of Forfeiture

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB ORTELL KINGSTON,<br>ISAIAH ELDEN KINGSTON,<br>RACHEL ANN KINGSTON,<br>SALLY LOUISE KINGSTON, and<br>LEV ASLAN DERMEN,<br><br>Defendants. | Case No. 2:18-cr-00365-JNP<br><br>PRELIMINARY ORDER OF FORFEITURE<br><br>Judge Jill N. Parrish |

1. As a result of guilty pleas to Count 1 in the Second Superseding Indictment, Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349, Jacob Ortell Kingston, Isaiah Elden Kingston, Rachel Ann Kingston, and Sally Louise Kingston (the "Kingston Defendants") must forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. As a result of guilty pleas to Count 23 of the Second Superseding Indictment, Conspiracy to Commit Concealment Money Laundering in violation of 18 U.S.C. § 1956(h), the Kingston Defendants must forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

3. As a result of guilty pleas to Counts 24 and 25 of the Second Superseding Indictment, Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h), Jacob Ortell Kingston and Isaiah Elden Kingston must forfeit to the United States any property, real or

personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

4. As a result of guilty pleas to Money Laundering in violation of 18 U.S.C. §§ 1956 and 1957 (Jacob: Counts 27-29, 31-42; Isaiah: Counts 31, 33-42; Rachel: Counts 40 and 41), Jacob Ortell Kingston, Isaiah Elden Kingston, and Rachel Ann Kingston must forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

5. As a result of his conviction for Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349 (Count 1 of the renumbered Indictment), Defendant Lev Dermen must forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

6. As a result of his conviction for Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (renumbered indictment Count 2), Lev Dermen must forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

7. As a result of his conviction for Money Laundering in violation of 18 U.S.C. §§ 1956 and 1957 (renumbered indictment Counts 3-10), Lev Dermen must forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

## FORFEITURE OF SPECIFIC ASSETS

8. Based on the information provided in the United States' motion, the Second Superseding Indictment, the guilty pleas of the Kingston Defendants that include their agreements regarding the forfeiture (Jacob Kingston Plea Agreement, ECF No. 439; Isaiah

Kingston Plea Agreement, ECF No. 445; Sally Kingston Plea Agreement, ECF No. 450; Rachel Kingston Plea Agreement, ECF No. 442), the declarations of Special Agent Stephen A. Washburn, the evidence presented at the trial of Lev Dermen, and the evidence presented at the forfeiture hearing held during the week of November 15- 19, 2021, the Court finds that the property and assets listed on Exhibit 1 (included herewith and incorporated herein) are subject to forfeiture, and that the government has established the requisite nexus between the property and assets and the offenses.

**FORFEITURE OF SPECIFIC PROPERTIES**

9. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), 18 U.S.C. § 982(a)(1), 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), all right, title and interest in Assets A- T on Exhibit 1 are forfeited to the United States of America.

**GENERAL ORDERS OF FORFEITURE**

10. As set forth in the Court's November 15, 2022 Memorandum Decision (ECF NO. 1376), all right, title, and interest in the assets and property derived from the proceeds of the Mail Fraud Conspiracy and Money Laundering charges and that have been transferred to the entities listed in Assets U - GG on Exhibit 1 are forfeited to the United States of America.

11. With regard to Assets U- GG on Exhibit 1, which are described in general terms pursuant to Rule 32.2(b)(2)(C), the United States may conduct discovery to determine the location of any such assets, and may move at any time pursuant to Rule 32.2(d) to amend this order to include any assets that have been so located.

**FORFEITURE MONEY JUDGMENTS**

12. Based on the information provided in the government's motion, the Second Superseding Indictment, and the guilty plea of Jacob Kingston (including his agreement to the

imposition of a forfeiture money judgment), and the evidence presented at the Dermen trial, and the evidence presented at the forfeiture hearing held from November 15-19, 2021, the Court finds that the value of property Jacob Kingston obtained from the mail fraud conspiracy was $338,606,523, and that the value of property involved in his money laundering was at least $338,606,523. The Court further finds these funds are unavailable for forfeiture for one or more of the reasons specified in 21 U.S.C. § 853(p).

13. Similarly, the Court finds that the value of the property Dermen obtained from the mail fraud conspiracy was $181,847,376, and the value of property involved in his money laundering was at least $181,847,376. The Court further finds that these funds are unavailable for forfeiture for one or more of the reasons specified in 21 U.S.C. § 853(p).

14. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), the Court imposes against Jacob Ortell Kingston a MONEY JUDGMENT of $338,606,523 related to his Mail Fraud Conspiracy offense.

15. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), 18 U.S.C. § 982(a)(1) & (b)(1), and 21 U.S.C. § 853(p), the Court imposes against Jacob Ortell Kingston a concurrent MONEY JUDGMENT of $338,606,523 related to the Money Laundering offenses to which he pleaded guilty.

16. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), the Court imposes against Lev Dermen a MONEY JUDGMENT of $181,847,376 related to the Mail Fraud Conspiracy offense for which the jury convicted him.

17. In accordance with Fed. R. Crim. P. 32.2(b)(1)(A), 18 U.S.C. § 982(a)(1) & (b)(1), and 21 U.S.C. § 853(p), the Court imposes against Lev Dermen a concurrent MONEY

JUDGMENT of $181,847,376, related to the Money Laundering offenses for which the jury convicted him.

18. The United States will move to partially satisfy these money judgments to the extent of the net value it obtains from liquidating any of the properties and assets on Exhibit 1 applicable to each defendant. Although a forfeiture money judgment of $338,606,523 is imposed against Jacob Kingston for his offenses, and a money judgment of $181,847,376 is imposed against Lev Dermen for his offenses, which together total $520,453,899, the United States' may only recover a total of $511,842,773 for their convictions on Count One, and any amount collected in excess of this figure, is forfeitable pursuant to their convictions for the money laundering conspiracy. The only overlap in the judgment amounts exists because both Jacob Kingston and Lev Dermen obtained the $3,000,000 of fraud proceeds used to purchase the real property at 2072 East Creek Road in Sandy, Utah. Accordingly, the United States must credit any funds received from the liquidation of that property to both the money judgment against Jacob Kingston and the money judgment against Dermen. Because the money judgments otherwise reflect only the amounts each defendant obtained, the United States need not credit any other forfeitures applied to Jacob Kingston's money judgment to Dermen's money judgment, and it need not credit any other forfeitures applied to Dermen's money judgment to Jacob Kingston's money judgment.

## GENERAL PROVISIONS

19. Upon the entry of this Order, in accordance with Fed. R. Crim. P. 32.2(b)(3) and the terms of this Order, the Secretary of the Treasury or a designee is authorized to seize the properties and assets listed on Exhibit 1 as well as conduct any discovery proper in identifying, locating, or disposing of the property subject to forfeiture.

20. Upon entry of this Order, the Secretary of the Treasury or a designee is authorized to commence any applicable proceeding to comply with statutes governing third-party interests, including giving notice of this Order.

21. In accordance with 21 U.S.C. § 853(n)(1), the United States shall publish notice of this Order on the government's internet website, www.forfeiture.gov. The United States may also, to the extent practicable, provide written notice to any person known to have an alleged interest in the property and assets on Exhibit 1.

22. In accordance with 21 U.S.C. § 853(n)(2), any person, other than the defendants, asserting a legal interest in the subject property may, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the Court for a hearing without a jury to adjudicate the validity of his or her alleged interest in the subject property, and amendment of the order of forfeiture pursuant to 21 U.S.C. § 853(n) (applicable to this case under 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c)).

23. In accordance with 21 U.S.C. § 853(n)(3), any petition filed by a third party asserting an interest in the subject property shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the subject property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claims, and the relief sought.

24. Under Fed. R. Crim. P. 32.2(c)(1)(B), after the disposition of any motion filed under Fed. R. Crim. P. 32.2(c)(1)(A), and before a hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues.

25. Under 21 U.S.C. § 853(n)(7), the United States shall have clear title to the property described above following the Court's disposition of all third-party interests, or if no petitions are filed, following the expiration of the period provided in 21 U.S.C. § 853(n)(2) for the filing of third-party petitions.

26. Under Fed. R. Crim. P. 32.2(b)(4), this Order of Forfeiture shall become final as to the Defendants at the time of sentencing and shall be made part of the sentence and referenced in the judgment.

27. To satisfy the money judgments in whole or in part, the United States may move at any time pursuant to Rule 32.2(e) to amend this order of forfeiture to forfeit substitute property having a value not to exceed $511,842,773 (less any deductions due to partial satisfactions filed by the United States) for Count One, and $520,453,899 for the money laundering conspiracy convictions.

28. The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary under Fed. R. Crim. P. 32.2(e).

Dated March 24, 2023.

BY THE COURT:

JILL N. PARRISH
United States District Court Judge

**Exhibit 1**
***Properties Listed on ECF No. 1166***

A. Real property located at:

1. 4400 S. 700 E., Salt Lake City, UT 84107, more legally described as:

   BEG N 0^14'13" E 689.12 FT & S 89^54'15" W 62 FT FR SE COR LOT 1, BLK 6, 10 AC PLAT A, BIG FIELD SUR; S 89^54'15" W 312.5 FT; S 0^14'13" W 230 FT M OR L; N 89^54'15" E 312 5 FT; N 0^14'13" E 229.5 FT TO BEG. 1.65 AC M OR L. 6532-1150 8613-0667 9041-6993 9080-7101 9088-5694, Tax ID: 22-05-151-012-0000

2. 4829 S. 3960 W., Taylorsville, UT 84129, more legally described as:

   LOT 76, SOUTHRIDGE SUB #3. 4122-18 4908-0131 9599-5852 10130-272 10148-5174 10173-1327, Tax ID: 21-08-151-002-0000

3. 4271 S. 1300 E., Salt Lake City, UT 84124, more legally described as:

   BEG S 172.26 FT FR NW COR LOT 4, BLK 2, 10 AC PLAT A, BIG FIELD SUR; S 114.84 FT; E 220 FT; N 114.84 FT; W 220 FT TO BEG. 0.58 AC M OR L. 7135-2631 8939-3115 9075-8415 10127-7898 10657-0269, Tax ID: 22-05-230-032-0000

4. 1415 W. Crystal Ave., West Valley City, UT 84119, more legally described as:

   BEG S 198 FT FR NW COR LOT 12, BLK 12, CHESTERFIELD PLAT A SUB; E 264 FT; S 615.68 FT M OR L; S 79¿06'31" W 203.56 FT; W'LY 65.43 FT ALONG A 1687 FT RADIUS CURVE TO L (CHD S 77¿59'51" W 65.43 FT); N 667.71 FT M OR L TO BEG. 5419-1068 8408-6652 9612-8315 10220-331, Tax ID: 15-22-476-016-0000

5. 1401 W. Crystal Ave., West Valley City, UT 84119, more legally described as:

   Beginning at Point South 198 Feet from the NE Corner of LOT 10, BLOCK 11, CHESTERFIELD PLAT •A•, SUBDIVISION and running thence West 286 feet; thence South 615.68 feet more or less thence North 79 DEG 06'31 • EAST 291.13 feet; thence North 560.65 feet more or less to the point of beginning. Tax ID: 15-22-476-018

6. 13 Acres FM 511 @ FM, Brownsville, TX 78521, more legally described as:

   ESPIRITU SANTO GRANT SHARE 22 13.05 ACS OUT OF 15.48 ACS TRACT F-2 ABST 2. Tax ID: 79-2220-0060-0402-00.

7. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #07-090-

0002), more legally described as:

SE/4 OF SEC 3 T13N R3W SLM. LESS: BEG AT NE COR OF SE/4 OF SEC, W 534.6 FT, SELY ALG N SIDE OF ST HWY 864.6 FT, N 673.2 FT TO BEG. LESS: RES. LESS: 46.33 ACRES TO UDOT. LESS: BEG AT A PT 1593 FT N ALG SEC LINE & 33 FT W OF SE COR OF SD SEC, W 765.7 FT TO E R/W LINE OF INTER- STATE FREEWAY (NO ACCESS LINE), N 1*09`53W 978.0 FT ALG SD LINE M/L TO N BNDRY OF SE/4 OF SD SEC, S 89* 29`05E 212.8 FT ALG N BNDRY OF SD SE/4 OF SD SEC TO W R/W LINE OF CO RD, S 37*01`12"E 951.37 FT ALG SD LINE, S 216.3 FT ALG SD LINE TO POB CONT 93.28 ACRES M/L, Tax No. 07-090-0002.

8. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0004), more legally described as:

   BEG 22 2/3 RDS W of the N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH RUNNING W 246 FT, TH S 17 RDS, TH E 246 FT, TH N 17 RDS to BEG. Less tracts deeded to: Raymond G. Yaworsky William D. Marsh. CONT .6 ACRES. Tax No. 08-041-0004

9. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0019), more legally described as:

   BEG AT A PT 538 FT W OF N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH W 82 FT, TH S 280.5 FT, TH E 82 FT, TH N 280.5 FT TO BEG. CONT 0.5 ACRES. Tax No. 08-041-0019

10. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0020), more legally described as:

    BEG AT A PT 374 FT W OF N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH W 82 FT, TH S 280.5 FT, TH E 82 FT, TH N 280.5 FT TO BEG. CONT 0.5 ACRES. Tax No. 08-041-0020

11. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0025), more legally described as:

    All the following within Portage City limits. BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT 10.23 AC M/L. Tax No. 08-041-0025

12. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-

0026), more legally described as:

All of the following within Portage City limits. N/2 of NE/4 of SEC 07 T14N R03W SLM. Portage. Less: N/2 of W/2 of N/2 of NE/4 of SEC 07. Less: BEG at N/4 COR of SEC 07, N89*57`38"E 2640 FT, S00*28`34"W 660.0 FT, S89*57`38"W 2640 FT, N00*28`34"E 660.0 FT to BEG. Less [08-041-0025]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT. 9.77 AC M/L. Tax No. 08-041-0026

13. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0027), more legally described as:

    All the following without Portage City limits. BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L OF Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT. 14.77 AC M/L. Tax No. 08-041-0027

14. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0028), more legally described as:

    All the following without Portage City Limits. N/2 of NE/4 of SEC 07 T14N R03W SLM. Less: N/2 of W/2 of N/2 of NE/4 of SEC 07. Less: BEG at N/4 COR of SEC 07, N89*57`38"E 2640 FT, S00*28`34"W 660.0 FT, S89*57`38"W 2640 FT, N00*28`34"E 660.0 FT to BEG. Less [08-041-0027]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's S PROP/L, W to the W BDY of Grantor's , S 330 FT M/L to POB. CONT. 10.23 AC M/L. Tax No. 08-041-0028

15. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-042-0018), more legally described as:

    N/2 of NW/4 of SEC 08 T14N R03W SLM. Less: All land lying E of W BDY of OSLRR R/W. Less [08-041-0027]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L OF Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's S PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT 46.91 AC. Tax No. 08-042-0018.

16. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-045-0005), more legally described as:

LOS 1, 2, 3, W/2 of NE/4, NW/4 of SE/4. Less to ST ROAD COMM. Being in SEC 15, TWP 14N, R 3W, SLM. CONTG 231.20 ACS. Tax No. 08-045-0005

17. Box Elder County, Utah APN: 08-044-0004, more legally described as:

    PARCEL 2: LOTS 4, 5, 6, 7, West half of the Southeast quarter of Section 10, Township 14 North, Range 3 West, Salt Lake Base and Meridian. TAX ID: 08-044-0004

18. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-052-0008), more legally described as:

    BEG N71*W 1350.1 FT FRM SE COR SEC 27 T14N R03W SLM, N40*06`W 435 FT, N19*22`W 240.5 FT, N18*03`W 329.8 FT, N89*38`E 456.2 FT, S00*24`E 876.2 FT TO BEG. ALSO: BEG AT PT 1320 FT W & 1312 FT N FRM SE COR SD SEC 27, W 396 FT TO E R/W/L OF CO RD, N04*40`E 274 FT, N15*20`E 1100 FT M/L TO N/L NW/4 SE/4 SD SEC 27, E 83 FT, S 1332 FT M/L TO BEG. CONT 7.20 AC. Tax No. 08-052-0008

19. 22555 N Frontage Rd, Portage, UT 84331, more legally described as:

    LOT 1, BRUCE ZUNDEL SUBDIVISION, as recorded March 26, 2001, as Entry No. 150913, in the office of the BOX ELDER County Recorder. Tax ID: 08-052-0012

20. Box Elder County, Utah APN: 08-052-0014, more legally described as:

    The Northwest Quarter of the Southeast Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian lying West of county road known as Frontage Road. Less: Utah Department of Transportation access road right of way. Less: Parcel No. 08-052-0013, created by Warranty Deed 216956. Tax ID: 08-052-0014

21. Box Elder County, Utah APN: 08-052-0006, more legally described as:

    PARCEL 3: Northeast Quarter of Southwest Quarter; Southwest Quarter of Southeast Quarter lying West of county road known as Frontage Road; and the East 31.58 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West. Salt Lake Meridian. Less: Lot 1, BRUCE ZUNDEL SUBDIVISION. Less: County road right of way. Tax ID: 08-052-0006

22. Box Elder County, Utah APN: 08-052-0005, more legally described as:

    PARCEL 2: The West 5.25 acres of Southwest Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian. Less: County

road right of way. Tax ID: 08-052-0005

23. Box Elder County, Utah APN: 08-052-0004, more legally described as:

PARCEL 1: Southwest Quarter of Southwest Quarter, less the West 5.25 acres thereof; also the West 8 42 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian. Tax ID: 08-052-0004

24. 2973 W. Mackay Meadows Pl., Salt Lake City, UT 84119, more legally described as:

LOT 106, MACKAY MEADOWS PL 1. 6866-0032 7355-2536 7817-0236 8523-4181 8859-4054 9021-7075 9789-5886 9790-5261 10195-9627, Tax No. 21-04-103-029-0000

25. 2338 S. 1360 W. Salt Lake City, UT 84119, more legally described as:

LOT 42, RIVERSIDE SUB #2. 5051-495 5186-0210 5650-1495 6268-2706 6997-2651 7012-2186 7524-0538 8381-1643 8431-2037 8459-2888 8462-4873 8646-131 9025-774, Tax No. 15-22-283-010-0000

26. 1305 W. Main, Mesa, AZ 85201 more legally described as:

That portion of the North half of the Southeast quarter of Section 20, Township 1 North, Range 5 East, of the Gila and Salt River Base and Meridian, Maricopa County, Arizona, more particularly described as follows: COMMENCING at the center of said Section 20; THENCE South 00 degree 00' 05" West, a distance of 50.00 feet to a point on the Southerly right-of-way line of West Main Street; THENCE South 89 degrees 59' 55" East, a distance of 1284.79 feet along said right-of-way to the POINT OF BEGINNING; THENCE continuing South 89 degrees 59' 55" East, a distance of 1355.61 feet along the Southerly right-of-way of West Main Street; THENCE South 44 degrees 27' 28" East, a distance of 28.01 feet, measured (South 44 degrees 22' 22" East, a distance of 28.05 feet, record);THENCE South 01 degrees 05' 58" West, a distance of 310.44 feet, measured (310.63 feet, record) to the beginning of a curve to the left; THENCE Southeasterly along said curve through a central angle of 01 degrees 54' 20" and having a radius of 11,514.20 feet, a distance of 382.95 feet; THENCE South 00 degree 48' 22" East, measured (South 01 degrees 54' 20" East, record) a distance of 100.00 feet to the beginning of a curve to the left; THENCE Southerly along said curve through a central angle of 01 degrees 54' 20" and having a radius of 11,404.20 feet, a distance of 121.69 feet; THENCE North 89 degrees 56' 55" West, a distance of 1370.79 feet; THENCE North 00 degree 00' 05" East, a distance of 983.77 feet to the POINT OF BEGINNING;EXCEPT that portion deeded to CABS, L.L.C., an Arizona limited liability company, in Document No. 95-462362, records of Maricopa County, Arizona; and EXCEPT that portion deeded to the City of Mesa in Document No. 96-73629, records of Maricopa County, Arizona; and

EXCEPT that portion deeded to Fazoli's-Nellis, L.L.C., a Kentucky limited liability company, in Document No. 97-347912, records of Maricopa County, Arizona Tax ID: 134-31-005F4

27. 3179 S. Village Pine Cove, West Valley City, UT 84128, more legally described as:

Lot 1208, HUNTER VILLAGE PHASE 12 SUBDIVISION, according to the official plat thereof as recorded in the Office of the Salt Lake County Recorder. State of Utah Tax ID :14-27-401-027-0000

28. 8228 S. 2700 W., West Jordan, UT 84088, more legally described as:

Beginning at a point South 0 degree 06'24" West 214.50 feet from the center of Section 33, Township 2 South, Range 1, West Salt Lake Base & Meridian; and running thence South 0 degree 06'24" West 156.75 feet; thence North 89 degrees 59'03" West 305.25 feet; thence North 0 degree 06'24" East 321.25 feet; thence South 89 degrees 59'03" East 24.75 feet; thence South 0 degree 06'24" West164.50 feet; thence South 89 degrees 59'03" East 280.50 feet to the point of beginning. Excepting therefrom that certain parcel deeded to the City of South Jordan described as follows: Beginning South 0 degree 06'24" West214.5 feet from the center of Section 33, Township 2 South, Range 1 West, Salt Lake Base & Meridian; and running thence South 0degree 06' 24" West 156.75 feet; thence North 89 degrees 59'03" West 40 feet; thence North 0 degree 06'24" East 156.75 feet; thence South 89 degrees 59'03" East 40 feet to the point of beginning. Tax ID : 21-33-328-012-0000

29. 7504 S. 2200 W., West Jordan, UT 84084, more legally described as:

Commencing 35 rods South of the Northeast corner of the Southeast Quarter of Section 28, Township 2 South, Range 1 West, Salt Lak1 Base and Meridian, and running thence West 20.75 rods; thence South 10 rods, more or less, to a fence; thence East 20.75 rods; thence North 10 rods, more or less, to the place of beginning. Less and Excepting therefrom any portion lying within the bounds of the South Jordan Canal and 2200 West Street Tax ID: 21-28-429-007

30. 1516 W. Culpepper Cir., Taylorsville, UT 84123, more legally described as:

LOT 4, Brookshire Estates No. 4, according to the official plat thereof on file and of record in the office of the Salt Lake County Recorder. Tax ID: 21-22-258-021

31. Deep Creek Ranch Ibapah, UT 84034, more legally described as:

PARCEL 1: The Southwest Quarter of Section 22, Township 10 South, Range 19 West, Salt Lake Base and Meridian.

PARCEL 2: Beginning at the northeast corner of the northwest quarter of Section 27,

Township 10 South, Range 19 West, Salt Lake Base and Meridian, thence south 990 feet; then west 660 feet; thence south 1650 feet more or less to the quarter section line; thence west 1980 feet more or less to the west section line of said section; thence north 2640 feet more or less to the northwest corner of said section; thence east 2640 feet more or less to the point of beginning, together with the right to all the water from Rock Creek and water from Pass Creek as evidenced by water user claim no. WR-17-201, WR-17-187, WR-17-66, WR-17-82 and WR-17-183. Tax ID: 07-097-0-0003 & 07-097-0-0004

32. 9243 Grand Teton Drive, West Jordan, UT 84088, more legally described as:

Lot 334, Teton Estates No. 3 Subdivision, according to the official plat thereof, as recorded in the office of the Salt Lake County Recorder. Tax ID: 27-06-482-009-0000

B. Any and all assets purchased or investments made using proceeds, whether through Washakie Renewable Energy, United Fuel Supply, or Speedy Lion Renewable Fuel Investments, LLC, and any gains from those investments, including the following:

1. Jacob Kingston's 125 shares in Mobstar, LTD (Ireland) (including the $10,000 paid by B. Morrissey a purchase option price of the same).

C. $56.3 million loan receivable owed to Washakie Renewable Energy LLC by SBK Holding, AS (Turkey)

D. All of the share interests and other equity of Beck's Sanitation, Inc., a Utah corporation, that Washakie Renewable Energy, LLC (signatory Jacob Kingston) purchased around July 2015.

***Properties listed on ECF No. 1376***

E. The following assets related to the physical plant that was once known as Washakie Renewable Energy, LLC, located at 8100 W 24000 N Plymouth, Utah:

(1) The biodiesel production plant and all equipment contained or affixed therein;

(2) The crush plant, the warehouse, and all equipment contained or affixed therein

(3) The liquid storage tank farm; and

(4) The rail line; and

(5) all profits derived from lease payments paid or owed for, and that are attributable to, the use of the (i) biodiesel production plant and all equipment

contained or affixed therein; (ii) the crush plant, the warehouse, and all equipment contained or affixed therein; (iii) the liquid storage tank farm; and (iv) the rail line.

F. Proceeds from the sale of 2072 East Creek Road, Sandy, Utah

G. Proceeds from the sale of 1901-1903 W. Magnolia Blvd, Burbank, California

H. Proceeds from the sale of 5761 S. Anderson Street, Vernon, California,

I. Proceeds from the sale of 6507 Teesdale, Valley Glen, California

J. Proceeds from the sale of 160 E. Alondra Blvd, Carson, California

K. Proceeds from the sale of 12026 Hoffman St., #302, Los Angeles, California

L. Real property located at:

1. 16572 Somerset Lane, Huntington Beach, California, more legally described as:

   TR 4677 LOT 36 all-inc adjacent wharfage rights in a defined area of 400 FT Channel, SH AS AP 178-023-13, Tax ID: 178-411-03

2. 1605 Cactus Road, San Diego, California, more legally described as:

   LOTS 1 and 2 of Otay Heights Business Park, Unit No. 1, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County on December 15, 1992. EXCEPTING from LOT 1, that portion Deeded to the City of San Diego by Document recorded March 12, 1997 as Document No. 1997-109895 and described as follows: All that portion of LOT 1 of Otay Heights Business Park, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County December 15, 1992 described as follows: Commencing at the Northeast corner of said Lot 1; thence North 88 degrees 26' 18" West 217.78 feet, along the North line of said Lot 1, to the beginning of a curve, concave Southeasterly and having a radius of 40.00 feet, said beginning of a curve being the point of beginning; thence Southwesterly along the arc of said curve, a distance of 63.26 feet, through a central angle of 90 degrees 36' 55"; thence North 89 degrees 03' 12" West 5.00 feet to the West line of said Lot 1; thence North 0 degree 56' 46" East 20.22 feet, along the West line of said Lot 1, to the beginning of a curve, concave Southeasterly, having a radius of 20.00 feet; thence Northeasterly along the arc of said curve, a distance of 31.63 feet through a central angle of 90 degrees 36' 58", a radial line bears North 1 degree 33' 42" East, to a point of cusp on the North line of said Lot 1; thence South 88 degrees 26' 18" East 25.22 feet, along the North line of said Lot 1, to the point of beginning. Also Known

as: 1605 Cactus Road, San Diego, CA 92154. APN Numbers: 646-270-11-00 and 646-270-02-00

3. 13720 Vanowen Street, Van Nuys, California, more legally described as:

The Northerly 210.40 feet of the Easterly 300 feet of Lot 7 of Tract No. 1000 as per Map recorded in Book 19, Pages 1 to 34 inclusive of Map in the Office of the County Recorder of said County. Except therefrom the Easterly 160 feet of said Land. Also excepting at minerals, coal oils, petroleum and kindred substances and natural gas under and in said land. Also known as: 13720 Vanowen Street, Van Nuys, CA 91405. APN Number: 2238-010-030

4. 7004 Camino Maquiladora, San Diego, California, more legally described as:

All that certain real property situated in the County of San Diego, State of California, described as follows: Lots 1 and 2 of Otay Heights Business Park, Unit No. 1, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County on December 15, 1992. EXCEPTING from Lot 1, that portion Deeded to the City of San Diego by Document recorded March 12, 1997 as Document No. 1997-109895 and described as follows: All that portion of Lot 1 of Otay Heights Business Park, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 13000, filed in the Office of the County Recorder of San Diego County December 15, 1992 described as follows: Commencing at the Northeast corner of said Lot 1; thence North 88 degrees 26' 18" West 217.78 feet, along the North line of said Lot 1, to the beginning of a curve, concave Southeasterly and having a radius of 40.00 feet, said beginning of a curve being the point of beginning; thence Southwesterly along the arc of said curve, a distance of 63.26 feet, through a central angle of 90 degrees 36' 55"; thence North 89 degrees 03' 12" West 5.00 feet to the West line of said Lot 1; thence North 0 degree 56' 46" East 20.22 feet, along the West line of said Lot 1, to the beginning of a curve, concave Southeasterly, having a radius of 20.00 feet; thence Northeasterly along the arc of said curve, a distance of 31.63 feet through a central angle of 90 degrees 36' 58", a radial line bears North 1 degree 33' 42" East, to a point of cusp on the North line of said Lot 1; thence South 88 degrees 26' 18" East 25.22 feet, along the North line of said Lot 1, to the point of beginning. Also Known as: 1605 Cactus Road, San Diego, CA 92154. APN Numbers: 646-270-11-00 and 646-270-02-00

5. 14021 Margate Street, Sherman Oaks, California, more legally described as:

Parcel A of Parcel Map LA NO. 2009-3920, in the city of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 372, PAGES 70 and 71 of parcel maps, in the office of the county recorder of said county. Except therefrom all oil, gas, minerals and other hydrocarbon substances, lying below a

depth of 500 feet, without the right of surface entry. Also known as: 14027 Margate Street, Los Angeles, CA 91401 Tax ID : 2247-018-032

6. Parcel APN: 427-111-11 Mojave, California, in the name of Desert Properties, Holding, LLC, more legally described as:

   Parcel 2 of Parcel Map 885, in the County of Kern, State of California, as per map recorded in BOOK 7, PAGE 76 of Parcel maps, in the office of the County Recorder of said county. More commonly known as: APN: 427-111-11, Mojave, CA 93501

7. Parcel APN: 427-111-08 Mojave, California, in the name of Desert Properties, Holding, LLC, more legally described as:

   Parcels 1 of Parcel Map No. 885, in the County of Kern, State of California, as per map recorded in BOOK 7, PAGE 76 of Parcel Maps, in the office of the County Recorder of said county. More commonly known as: APN: 427-111-08, Mojave, CA 93501

8. Parcel APN: 427-111-10 Mojave, California, in the name of Desert Properties, Holding, LLC, more legally described as:

   Parcel 3 of Parcel Map No. 885, in County of Kern, State of California, as per map recorded in BOOK 7, PAGE 76 of parcel maps, in the Office of the County Recorder of said county. More commonly known as: APN: 427-111-10, Mojave, CA 93501

9. Willowcrest Apartments, 5217 Willowcrest Avenue, Los Angeles, California, more legally described as:

   That portion of LOT 163 of property of Lankershim Ranch land and water company in the City of Los Angeles County of Los Angeles State of California as per map recorded in BOOK 31 PAGES 39 through inclusive of miscellaneous records in the office of the County Recorder of said county described as follows commencing at the Southeast corner of said LOT 163 thence South 89 54'10 West along the South line of said lot 155 03 feet thence North 10 13'04 West 150 feet to the true point of beginning thence South 880 54 10 West parallel with the South line of said Lot 150 02 feet thence North 10 13'07 West 50 feet thence North 880 54 10 East parallel with the South line of said Lot 15002 feet thence South 1 13'04 East 50 feet to the point of beginning except therefrom the Easterly 25 feet thereof also except therefrom any portion thereof lying with lines of Willow Crest Avenue as widened to 60 feet the above described property is shown as part of parcel 147 on licensed surveyor S Map recorded in BOOK 13 PAGE 16 of record of surveys of said county. Also known as: 5217 Willowcrest Avenue, (North Hollywood Area) Los Angeles, CA 91601

10. 9153 Stellar Court, Corona, California, more legally described as:

Parcel A: Parcel 2 of lot line adjustment No. 4546. Recorded March 11, 2003 as instrument No. 03-169962 of official records. Being more particularly described as follows: That portion of Parcel 8 of Parcel Map 28834-2, in the unincorporated area of the county of Riverside, State of California, as per map recorded in Book 198, Pages 97 through 101. Inclusive of parcel maps. In the office of the County Recorder of said county and that portion of parcel A (portion of Parcel 7 of said Parcel Map 28834-2) of lot merger 1339 recorded December 11, 2002 as instrument No. 2002-741246 of official records of said county, more particularly described as follows: Beginning at the most Westerly corne4r of said Parcel 8, said point being on the Southeasterly right-of-way of stellar court distant 33.00 feet from the Centerline thereof; thence North 61 Degrees 42' 54" East along said right-of-way, 30.41 feet to the true point of beginning; thence continuing along said right-of-way, 200.60 feet; thence South 28 degrees 17' 06" East, 117.37 feet; thence North 61 degrees 42' 54" East parallel to said Southeasterly right-of-way, 33.86 feet; thence South 28 degrees 17' 06" East, 155.57 feet; thence South 31 degrees 06" 12" East, 32.85 feet; thence South 28 degrees 12' 10" East to a point on the Northwesterly right-of-way Brown Canyon channel distant 18.25 feet from the centerline thereof, 102.58 feet; thence South 55 degrees 49' 12" West along said Northwesterly right-of-way, 197.95 feet; thence North 28 degrees 17' 06" West, 89.99 feet; thence North 24 degrees 42' 09" West, 32.99 feet; thence North 28 degrees 17' 06" West, 156.67 feet; thence South 61 degrees 42' 54" West parallel to said right-of-way, 9.02 feet; thence North 28 degrees 18' 03" West, 74.65 feet; thence South 61 degrees 42' 54" West parallel to said right-of-way, 32.04 feet; thence North 28 degrees 17' 06" West, 74.44 feet to the true point of beginning.

PARCEL B: An easement for mutual access and private utility purposes over that portion of Parcel 1 of lot line adjustment No. 4546. Recorded March 11, 2002 as instrument No. 2003-169962 of official records, as set forth in Deed recorded July 15, 2008 as instrument No. 2008-0385493 of official records.

PARCEL C: An easement for mutual access purposes over that portion of Parcel 3 of lot line adjustment No. 4546. Recorded March 11, 2003 as instrument No. 2003-169962 of official records. As set forth in Deed recorded July 15, 2008 as Instrument No. 2008-0385492 of official records.

PARCEL D: An easement for private water purpose over that portion of Parcel 3 of lot line adjustment No. 4546. Recorded March 11, 2003 as instrument No. 2003-169962 of official records. As set forth in Deed recorded July 15, 2008 as instrument No. 2008-0385491 of official records.

PARCEL E: An easement for building encroachment purposes over that portion of Parcel 3 of lot line adjustment No. 4546. Recorded March 11, 2002 as Instrument No. 2003-169962 of official records. As set forth in Deed recorded July 15, 2008 as Instrument No. 2008-0385490 of official records. Tax ID : 283-440-017

11. Belize Real Property – A parcel in the Banque Free Zone, Belize, described as Parcel 3628, Block 23, titled in the name of G.T. Energy, LLC

**Vehicles**

M. 2010 Bugatti Veyron, Vehicle Identification Number ("VIN") VF9SC2C23AM795205.

N. 2015 Lamborghini Aventador, VIN: ZHWUR1ZD2FLA03759

**Other Assets**

O. "Kazi loan receivable" identified as the outstanding amount of principal and interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21.

P. Solar turbines and related equipment paid for by the $3,900,000 wire transfer to Hendrix Henergy

Q. Compressors purchased by Century Energy or Industrial Energy Solutions

R. Industrial Equipment and/or storage tank purchased by Century Energy or Industrial Energy Solutions

S. Any asset purchased or traced to the $275,000 transfer on 11/20/19 to Century Energy account #9961 ("welding machines, skid manufacturing, and a 5-ton crane")

T. Cash/Currency in the amount of $9,104,500.00 representing cash in lieu of the Motor Yacht *Queen Anne,* registered in the Cook Islands, No. 2732, IMO #9704958, Call Sign E5U3623, which was sold by interlocutory sale based upon this Court's order in Case No. 2:21-cr-140, ECF No. 19.

**General Orders of Forfeiture**

Pursuant to Rule 32.2(b)(2)(C), the United States is entitled to a General Order of Forfeiture against the following for any and all property that constitutes or is derived from proceeds of mail fraud, or that constitutes property involved in money laundering, or property traceable to such property:

U. SBK Holdings USA, Inc,

V. Century Energy

W. The $4 million that remained at Komak Isi Yalitim Sistamleri Sanayi (Turkey) after being transferred to Komak on 12/31/13, and the $3,810,000 transferred to Komak Isi Yalitim Sistamleri Sanayi (Turkey) by Noil Energy on 3/22/16

X. SBK Holdings, AS

Y. Biofarma, Ilac, AS (Turkey)

Z. Isanne SARL (Luxembourg)

AA. Mega Varlik Yonetim (Turkey)

BB. Setap Teknoloji (Turkey), and Blane Teknologi, AS (Turkey)

CC. G.T. Energy LLC (including the $1 Million Certificate of Deposit purchased on June 2, 2016)

DD. Alptekin Ylimaz.

EE. DK Zvezda

FF. Speedy Lion

GG. Pillar Law Group

# Exhibit N

JOHN W. HUBER, United States Attorney (#7226)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: leslie.a.goemaat@usdoj.gov
richard.m.rolwing@usdoj.gov
arthur.j.ewenczyk@usdoj.gov
john.e.sullivan@usdoj.gov

FILED
U.S. DISTRICT COURT
2018 AUG -1 P 12:40
DISTRICT OF UTAH
BY: DEPUTY CLERK

**SEALED**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. |
| Plaintiff, | : | INDICTMENT |
| v. | : | Viols. |
| JACOB ORTELL KINGSTON, ISAIAH ELDEN KINGSTON, and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, | : | **Counts 1 thru 9** – 26 U.S.C. § 7206(2) (Aiding and Assisting in the Filing of a False Return) |
| Defendants. | : | **Counts 10 thru 14** – 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Money Laundering) |
| | : | **Count 15** – 18 U.S.C. §§ 1957 and 2 (Money Laundering) |
| | : | Forfeiture Allegation |

Case: 2:18-cr-00365
Assigned To : Parrish Jill N.
Assign. Date : 8/1/2018
Description: USA v. SEALED

The Grand Jury charges:

At times relevant to this Indictment:

**Defendants and Their Companies**

1. Defendant JACOB ORTELL KINGSTON was a resident of Utah and owned 50% of Washakie Renewable Energy, LLC ("Washakie"). He was the chief executive officer of Washakie.

2. Defendant ISAIAH ELDEN KINGSTON was a resident of Utah and owned 50% of Washakie. He was the chief financial officer of Washakie.

3. Washakie was a limited liability company with corporate offices in Salt Lake City, Utah. As of January 7, 2013, Washakie described itself on its website as "Utah's largest producer of clean burning and sustainable biodiesel." As of November 10, 2013, Washakie described itself on its website as "the largest producer of biodiesel and chemicals in the intermountain west."

4. United Fuel Supply ("UFS") was a limited liability company with corporate offices in Salt Lake City, Utah. UFS was controlled by Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON.

5. Defendant LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, was a resident of California. He controlled several fuel-related companies in the United States, including Noil Energy Group, a corporation with offices in California.

6. SBK Holdings, Inc., later SBK Holdings USA, Inc., was a corporation formed in California in December 2013 initially owned by Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan. Defendant DERMEN had signatory authority over SBK Holdings USA, Inc.'s bank accounts and

became the sole owner of the entity in or around September 2014.

7. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States.

**Law and Industry**

8. The IRS administered tax credits designed to increase the amount of renewable fuel used and produced in the United States. The tax credits were refundable regardless of whether the taxpayer owed other taxes, and were paid by U.S. Treasury check.

9. Biodiesel was a type of renewable fuel derived from plant or animal matter that met certain IRS and Environmental Protection Agency ("EPA") standards. Agri-biodiesel was a type of biodiesel. Biodiesel was referred to as "B100" in the fuel industry if it was not mixed with diesel fuel. Renewable diesel was another type of renewable fuel, derived from biomass, that met certain IRS and EPA standards. Renewable diesel was referred to as "R100" in the fuel industry if it was not mixed with diesel fuel. "Feedstock" was a generic term for raw material used to produce various kinds of renewable fuel.

10. Biodiesel mixture was produced by blending B100 with at least .1% of diesel fuel. After blending, the mixture of B100 and diesel was referred to as "B99" in the fuel industry. The biodiesel mixture credit was a refundable fuel tax credit available to blenders of biodiesel mixture who used the mixture as a fuel or sold it for use as a fuel.

The amount of the credit was $1.00 for every gallon of B100 that was used to produce the biodiesel mixture. The market value of B100 was higher than the market value of B99 because the $1.00 per gallon biodiesel mixture credit could be obtained by blending the B100 with diesel fuel.

11. Renewable diesel mixture was produced by blending R100 with at least .1% of diesel fuel. After blending, the mixture of R100 and diesel was referred to as "R99" in the fuel industry. The renewable diesel mixture credit was a refundable fuel tax credit available to blenders of renewable diesel mixture who used the mixture as a fuel or sold it for use as a fuel. The amount of the credit was $1.00 for every gallon of R100 that was used to produce the renewable diesel mixture. The market value of R100 was higher than the market value of R99 because the $1.00 per gallon renewable diesel mixture credit could be obtained by blending the R100 with diesel fuel.

12. Liquid fuel derived from biomass was a type of alternative fuel that did not meet the IRS and EPA requirements for biodiesel or renewable diesel.

a. The alternative fuel mixture credit was a $.50 per gallon refundable fuel tax credit available to registered producers of alternative fuel mixtures who used the mixture as fuel in the producer's trade or business or sold it for use as fuel. It was no longer refundable after December 31, 2011.

b. The alternative fuel credit was a $.50 per gallon refundable fuel tax credit available to registered alternative fuelers who sold for use, or used, alternative fuel as a fuel in a motor vehicle or motorboat.

13. IRS Form 8849, Claim for Refund of Excise Taxes, was used to claim fuel tax credits for biodiesel mixtures, agri-biodiesel mixtures, renewable diesel mixtures, and liquid fuel derived from biomass.

**Mail Fraud Scheme Allegations**

14. From in or around at least as early as 2010 through 2016, JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON schemed with each other and others, including LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, to have Washakie and UFS file false claims with the United States to fraudulently obtain refundable fuel tax credits and other government benefits.

15. As part of their scheme, among other things, JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON, and others, including LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, did the following:

a. They bought and resold, and caused others to buy and resell on their behalf, B99 and other products that were not eligible for a refundable fuel tax credit.

b. They falsified and caused others to falsify purchase invoices and contracts.

c. They falsified and caused others to falsify production records, blending tickets, bills of lading, and other paperwork routinely created in qualifying renewable fuel transactions.

d. They falsified and caused others to falsify sales invoices.

e. They falsified and caused others to falsify accounting records.

f. They involved numerous companies in their transactions.

g. They falsified paperwork to disguise purchases of B99 as B100 or feedstock.

h. They falsified paperwork to disguise other products as qualifying liquid fuel.

i. They rotated, or moved, and caused others to move, liquid products between various places in the United States and elsewhere, including Panama, to make it falsely appear that transactions involving the purchase and sale of feedstock, B100, B99, and other fuel products, were taking place.

j. They used "burner phones," facsimile machines, thumb drives, and other covert means to communicate among themselves and with others in the scheme.

k. They filed and caused to be filed false Forms 8849 with the IRS, falsely claiming the $1.00 per gallon credit for biodiesel mixtures, agri-biodiesel mixtures, and renewable diesel mixtures.

l. They filed and caused to be filed false Forms 8849 with the IRS, falsely claiming the $.50 per gallon credit for liquid fuel derived from biomass.

m. By filing these false Forms 8849, they caused the U.S. Treasury to pay more than $511 million to Washakie by sending, via the mails, U.S. Treasury checks to Washakie's offices in Salt Lake City, Utah.

16. JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON, with each other and others known and unknown to the grand jury, including LEV ASLAN

DERMEN, a/k/a Levon Termendzhyan, knowingly devised and intending to devise a scheme and artifice to defraud the United States, and to obtain money and property from the United States by materially false and fraudulent pretenses, representations, and promises, as described in paragraphs 14 and 15, that is, by, among other things, scheming to fraudulently obtain U.S. Treasury checks through the filing of Forms 8849, Claims for Refund of Excise Taxes, with the IRS for and on behalf of Washakie and UFS, which forms falsely claimed refundable fuel tax credits that Washakie and UFS were not entitled to receive, and, for the purpose of executing said scheme and artifice to defraud, did cause mailings and things to be sent via the United States Postal Service and private and commercial interstate carriers, including, but not limited to, U.S. Treasury checks mailed on or about the following dates in the following amounts:

| Para. Num. | Date | False Item(s) Claimed on Form 8849 | Treasury Check Amount |
|---|---|---|---|
| A. | 02/17/11 | Agri-biodiesel mixtures and liquid fuel derived from biomass | $3,174,387 |
| B. | 04/01/11 | Agri-biodiesel mixtures | $1,905,114 |
| C. | 04/05/11 | Liquid fuel derived from biomass | $3,654,952 |
| D. | 04/25/11 | Liquid fuel derived from biomass | $486,000 |
| E. | 05/23/11 | Biodiesel mixtures and liquid fuel derived from biomass | $1,755,693 |
| F. | 05/26/11 | Biodiesel mixtures | $1,984,000 |
| G. | 06/29/11 | Biodiesel mixtures | $1,142,891 |
| H. | 07/19/11 | Liquid fuel derived from biomass | $840,000 |
| I. | 08/03/11 | Biodiesel mixtures and liquid fuel derived from biomass | $3,500,000 |
| J. | 09/20/11 | Biodiesel mixtures | $2,500,000 |

| Para. Num. | Date | False Item(s) Claimed on Form 8849 | Treasury Check Amount |
|---|---|---|---|
| K. | 10/19/11 | Renewable diesel mixtures | $1,000,000 |
| L. | 10/24/11 | Biodiesel mixtures | $2,000,000 |
| M. | 10/24/11 | Biodiesel mixtures and renewable diesel mixtures | $4,250,000 |
| N. | 10/28/11 | Biodiesel mixtures | $2,000,000 |
| O. | 11/03/11 | Renewable diesel mixtures | $522,970 |
| P. | 11/10/11 | Biodiesel mixtures | $723,000 |
| Q. | 11/18/11 | Renewable diesel mixtures | $1,495,250 |
| R. | 12/28/11 | Renewable diesel mixtures and liquid fuel derived from biomass | $2,785,648 |
| S. | 01/31/12 | Liquid fuel derived from biomass | $1,350,808 |
| T. | 02/28/13 | Biodiesel mixtures | $3,901,235 |
| U. | 03/19/13 | Biodiesel mixtures | $640,959 |
| V. | 03/20/13 | Liquid fuel derived from biomass | $20,283,659 |
| W. | 03/21/13 | Biodiesel mixtures and liquid fuel derived from biomass | $4,406,041 |
| X. | 04/05/13 | Biodiesel mixtures and liquid fuel derived from biomass | $8,859,520 |
| Y. | 05/21/13 | Liquid fuel derived from biomass | $11,872,884 |
| Z. | 05/31/13 | Biodiesel mixtures | $11,700,000 |
| AA. | 06/13/13 | Biodiesel mixtures | $11,400,000 |
| BB. | 08/07/13 | Agri-biodiesel mixtures | $25,800,000 |
| CC. | 08/22/13 | Biodiesel mixtures | $16,200,000 |
| DD. | 09/09/13 | Biodiesel mixtures | $35,008,437 |
| EE. | 10/18/13 | Biodiesel mixtures | $33,465,236 |
| FF. | 11/05/13 | Biodiesel mixtures | $33,581,899 |
| GG. | 11/27/13 | Biodiesel mixtures | $38,078,529 |
| HH. | 12/19/13 | Biodiesel mixtures | $33,578,660 |
| II. | 01/10/14 | Biodiesel mixtures | $21,789,321 |

| Para. Num. | Date | False Item(s) Claimed on Form 8849 | Treasury Check Amount |
|---|---|---|---|
| JJ. | 03/12/15 | Biodiesel mixtures | $82,102,840 |
| KK. | 03/12/15 | Biodiesel mixtures | $82,102,840 |

17. The scheme described in paragraphs 14 through 16 is hereinafter referred to as the "Mail Fraud Scheme."

**Statutory Allegations**

**Counts 1 thru 9**
**26 U.S.C. § 7206(2)**
**(Willfully Aiding and Assisting in the Filing of a False Return)**

18. Paragraphs 1 through 13 are incorporated by reference and re-alleged as though fully set forth herein.

19. On or about the dates set forth below, in the Central Division of the District of Utah and elsewhere,

**JACOB ORTELL KINGSTON,**

defendant herein, did willfully aid and assist in, and procure, counsel, and advise the presentation to the IRS of the following Forms 8849, Claims For Refund of Excise Taxes, for and on behalf of Washakie, which were false and fraudulent as to the material matters referenced in the chart below, in that the Forms 8849 falsely represented that Washakie was entitled to claim refundable fuel tax credits in the amounts set forth below, whereas, as Defendant JACOB ORTELL KINGSTON then and there knew, Washakie was not entitled to the credits in the amounts claimed:

| Count | Defendant | Date | False Item(s) Claimed | Amount of Credit Claimed |
|---|---|---|---|---|
| 1 | JACOB KINGSTON | 02/13/13 | Line 2a – Biodiesel mixtures | $3,901,235 |
| 2 | JACOB KINGSTON | 02/25/13 | Line 2a – Biodiesel mixtures | $640,959 |
| 3 | JACOB KINGSTON | 03/11/13 | Line 3f – Liquid fuel derived from biomass | $20,283,659 |
| 4 | JACOB KINGSTON | 03/12/13 | (a) Line 2a – Biodiesel mixtures<br>(b) Line 3f – Liquid fuel derived from biomass | $806,041<br>$3,600,000 |
| 5 | JACOB KINGSTON | 03/27/13 | (a) Line 2a – Biodiesel mixtures<br>(b) Line 3f – Liquid fuel derived from biomass | $2,398,274<br>$6,461,246 |
| 6 | JACOB KINGSTON | 04/17/13 | Line 3f – Liquid fuel derived from biomass | $11,872,884 |
| 7 | JACOB KINGSTON | 05/20/13 | Line 2a – Biodiesel mixtures | $11,700,000 |
| 8 | JACOB KINGSTON | 06/03/13 | Line 2a – Biodiesel mixtures | $11,400,000 |
| 9 | JACOB KINGSTON | 07/29/13 | Line 2b – Agri-biodiesel mixtures | $25,800,000 |

All in violation of Title 26, United States Code, Section 7206(2).

**Counts 10 thru 12**
**(Money Laundering)**
**18 U.S.C. § 1956(a)(1)(B)(i)**

20. Paragraphs 1 through 17 are incorporated by reference and re-alleged as though fully set forth herein.

**$11.2 Million Loan to Borrower X**

21. In June 2013, Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, used proceeds of the Mail Fraud Scheme to make an $11.2 million loan to Borrower X, a California businessman, as follows:

a. On or about June 10, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,700,000, to be deposited into Washakie account #4874;

b. On or about June 17, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,400,000, to be deposited into Washakie account #4874;

c. On or about June 21, 2013, Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, caused a wire transfer in the amount of $11,226,211 to be sent from Washakie account #4874 to a third party account in Florida for the purpose of making a loan to Borrower X of that amount;

d. On or about February 4, 2015, Defendant LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, executed, and caused Borrower X to execute, a promissory

note for $12,000,000 to document the loan to Borrower X, which made the loan payable to SBK Holdings USA, Inc. instead of to Washakie, the source of the loan. Borrower X made principal and interest payments on this loan to accounts controlled or directed by Defendant DERMEN; and

e. As a result of the foregoing, Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, disguised the criminally derived proceeds fraudulently obtained from the United States as payments related to a loan payable to SBK Holdings USA, Inc.

**Statutory Allegations**

22. On or about the dates set forth in the table below, in the Central Division of the District of Utah and elsewhere,

**JACOB ORTELL KINGSTON and**
**LEV ASLAN DERMEN,**
**a/k/a Levon Termendzhyan,**

defendants herein, did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce, that is, causing the making of principal and interest payments on the $11,226,211 loan made to Borrower X, which transactions involved the proceeds of specified unlawful activity, that is, the proceeds of the Mail Fraud Scheme, in violation of Title 18, United States Code, Section 1341, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting or attempting to conduct such transactions, knew that

the property involved in the transactions represented the proceeds of some form of unlawful activity, with each of the following financial transactions constituting a separate count:

| Count | Defendants | Date | Financial Transaction |
|---|---|---|---|
| 10 | JACOB KINGSTON<br>LEV DERMEN | 02/20/15 | $210,000 wire transfer for the benefit of SBK Holdings USA, Inc., representing an interest payment on Borrower X's loan |
| 11 | JACOB KINGSTON<br>LEV DERMEN | 03/16/15 | $70,000 wire transfer for the benefit of SBK Holdings USA, Inc., representing an interest payment on Borrower X's loan |
| 12 | JACOB KINGSTON<br>LEV DERMEN | 4/15/15 | $70,000 wire transfer for the benefit of SBK Holdings USA, Inc., representing an interest payment on Borrower X's loan |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

**Counts 13 and 14**
**(Money Laundering)**
**18 U.S.C. § 1956(a)(1)(B)(i)**

23. Paragraphs 1 through 17 are incorporated by reference and re-alleged as though fully set forth herein.

**Purchase of Real Property at 2072 East Creek Road**

24. In August 2013, Defendants JACOB ORTELL KINGSTON, ISAIAH ELDEN KINGSTON, and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, used proceeds of the Mail Fraud Scheme to purchase the real property at 2072 East Creek Road, Sandy, Utah 84093, as follows:

a. On or about April 8, 2013, Defendant JACOB ORTELL

KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $8,859,520, to be deposited into Washakie account #4874 at the Bank of Utah;

b. On or about May 24, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,872,884, to be deposited into Washakie account #4874 at the Bank of Utah;

c. On or about May 28, 2013, Defendant JACOB ORTELL KINGSTON caused $15 million to be transferred from Washakie account #4874 to Merrill Lynch account #2117;

d. On or about June 5, 2013, Defendant JACOB ORTELL KINGSTON issued and signed a $3 million check payable to Noil Energy Group from loan account #1352 at Merrill Lynch, which account was secured by account #4821 at Merrill Lynch;

e. On or about June 7, 2013, Defendant JACOB ORTELL KINGSTON caused $15,000,123 to be transferred from Merrill Lynch #2117 to Defendant JACOB ORTELL KINGSTON's personal account #4821 at Merrill Lynch;

f. On or about June 10, 2013, Defendant LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, caused a $3 million check from JACOB ORTELL KINGSTON's Merrill Lynch account #1352 to be deposited into Noil Energy Group account #8583 at Bank of America;

g. On or about June 10, 2013, Defendant JACOB ORTELL

KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,700,000, to be deposited into Washakie account #4874;

h. On or about June 13, 2013, Defendant JACOB ORTELL KINGSTON caused $10 million to be transferred from Washakie account #4874 to Defendant JACOB ORTELL KINGSTON's personal account #4821 at Merrill Lynch;

i. On or about June 17, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,400,000, to be deposited into Washakie account #4874;

j. On or about July 3, 2013, Defendant JACOB ORTELL KINGSTON used $3,024,393 of funds from his personal account #4821 at Merrill Lynch to pay off the outstanding balance on his loan account #1352 at Merrill Lynch;

k. On or about July 29, 2013, Defendant JACOB ORTELL KINGSTON signed a purchase contract listing "Noil Energy" as the buyer of the real property at 2072 East Creek Road, Sandy, Utah 84093;

l. On or about August 1, 2013, Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON caused Washakie to wire transfer $50,000 from Washakie account #4874 to Meridian Title Company for the purchase of the real property at 2072 East Creek Road, Sandy, Utah 84093;

m. On or about August 2, 2013, Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON caused Washakie to wire transfer $675,034 from Washakie account #4874 to Meridian Title Company for the purchase of

the real property at 2072 East Creek Road, Sandy, Utah 84093; and

n. On or about August 5, 2013, Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMAN, a/k/a Levon Termendzhyan, caused $3,160,000 to be wire transferred from Noil Energy Group account #8583 to Meridian Title Company for the purchase of the real property at 2072 East Creek Road, Sandy, Utah 84093.

**Statutory Allegations**

25. On or about the following dates, in the Central Division of the District of Utah and elsewhere, defendants set forth in the table below, did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce, that is, causing funds to be wire transferred in connection with the purchase of the real property at 2072 East Creek Road, Sandy, Utah 84093, which transactions involved the proceeds of specified unlawful activity, that is, the proceeds of the Mail Fraud Scheme, in violation of Title 18, United States Code, Section 1341, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting or attempting to conduct such transactions, knew that the property involved in the transactions represented the proceeds of some form of unlawful activity, with each of the following financial transactions constituting a separate count:

| Count | Defendant | Date | Financial Transaction |
|---|---|---|---|
| 13 | JACOB KINGSTON<br>ISAIAH KINGSTON | 08/02/13 | $675,034 wire transfer from Washakie to Meridian Title Company in connection with the purchase of the real property at 2072 East Creek Road |
| 14 | JACOB KINGSTON<br>LEV DERMEN | 08/05/13 | $3,160,000 wire transfer from Noil Energy Group to Meridian Title Company in connection with the purchase of the real property at 2072 East Creek Road |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

**Count 15**
**(Money Laundering)**
**18 U.S.C. § 1957**

The Grand Jury further charges:

26. Paragraphs 1 through 17 are incorporated by reference and re-alleged as though fully set forth herein.

**Purchase of 2010 Bugatti Veyron**

27. In August 2013, Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON used proceeds of the Mail Fraud Scheme to purchase a 2010 Bugatti Veyron as follows:

a. On or about March 27, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $20,283,659, to be deposited into Washakie account #4874 at the Bank of Utah;

b. On or about March 27, 2013, Defendant JACOB ORTELL

KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $4,406,041, to be deposited into Washakie account #4874;

c. On or about April 8, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $8,859,520, to be deposited into Washakie account #4874;

d. On or about April 15, 2013, $10 million was transferred from Washakie account #4874 to United Fuel Supply account #3850 at the Bank of Utah;

e. On or about April 15, 2013, Defendant ISAIAH ELDEN KINGSTON caused the transfer of $10 million from United Fuel Supply account #3850 to Merrill Lynch account #4805;

f. On or about July 23, 2013, $9,651,443 was transferred from Merrill Lynch account #4805 to United Fuel Supply account #3850;

g. On or about July 25, 2013, $280,509 was transferred from Merrill Lynch account #4805 to United Fuel Supply account #3850;

h. On or about July 29, 2013, Defendant ISAIAH ELDEN KINGSTON caused $100,000 to be wire transferred from United Fuel Supply account #3850 to Car Company A; and

i. On or about August 5, 2013, Defendant ISAIAH ELDEN KINGSTON caused $1,720,000 to be wire transferred from United Fuel Supply account #3850 to Car Company A.

**Statutory Allegations**

28. On or about August 5, 2013, in the Central Division of the District of Utah and elsewhere,

**JACOB ORTELL KINGSTON and**
**ISAIAH ELDEN KINGSTON,**

defendants herein, did knowingly engage, and did aid, abet, counsel, command, induce, procure, and cause the engaging in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such transaction involving the wire transfer of $1,720,000 from United Fuel Supply account #3850 at the Bank of Utah to Car Company A, in connection with the purchase of a 2010 Bugatti Veyron automobile, such property having been derived from a specified unlawful activity, that is, the proceeds of the Mail Fraud Scheme, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Sections 1957 and 2.

**NOTICE OF INTENT TO SEEK FORFEITURE**

Pursuant to 21 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. §§ 1956 and 1957, Defendants JACOB ORTELL KINGSTON, ISAIAH ELDEN KINGSTON, and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

1. Real property located at 2072 East Creek Road, Sandy, Utah 84093;

2. 2010 Bugatti Veyron with a Vehicle Identification Number ("VIN") VF9SC2C23AM795205;

3. All money or other property that was the subject of each transaction, transportation, transmission, or transfer in violation of 18 U.S.C. §§ 1956 and 1957, including the following:

    a. The outstanding balance of the loan owed by Borrower X to SBK Holdings USA, Inc.;

    b. Any and all interest payments made or owed by Borrower X;

    c. Any and all principal payments made or owed by Borrower X;

4. All commissions, fees, and other property constituting proceeds obtained by the defendant as a result of those violations;

5. All property used in any manner or part to commit or to facilitate the commission of those violations; and

6. A MONEY JUDGMENT equal to the value of all property involved in the money laundering and not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant(s).

SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission the defendant(s):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b).

A TRUE BILL:

/S/
FOREPERSON OF THE GRAND JURY

APPROVED:

JOHN W. HUBER
United States Attorney

Leslie A. Goemaat
LESLIE A. GOEMAAT
Special Assistant United States Attorney

# Exhibit O

FILED US District Court-UT
JAN 24 '24 AM11:31

TRINA A. HIGGINS, United States Attorney (#7349)
ERIKA V. SUHR, Trial Attorney (FL #1020532)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: erika.v.suhr@usdoj.gov
richard.m.rolwing@usdoj.gov

SEALED

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. |
| Plaintiff, | : | **INDICTMENT** |
| v. | : | Viols. |
| SANTIAGO GARCIA GUTIERREZ, | : | **Counts 1 – 4** 18 U.S.C. §§ 1343 and 1349 (Wire Fraud) |
| Defendant. | : | **Count 5** – 18 U.S.C. § 912 (Impersonating a Federal Officer) |
| | : | **Counts 6-7** – 18 U.S.C. § 1028A (Aggravated Identity Theft) |
| | : | **Count 8** – 18 U.S.C. § 1001 (False Statement) |
| | : | |
| | : | Forfeiture |

Case: 2:24-cr-00020
Assigned To : Nielson, Howard C., Jr
Assign. Date : 1/23/2024

The Grand Jury charges:

At times relevant to this Indictment:

**Introduction**

1. From February 2018 through January 2020, Defendant SANTIAGO GARCIA

GUTIERREZ ("Defendant GARCIA") impersonated a federal agent and used other real and fabricated identities to defraud his victim, ("Victim 1") out of over $2.8 million..

2. On or about the dates set forth below, Defendant GARCIA, for the purpose of executing the above-described scheme to defraud, caused Victim 1 and others to transmit funds via the following wire transfers, from a company owned by Victim 1, to a company controlled by Defendant GARCIA, in the following amounts, by means of wire communications in interstate and foreign commerce:

| Para. No. | Date (on or about) | Amount |
|---|---|---|
| a. | 5/11/2018 | $8,000.00 |
| b. | 5/15/2018 | $114,000.00 |
| c. | 6/22/2018 | $225,000.00 |
| d. | 6/25/2018 | $225,000.00 |
| e. | 7/02/2018 | $375,000.00 |
| f. | 7/17/2018 | $270,000.00 |
| g. | 8/16/2018 | $500,000.00 |
| h. | 8/20/2018 | $105,000.00 |
| i. | 8/31/2018 | $47,789.27 |
| j. | 9/10/2018 | $400,000.00 |
| k. | 1/28/2019 | $450,000.00 |
| l. | 3/13/2019 | $125,000.00 |
| m. | 4/10/2019 | $150,000.00 |
| n. | 5/28/2019 | $84,000.00 |
| | Total | $2,853,789.27 |

3. During the dates that Defendant GARCIA executed the above-described scheme to defraud, both Defendant GARCIA and Victim 1 were witnesses in a federal grand jury investigation and related trial proceedings in the District of Utah.

**Defendant and His Entities**

4. Defendant GARCIA was a resident of Texas; Utah; and California, who worked in the fuel industry.

5. Defendant GARCIA controlled bank accounts maintained in the names of the following entities:

| Name | ACCT # |
| --- | --- |
| Universal Investments & Trading, LLC | # x3120<br># x3968<br># x8653 |
| United Fuel Supply SA LLC | # x5821 |
| UIT Petroleum Services | # x4187 |

**Other Persons and Entities**

6. During 2014 through 2018, Defendant GARCIA had personal and business associations with Levon Termendzhyan, Jacob Kingston, Isaiah Kingston, and Victim 1.

7. "Victim 1" was a resident of the U.S. Virgin Islands ("USVI"), and had residences in Miami, Florida, and Los Angeles, California. He was the owner and Chief Executive Officer of the following related companies which owned and operated fast food restaurants and oil fields:

| Name | |
| --- | --- |
| "Victim 1" Management St. Croix, LLC | USVI |
| "Victim 1" Petroleum, LLC | Texas |
| "Victim 1" Energy Company, LLC | Texas |
| Black Star Aviation | Delaware |

8. In January 2018 Defendant GARCIA entered into an agreement to provide services for the oil fields owned by Victim 1.

9. Jacob Kingston was a resident of Utah and owned 50% of Washakie Renewable Energy, LLC ("Washakie"). He was the Chief Executive Officer of Washakie.

10. Isaiah Kingston was a resident of Utah and owned 50% of Washakie. He was the Chief Financial Officer of Washakie.

11. Washakie was a limited liability company with corporate offices in Salt Lake City, Utah. As of January 7, 2013, Washakie described itself on its website as "Utah's largest producer of clean burning and sustainable biodiesel." As of November 10, 2013, Washakie described itself on its website as "the largest producer of biodiesel and chemicals in the intermountain west."

12. United Fuel Supply ("UFS") was a limited liability company in the fuel business with corporate offices in Salt Lake City, Utah. UFS was controlled by Jacob Kingston and Isaiah Kingston.

13. In April 2014, Defendant GARCIA opened the UFS office in Texas with the Kingstons, and he worked for UFS until January of 2015.

14. Levon Termendzhyan, also known as Lev Aslan Dermen, was a resident of California. He had an interest in or controlled several fuel-related companies in the United States. He was a personal and business associate of Victim 1, and they owned houses near each other in California.

**Background**

15. Beginning in or about the fall of 2011 and continuing up to at least February 2016, Jacob Kingston, Isaiah Kingston, and Levon Termendzhyan conspired to commit mail fraud by scheming to fraudulently obtain U.S. Treasury checks from the Internal Revenue Service ("IRS") by filing false claims for refundable renewable fuel credits. Pursuant to the

scheme, Jacob Kingston, Isaiah Kingston, and Levon Termendzhyan caused Washakie and UFS to file over $1 billion of false claims with the IRS. As a result of these false claims, the IRS issued U.S. Treasury checks to Washakie totaling approximately $511 million that Washakie and UFS were not entitled to receive. This scheme is hereinafter referred to as the "Washakie Mail Fraud Scheme."

16. In March 2013, Victim 1 travelled to Turkey at the invitation of Levon Termendzhyan and while there, he met Jacob Kingston.

17. In June 2013, Victim 1 received a court order to pay over $11.2 million to a creditor due to a personal guarantee he had made on a corporate loan upon which his company had defaulted.

18. In June 2013, Jacob Kingston and Isaiah Kingston, at the direction of Levon Termendzhyan, caused Washakie to wire transfer more than $11.2 million of the fraud proceeds from the Washakie Mail Fraud Scheme directly to the bank account of the creditor of Victim 1 for the benefit of Victim 1 in order to entirely pay off his personal guarantee.

19. In February 2015, Levon Termendzhyan caused Victim 1 to sign, and caused Kingston to agree to, a promissory note obligating the companies owned by Victim 1 to repay $12 million to an entity owned and controlled by Termendzhyan rather than to Washakie or the Kingstons.

20. Between 2014 and 2016, Victim 1 repaid over $3 million of the $12 million to Termendzhyan and to entities controlled by Termendzhyan.

21. In September 2016, federal law enforcement agents informed Victim 1 that he unwittingly received the benefit of $11.2 million in fraud proceeds from Washakie and Levon Termendzhyan. Victim 1 was instructed by a federal law enforcement officer to not repay the

$12 million promissory note to any party except the United States government.

22. From 2015 to 2019, the IRS and Environmental Protection Agency conducted a grand jury investigation in the District of Utah into the conduct of the Kingstons and Termendzhyan. Both Defendant GARCIA and Victim 1 testified in 2018 before the grand jury in the District of Utah investigating the Washakie Mail Fraud Scheme.

23. In August 2018, Jacob and Isaiah Kingston and Levon Termendzhyan were all charged in the District of Utah with criminal offenses related to the Washakie Mail Fraud scheme in the case of *United States v. Jacob Kingston, et al.* All three were arrested on August 23, 2018.

24. In August 2018, the United States District Court in Utah issued a restraining order which was served upon Victim 1 and his companies, in which the Court ordered Victim 1 to repay the remaining amount owed on the $12 million promissory note to the United States government and instructed him to begin making the payments to the Treasury Forfeiture Fund until the conclusion of the trial and forfeiture proceedings in *United States v. Jacob Kingston, et al.*

25. Both Defendant GARCIA and Victim 1 were scheduled to testify in July 2019 at the trial in the District of Utah of the Kingstons and Termendzhyan.

26. In connection with Defendant GARCIA's testimony before the grand jury investigating the Washakie Mail Fraud Scheme and the scheduled 2019 trial, Defendant GARCIA was represented by an attorney ("Victim 2").

27. During his scheme to defraud, Defendant GARCIA impersonated a federal agent, and used other fabricated identities to convince Victim 1 to not pay the United States government the remaining amount owed on the promissory note and to instead defraud Victim 1

of funds that otherwise could have been used for that purpose.

28. To date, Victim 1 has not made any payments to the Treasury Forfeiture Fund or the United States government.

**Counts 1 thru 4**
**18 U.S.C. §§ 1343 and 1349**
**(Wire Fraud)**

The Grand Jury further charges:

29. Paragraphs 1-28 are incorporated by reference and re-alleged as though fully set forth herein.

**Scheme to Defraud**

30. From in or around February 2018, and continuing at least through in or about January 2020, in the District of Utah and elsewhere, the Defendant,

**SANTIAGO GARCIA GUTIERREZ,**

having knowingly devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property from Victim 1 by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing said scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire and radio communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds as outlined below.

31. It was the object of the scheme to defraud Victim 1 of money by falsely representing that Defendant GARCIA was currently an "asset," or confidential informant, for the United States government, and that he could acquire forfeited cars, planes, oil refineries, and vessels ("forfeited assets") at discount prices, which he would then assign to Victim 1 and his companies if Victim 1 provided him the funds to acquire the forfeited assets.

32. As part of his fraudulent scheme, Defendant GARCIA caused hundreds of text messages and images to be sent to Victim 1 from his own phone(s).

33. During the course of and as part of his fraudulent scheme, Defendant GARCIA used the identity of and falsely impersonated federal agents ("Federal Agents A and B") at Homeland Security Investigations, United States Department of Homeland Security ("HSI").

34. As part of his fraudulent scheme, Defendant GARCIA caused hundreds of text messages and images to be sent to Victim 1 from phone numbers he falsely made appear to belong to a federal agent(s) with the United States Department of Homeland Security.

35. During the course of and as part of his fraudulent scheme, Defendant GARCIA fabricated and used the identities of purported high-level federal government officials.

36. During the course of and as part of his fraudulent scheme, Defendant GARCIA exchanged phone calls with Victim 1 while posing as Federal Agent B.

37. During the course of and as part of his fraudulent scheme, Defendant GARCIA sent text messages purportedly from Federal Agent B to Victim 1 asking Victim 1 to help Defendant GARCIA pay a fine to the Securities and Exchange Commission so that Defendant GARCIA could remain an "asset" in good standing with HSI.

38. During the course of and as part of his fraudulent scheme, Defendant GARCIA sent Victim 1 lists purporting to be inventory of forfeited assets held by the United States Marshal Service that Victim 1 could choose to acquire through Defendant GARCIA.

39. During the course of and as part of his fraudulent scheme, Defendant GARCIA, purporting to be Federal Agent B, sent Victim 1 images that purported to depict the forfeited assets that Victim 1 could acquire by giving funds to Defendant GARCIA:

| **Para. Num.** | **Date (on or about)** | **Sender** | **"Text Message"/ [Image]** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| a | 8/7/18 | Victim 1 | Please send the list of vessels |
| a. | 8/7/18 | Federal Agent B | 2017 they were seized on IRS tax evasion and bankruptcy fraud as well. |
| c. | 8/7/18 | Federal Agent B |  |

40. During the course of and as part of his fraudulent scheme, Defendant GARCIA sent Victim 1 images of false letters, emails, and text messages that purported to be from high-level government officials.

41. During the course of and as part of his fraudulent scheme, Defendant GARCIA manipulated Victim 1 by fabricating circumstances that injected a sense of urgency in Victim 1 to manipulate Victim 1 into wiring funds to Defendant GARCIA.

42. During the course of and as part of his fraudulent scheme, Defendant GARCIA falsely promised Victim 1 that he would sign over properties as collateral for Victim 1's "earnest money" payments. Defendant GARCIA did not own those properties.

43. During the course of and as part of his fraudulent scheme, Defendant GARCIA falsely promised Victim 1 that they would inspect the purportedly forfeited assets for which Victm 1 paid Defendant GARCIA to acquire.

44. Victim 1 travelled to Los Angeles on several occasions to inspect the assets for which he gave Defendant GARCIA earnest money to purchase.

45. To disguise the fact that said assets did not exist, Defendant GARCIA fabricated

excuses or emergencies either for him or for Federal Agent B as to why Victim 1 could not get access to the assets that he paid Defendant GARCIA to purchase.

46. During the course of his fraudulent scheme, Defendant GARCIA and Victim 1 both met with prosecutors and testified before a grand jury in the District of Utah.

47. During the course of and as part of his fraudulent scheme, Defendant GARCIA, posing as Federal Agent B, attempted to disguise his scheme by sending text messages purportedly from Federal Agent B which instructed Victim 1 to not inform the IRS at Victim 1's grand jury appearance of his agreements with Defendant GARCIA to obtain the forfeited assets.

48. On or about April 10, 2019 and April 11, 2019, Defendant GARCIA met with the prosecutors and investigators in the *United States v. Jacob Kingston, et al.* matter to prepare him for his anticipated trial testimony.Defendant GARCIA made surreptitious recordings of portions of those meetings and sent them toVictim 1 via text message.

49. During the course of and as part of his fraudulent scheme, Defendant GARCIA attempted to conceal his scheme from government officials involved in the *United States v. Jacob Kingston, et al.* matter by making false statements to an IRS Special Agent in the District of Utah.

50. During the course of and as part of his fraudulent scheme, and as another means to extract goodwill and funds from Victim 1, Defendant GARCIA led Victim 1 to believe that federal agents from HSI would ensure that he would not have to repay the remaining amounts he owed on the promissory note or follow the restraining order of the United States District Court of Utah.

51. During the course of and as part of his fraudulent scheme, Defendant GARCIA fraudulently used the identity of Victim 2, the attorney he retained to represent him as a witness

in the *United States v. Jacob Kingston, et al.* matter, in text messages that Defendant GARCIA sent to Victim 1.

52. During the course of and as a part of his fraudulent scheme, Defendant GARCIA caused the following texts to be sent from the following actual and purported senders on the following dates to or from Victim 1, which resulted in a wire in the amount of $450,000 sent by Victim 1 to a bank account controlled by Defendant GARCIA on January 28, 2019, charged below as Count One:

| **Para. Num.** | **Date (on or about)** | **Sender** | **"Text Message"/ [Image]** |
|---|---|---|---|
| a. | 1/24/19 | Defendant GARCIA | I am asking about opening another account [Victim 1]…I am in the middle of an audit |
| b. | 1/24/19 | Victim 1 | I don't understand. Why another account…you said it's another bank |
| c. | 1/24/19 | Defendant GARCIA | I know. Our bank will send directly on behalf of you. We need wiring instructions. If I send the instructions today. Then first thing tomorrow morning the wire will go. |
| d. | 1/24/19 | Defendant GARCIA |   |
| e. | 1/24/19 | Defendant GARCIA | Between you and my attorney you are going to give me a panic attack |
| | | | |
| f. | 1/28/19 | Victim 1 | Santiago is on his way to DC |

| | | | |
|---|---|---|---|
| g. | 1/28/19 | Victim 1 | I am waiting on the agreement to send the wire |
| h. | 1/28/19 | Federal Agent B | They will try and get Santiago the letter when he gets there they gave him till noon before California gets there and reverses the inventory. I hope he gets it done. I will check during recess. |
| i. | 1/28/19 | Victim 1 | I am just waiting for the letter signed by director. |
| j. | 1/28/19 | Federal Agent B | Santiago is meeting with Tom and hopefully this gets finalized we didn't think he would come to DC. |
| k. | 1/28/19 | Victim 1 | Please send the agreement We need this to send the wire. I am waiting |
| l. | 1/28/19 | Federal Agent B | Sir I did not get a copy that is internal they will have it [sic] If he follows through then I'm pretty sure that everything will be resolved if he does and they will cancel everything this afternoon he had till 12 noon I'm not mistaken |
| m. | 1/28/19 | Victim 1 | My CFO will not send without an agreement |
| n. | 1/28/19 | Defendant GARCIA | I have till 1230 before they get to California they do not want us to go through with it they have had a lot of bids prior to getting them out of their system. |
| o. | 1/28/19 | Victim 1 | Just send the letter |
| p. | 1/28/19 | Defendant GARCIA | <br>Homeland Security<br>U.S. Department of Homeland Security<br>Washington, DC 20528<br>January 28, 2019<br>Santiago Garcia<br>Asset# 243162<br>Dear Sir.<br>This letter is in correspondence to the joint cooperation between "HSI" and Santiago Garcia "ASSET". Per our discussions for the past few days this letter serves as confirmation that there is an agreement that "HSI" and Santiago Garcia "ASSET " have had in place for a few months that will be honored and no changes will be made. The list consists of 19 Erotic Sport Cars with different makes and models from the original amount of 15 cars with an agreement price of $1.5 Million with a required 50% earnest money, which $250,000 has already been received in the account of the USMS the difference will need to be in by no later the January 28, 2019. Based on this same agreement there is also a total of 7 Lier Jets with various makes and models that will be closed through the DOJ Legal Department within in the next 4 weeks or TBD. The third and final agreement also includes the acquisition of 3 different Assets in the State of Texas "Refineries" from the EPA Criminal Department. These properties "Refineries" are also a part of the DOJ Legal Department that will be scheduled to be closed through a Texas Title TBD and is expected to close within the next 4 weeks based on the availability on title and legal department.<br>HSI will comply and will instruct the USMS that we will be moving forward and no more changes will be made at any point between "NOW" and the closing of the vehicles and real estate that is part of the agreement. The agreement will also apply to the Department of HSI that will agree to compensate Santiago Garcia "ASSET" for the same said properties that are in place and off the USMS Auction for the month of January 30, 2019.<br>Based on this letter "HSI" and Santiago Garcia "ASSET" are in the same understanding that all fees and transfers will be taken care of by the acquiring party "ASSET". Once the Titles are opened DUE DILIGENCE can be performed We also understand that some fees have already been taken care of and all monies that will be I the USMS will be credited to the final amount at closing. |

| | | | |
|---|---|---|---|
| q. | 1/28/19 | Defendant GARCIA | <br>This letter serves as a confirmation that our Department will and has complied and will expect N Santiago Garcia "ASSET" to comply with his agreement and stand by his cooperation on the 3 can't be disclosed based on ongoing investigations.<br>In summary "HSI" will move forward and will expect to close as diligently and as fast as possibl<br>Sincerely;<br>M[illegible] Kahn<br>Director of Asset Management<br>DHS/HSI/DOJ |

53. During the course of and as part of his fraudulent scheme, Defendant GARCIA caused the following texts to be sent from the following actual and purported senders on the following dates to or from Victim 1, which resulted in a wire sent by Victim 1 through "Victim 1" Managment St. Croix LLC to Universal Investments & Trading, LLC in the amount of $84,000 on May 28, 2019, charged below as Count Four:

| Para. Num. | Date (on or about) | Sender | "Text Message"/ [Image] |
|---|---|---|---|
| a. | 5/24/19 | Federal Agent B | They are wanting to pull them because we did not number one didn't give them notice number two we did not give him any earnest money on those two brand new planes in the car and they do not want to include in the same Amana price and the difference is $84,000 and they're making a big deal out of this and the only reason they're making a big deal out of this is because they brought in and I'll send you the |

| | | | |
|---|---|---|---|
| | | | letter what we just got |
| b. | 5/24/19 | Victim 1 | Thanks. It's very important . please fix it |
| c. | 5/24/19 | Victim 1 | What do you want to do about 84000 |
| d. | 5/24/19 | Federal Agent B | We are trying to waive that |
| e. | 5/24/19 | Victim 1 | Please. Thanks. It's too late to send today anyway |
| f. | 5/24/19 | Federal Agent B | We need to get a hold of Santiago…Urgent!! |
| g. | 5/24/19 | Victim 1 | He is with dr. Chen going over his MRI |
| h. | 5/24/19 | Federal Agent B | They will not wait Monday is a holiday and they have an auction and they will make thousands on each plane and car. If Santiago can't get it there by close of day they have a right to null and basically as what DOJ says And we don't want to start eliminating stuff that's on there either so what they are recommending us to take care of whatever the matter that they want and we have access on the fourth and everything has to be out by the seventh |
| i. | 5/24/19 | Victim 1 | If it's about 84000 , if you want I can send first thing possible |
| j. | 5/24/19 | Federal Agent B | If Santiago doesn't send it by the end of day it will be Nulled DOJ just confirmed with USMS |
| k. | 5/24/19 | Federal Agent B | Santiago has not responded |
| l. | 5/24/19 | Victim 1 | I can't get hold of him He may be doing MRI. |
| m. | 5/24/19 | Federal Agent B | We can't get this done these guys are going to want to try to exchange the old planes and try to get you the old deal that we had previously and that's not gonna work for us either . |
| n. | 5/24/19 | Victim 1 | [Federal Agent B]. Santiago is trying to call you |
| o. | 5/24/19 | Federal Agent B | I just spoke to him he says that he doesn't have $84,000 till another three weeks. So I'm gonna pull those from the list and hope that these guys don't come back and try to switch out the old contract with the old 2017 and 16th |
| p. | 5/24/19 | Victim 1 | I can send the money. That's not a problem. I thought you are trying to waive it |
| q. | 5/24/19 | Federal Agent B | They will not waive it |

54. On or about the dates set forth below, in the District of Utah and elsewhere, Defendant GARCIA, for the purpose of executing the above-described scheme to defraud, caused Victim 1 and others to transmit funds via the following wire transfers, from the following senders, to the following recipients, in the following amounts, by means of wire communications in interstate and foreign commerce, with each of the four wire transfers constituting a separate count:

| Count | Date (on or about) | Sender | Recipient | Amount |
|---|---|---|---|---|
| ONE | 1/28/2019 | "Victim 1" Management St Croix LLC | Universal Investments & Trading, LLC | $450,000.00 |
| TWO | 3/13/2019 | "Victim 1" Management St Croix LLC | Universal Investments & Trading, LLC | $125,000.00 |
| THREE | 4/10/2019 | "Victim 1" Management St Croix LLC | Universal Investments & Trading, LLC | $150,000.00 |
| FOUR | 5/28/2019 | "Victim 1" Management St Croix LLC | Universal Investments & Trading, LLC | $84,000.00 |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

**Count 5**
**18 U.S.C. § 912**
**(Impersonating a Federal Officer)**

The Grand Jury further charges:

55. The factual allegations contained in paragraphs 1 through 28, and 32 through 54 of the Indictment are re-alleged and incorporated by reference as if fully set forth herein.

56. From in or around April 2018 through January 2020, in the District of Utah, and elsewhere, Defendant

**SANTIAGO GARCIA GUITEREZ,**

did knowingly falsely assume or pretend to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, to wit, Federal Agent B, and acted as such, or in such pretended character demanded and obtained money, paper, documents, or a thing of value.

All in violation of Title 18, United States Code, Sections 912 and 2.

**Count 6**
**18 U.S.C. § 1028A**
**(Aggravated Identity Theft)**

The Grand Jury further charges:

57. The factual allegations contained in paragraphs 1 through 28, and 32 through 54 of the Indictment are re-alleged and incorporated by reference as if fully set forth herein.

58. From in or around April 2018 through January 2020, in the District of Utah, and elsewhere, Defendant

**SANTIAGO GARCIA GUITEREZ,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, namely, the name of Federal Agent B, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, knowing that the means of identification belonged to another person.

All in violation of Title 18, United States Code, Sections 1028A and 2.

**Count 7**
**18 U.S.C. § 1028A**
**(Aggravated Identity Theft)**

The Grand Jury further charges:

59. The factual allegations contained in paragraphs 1 through 28, and 32 through 54 of the Indictment are re-alleged and incorporated by reference as if fully set forth herein.

60. On or about January 24, 2019, in a scheme that took place in part in the District of Utah, and elsewhere, Defendant

**SANTIAGO GARCIA GUITEREZ,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, namely, the name of Victim 2, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, knowing that the means of identification belonged to another person.

All in violation of Title 18, United States Code, Sections 1028A and 2.

**Count 8**
**18 U.S.C. § 1001**
**(False Statement to Law Enforcement)**

The Grand Jury further charges:

61. The factual allegations in paragraphs 1 through 28, and 32 through 54 are re-alleged and incorporated by reference in this count, as though fully restated herein.

62. On or about May 24, 2019, in the District of Utah, Defendant,

**SANTIAGO GARCIA GUTIERREZ,**

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of a department and agency of the United States by falsely telling an Internal Revenue Service, Criminal Investigations ("IRS-CI") special agent during a telephone interview that:

(1) he (Defendant GARCIA) never told Victim 1 that he (Defendant GARCIA) had been attacked by associates of Levon Termendzhyan; and

(2) that he (Defendant GARCIA) instead told Victim 1 only that those associates tried to intimidate him when they saw him in Los Angeles; and

(3) that he (Defendant GARCIA) only said that to Victim 1 because he did not want to go visit Victim 1, who owned a home in Los Angeles next door to a home owned by Levon Termendzhyan.

63. These statements and representations were false because, as Defendant GARCIA then and there knew, he previously sent text messages purportedly from "Federal Agent B" to Victim 1 that informed Victim 1 that Defendant GARCIA had been attacked and was in the hospital, and had he told the truth, his fraud scheme would have been uncovered.

All in violation of Title 18, United States Code, Section 1001.

**NOTICE OF INTENT TO SEEK FORFEITURE**

64. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. §§ 1343 and 1349, Defendant SANTIAGO GARCIA GUTIERREZ shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to such offenses. The property to be forfeited includes, but is not limited to, the following:

a. Any funds transferred to the personal or business accounts of GARCIA, and any real or personal property acquired as a result of these transfers, including any and all investments made using proceeds, and any gains from those investments;

b. A MONEY JUDGMENT equal to the value of all property involved in the wire fraud scheme and not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant; and

c. Substitute property as allowed by 21 U.S.C. § 853(p) via 28 U.S.C. § 2461(c).

A TRUE BILL:

/S/
FOREPERSON OF THE GRAND JURY

APPROVED:

TRINA A HIGGINS
United States Attorney

[signature]
RICHARD M. ROLWING
Special Assistant United States Attorney

# Exhibit P

**From:** Elggren, Adam (USAUT)
**To:** dvacco@lippes.com; sallen@lippes.com
**Cc:** Elder, Travis (USAUT)
**Subject:** Kazi forfeiture and Dermen appeal
**Date:** Thursday, October 24, 2024 5:21:39 PM
**Attachments:** external.png
Dermen Reply Brief.pdf

---

External email >

Gentlemen-

Hope you are both well. Quick question: given that Lev Dermen's appeal following his trial and conviction in this district is pending before the Tenth Circuit, and it partly touches directly on the Kazi forfeiture, would you be amenable to a stay of the proceedings in the Kazi forfeiture pending resolution of the Dermen appeal?

Dermen brief is attached. Let me know, thanks-

Adam


**Adam S. Elggren | Assistant U.S. Attorney**
111 S. Main St. Suite 1800 | Salt Lake City, UT 84111
[redacted]

# Exhibit Q

properties you owned and had given liens to Washakie Renewable Energy and Lion's Aviation on?

A. I heard they had filed for forclosure.

Q. And what was your reaction when you learned that your properties were being forclosed on?

A. I was stressed out. My whole family was stressed out, and I was surprised, too.

Q. Did those properties include the house your daughter lived in?

A. Yes.

Q. Did you talk to the defendant about this?

A. Yes.

Q. What did you and he discuss?

A. He said it was -- Jacob was pushing this.

Q. And what did you have to do to stop this forclosure?

A. I had to file a lawsuit.

Q. And who did you file the lawsuit against?

A. Washakie and Lion's Aviation.

Q. And was that August 15 of 2014?

A. Yes.

Q. And after you filed the lawsuit, did you have any conversations with Jacob Kingston and Levon Termendzhyan about selling the lawsuit?

A. I discussed with Levon.

Q. And what did you and he discuss?
A. He said he'll come up with some figuring out how to make it work.
Q. Now, I now want to pull up what's been previously
10:05:32 admitted as Government's Exhibit 3-25. If we could focus on the bottom portion, please, Ms. Bonnie.
Do you recognize this document, Mr. Kazi?
A. Yes.
Q. What is it?
10:05:53 A. It's the release of the properties, collateral on the property.
Q. Releasing the liens?
A. Liens.
Q. And what's the date on it?
10:06:06 A. 2/6/15.
Q. And who signs it on behalf of Washakie Renewable Energy?
A. Jacob.
Q. And who signs it on behalf of Lion's Aviation?
10:06:24 A. Levon.
Q. And were all the liens released?
A. Yes.
Q. Was this what you had been asking for, for six months, at this point?
10:06:37 A. Yes.

10:06:49
10:07:20
10:07:35
10:07:46
10:07:59

Q. Now, did you have to give anything in exchange for this release of the liens?
A. Yes.
Q. Okay. What did you have to give in exchange?
A. Levon brought an agreement for me to agree on, a document which says I owed him $12 million and I should pay him with 7 percent interest.
Q. And, Ms. Bonnie, if we could bring up what's been previously admitted as Government's Exhibit 3-23, and if we could focus on this top portion.
Is this the document you were just referring to, Mr. Kazi?
A. Yes.
Q. Okay. And so who brought you this document?
A. Levon.
Q. And what did he tell you you needed to do with this document if you wanted your liens released?
A. He said: Agree to this, and I will make sure your properties are released.
Q. Now the amount up here, $12 million, was that the amount that you borrowed?
A. No.
Q. So then why does it say $12 million?
A. I think he made a mistake. He didn't know the right number.

10:08:23
10:08:33
10:08:48
10:08:58
10:09:13

Q. And do you see here where it says Kazi Foods Incorporated? Is that your company?
A. Yes.
Q. It says: Promises to pay SBK Holdings USA, care of Pilar Law Group.
Do you see that?
A. Yes.
Q. Why was this agreement about paying the money that you received from Washakie back to SBK Holdings USA?
A. At that point, I didn't care. I wanted my properties released, and --
MR. GERAGOS: There would be an objection. Non-responsive, after "I didn't care. I wanted my properties released."
MR. EWENCZYK: I'll ask another question, Your Honor.
THE COURT: All right. Well, let's ask the jury to disregard everything after "at that point I didn't care."
Q. BY MR. EWENCZYK: Who told you you needed to make the payments to SBK Holdings USA?
A. Levon.
Q. Did he explain to you why you needed to repay the money you had received from Washakie to SBK Holdings USA?
A. No.

10:09:28
10:09:41
10:09:58
10:10:05
10:10:16

Q. Was it clear that this document referred -- was about the $11 million loan?
A. Yes.
Q. And is -- do you see this section? Is this the section about the 7 percent interest you were mentioning?
A. Yes.
Q. And do you see the instructions on how you are to make the payments?
A. Yes.
Q. Where are you to make the payments?
A. Pillar Law Group.
Q. Who told you to make the payments there?
A. Levon.
Q. And if we could please go to page 3, Ms. Bonnie, and focus -- there we go.
You see the date on this document?
A. Yes.
Q. What's the date?
A. 4, February, 2015.
Q. And this first signature block is for who?
A. For me.
Q. And the second signature block on behalf of SBK Holdings USA is for who?
A. Levon.
Q. And who signed it?

10:10:28
A. Levon signed it.
Q. And it says: Lender SBK Holdings USA. Who had made the loan to you?
A. Washakie.
Q. So, is it true and accurate that SBK Holdings USA was the lender?
A. No.
Q. What was SBK Holdings USA's role going to be in this loan?
A. Levon asked me to pay to SBK to release the properties.
Q. We can take that down, please. Thank you, Ms. Bonnie.
Now after -- now, this is February 2 of 2015, right? That was the date of this agreement?
A. Yes.
Q. At that point, Mr. Termendzhyan has already withdrawn $2 million from that joint Bank of America account?
A. Yes.
Q. Why aren't those two withdrawals of $1 million mentioned in this agreement?
A. I don't know.
Q. Who prepared the agreement?
A. He did.

Q. And what were you told you had to do if you wanted your liens released?

A. Agree to it.

Q. Now, do you start making payments after you enter
10:11:43 into this agreement?

A. Yes.

MR. EWENCZYK: Your Honor, if we could pull up exhibit -- previously admitted Exhibit 3-28.

Q. BY MR. EWENCZYK: Do you recognize this document?

10:11:58 A. Yes.

Q. What is this -- what is listed on this document?

A. These are the payments I made to Pillar Law Group.

Q. Are the $2 million that were withdrawn from the
10:12:13 joint Bank of America account on this list?

A. No.

Q. Why not?

A. I don't know.

Q. How much, in total, did you pay back on the $11.2
10:12:21 million loan?

A. 3.3 million.

Q. Now, this first payment up here, February 20, 2015, how much was it for?

A. 210,000.

10:12:38 Q. Now, if we could please go to previously admitted

# Exhibit R

or was that some other repayment to Levon Termendzhyan? Answer: Repayment of this loan because, remember, it was properties that collateralized, and this was placed -- in my mind, he just took it.

Do you remember making that statement to the grand jury in July of 2018?

A Yes.

Q And when you said repayment of this loan, what loan were you referring to?

A The 11.2 million.

Q Finally, Mr. Kazi --

MR. EWENCZYK: If we could pull up, Ms. Bonney, Exhibit 3-28 again.

BY MR. EWENCZYK:

Q -- when was the last payment you made on this loan?

A According to this, July 14th, 2016.

Q At that point how much had you repaid in total on this $11.2 million?

A 3.3 million.

Q So is it fair to say that you still owed --

MR. GERAGOS: There's an objection, leading.

THE COURT: Sustained.

BY MR. EWENCZYK:

Q Did you still owe money on the loan at that point?

A Yes.

Q Did you still owe about $8 million?
A Approximately.
Q Do you remember being asked by Mr. Geragos about why you stopped making that payment?
A Yes.
Q Why did you stop making the payments?
A I was asked by government officials to stop making payments.
Q And why did they tell you to stop making the payments?
MR. GERAGOS: Objection, calls for speculation.
THE COURT: Sustained.
BY MR. EWENCZYK:
Q And did that government agent tell you who this money was now owed to?
MR. GERAGOS: Objection, calls for hearsay.
MR. EWENCZYK: Your Honor, it was elicited by the defense on cross-examination.
THE COURT: I'll allow it only for the effect on the listener, not because of any other reason. So I suppose you can ask him what impact of whatever was said had on him.
BY MR. EWENCZYK:
Q And you stopped making those payments because of what this government official told you?
A They said money that was sent to you belonged to the federal government.

# Exhibit S

timeline of this? You don't -- there's nothing I could show you, correct?

A. Well, I don't remember the dates. I get confused.

12:08:44 Q. Well, you're also confused about the February, 2015 agreement; is that right, the 2015 agreement that I just put up?

A. I'm not confused about that.

Q. Well, you knew that it -- you knew that it
12:08:58 released all of your properties, correct?

A. Yes.

Q. What was the interest rate?

A. In the agreement he had 7 percent.

Q. Okay. Didn't you testify at the Grand Jury that
12:09:10 it was 3 or 4 percent?

A. I said to Levon, it should be three or four percent and 12 million was not the right number, and he said: Just sign it. I'll release your properties, and I will change those numbers later.

12:09:25 Q. Right. Did you -- did you see that it was -- that interest was set in the agreement, right?

A. Yes.

Q. Okay. What was it set at?

A. Seven.

12:09:37 Q. Seven. And that was the previous agreement? How

much?

A. 3 percent or four. I don't remember.

Q. So, let me ask you something. If you hadn't paid on the previous 11.2 million until this new agreement and 12:09:54 there was 3 to 4 percent, would that have compounded and made the amount larger than 11.2?

A. No.

Q. So 11.2 at 3 or four percent does not add anything to it?

12:10:08 A. Our agreement was no interest rate until G.E. settlement, and when they get the G.E. settlement, they will take -- they will take the money.

Q. Okay. Well, let's just go back. That's if, in fact, the notary is wrong, right? If the notary is wrong, 12:10:30 then it was collateralized with the G.E. settlement, right?

A. Which notary are you talking about?

Q. The nine notaries that say June 21.

A. I signed that a day before we registered it.

12:10:42 Q. I know. This is what I'm asking you because you've been very candid that your memory is not that good, correct?

A. No. I'm true that.

Q. Are you positive about that?

12:10:52 A. A hundred percent positive.